**Exhibit C to Affidavit of Elizabeth C. Pritzker**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x
                                                    :
                                                    :
*In re SONY BMG CD Technologies Litigation*         :        No 1:05-cv-09575 (NRB)
                                                    :
                                                    :
-------------------------------------------------------------------- x

### SETTLEMENT AGREEMENT

This Settlement Agreement is made by and among individual and representative Plaintiffs Edwin Bonner, Ori Edelstein, Joseph Halpin, Robert Hull, Andrew Klewan, John Maletta, James Michaelson, Jeffrey Potter, Tom Ricciuti, Yvonne Ricciuti, Dora Rivas, Mary Schumacher and James Springer ("Plaintiffs"), on behalf of themselves and, on the terms set forth herein, the Settlement Class as defined herein, and SONY BMG Music Entertainment ("SONY BMG"), a Delaware general partnership; First 4 Internet Ltd. ("F4I,"), a corporation located in and organized under the laws of the United Kingdom; SunnComm International Inc., a Nevada corporation headquartered in Arizona (SunnComm International Inc. and MediaMax Technology Corp., a Nevada corporation headquartered in Arizona, being collectively referred to herein as "SunnComm"; SunnComm, F4I and SONY BMG being collectively referred to herein as "Defendants"; and Plaintiffs and Defendants being collectively referred to herein as the "Parties), by and through their respective counsel and representatives, as of the 28th day of December 2005, to settle and compromise the claims of Plaintiffs and the Settlement Class on the terms and conditions set forth below:

I.    CLAIMS OF THE PARTIES

A.    SONY BMG markets and, directly and indirectly, including through retailers, sells, among other things, compact discs ("CDs") containing music from a wide variety of genres.  During the period beginning on August 1, 2003 through the present, some, but not all, of the CD titles marketed and sold by SONY BMG, contained, in addition to tracks of music, software (referred to herein as "Content Protection Software") that, when the CDs were inserted into computers with CD player/recorder drives, enable consumers to transfer the music to their computers, from which consumers could make specified authorized uses (including transferring the music to portable devices and copying the music on no more than three (3) blank CDs).

B.    SONY BMG used two types of Content Protection Software on CDs during the Class Period, "MediaMax" and "XCP."  Two versions of "MediaMax" — MediaMax 3.0 and MediaMax 5.0 — were designed and licensed to SONY BMG by SunnComm. The MediaMax 3.0 and MediaMax 5.0 software included on SONY BMG CDs sold to consumers during the Class Period will be referred to as the "MediaMax Software," and a SONY BMG CD or copy thereof containing such MediaMax Software will be referred to herein as a "MediaMax CD."  Various versions of "XCP" were designed and licensed to SONY BMG by F4I.  The XCP versions included on SONY BMG CDs sold to consumers during the Class Period will be referred to herein as the "XCP Software," and a SONY BMG CD or copy thereof containing XCP Software will be referred to herein as an "XCP CD."  Lists of the CDs containing MediaMax 3.0, MediaMax 5.0 and XCP are attached as Exhibit A to this Settlement Agreement.

2

C.     Six complaints — *Maletta v. Sony BMG Music Entm't*, No. 05 CV 10637 (UA) (S.D.N.Y. Dec. 19, 2005); *Ricciuti v. Sony BMG Music Entm't*, No. 05 CV 10190 (BSJ) (S.D.N.Y. Dec. 5, 2005); *Klewan v. Arista Holdings Inc. d/b/a Sony BMG Music Entm't*, No. 05 CV 9609, consolidated as No. 05 CV 9575 (NRB) (S.D.N.Y. Nov. 14, 2005); *Michaelson v. Sony BMG Music, Inc.*, No. 05 CV 9575 (NRB) (S.D.N.Y. Nov. 14, 2005); *Potter v. Sony BMG Music Entm't*, No. 05 CV 9607, consolidated as No. 05 CV 9575 (NRB) (S.D.N.Y. Nov. 14, 2005); *Rivas v. Sony BMG Music Entm't*, No. 05 CV 9598, consolidated as No. 05 CV 9575 (NRB) (S.D.N.Y. Nov. 14, 2005) — were filed in the Southern District of New York and are subject to consolidation before the Honorable Naomi Reice Buchwald as the above-referenced *SONY BMG CD Technologies Litigation* (the "Action").   A Consolidated Amended Complaint in the Action (hereafter, the "Complaint") will be filed before or concurrently with the filing of a motion for preliminary approval of this Settlement Agreement.

D.     Additionally, as of the date of this Settlement Agreement, other complaints raising substantially identical claims (collectively, the "Non-S.D.N.Y. Actions") have been filed in jurisdictions other than the Southern District of New York, including as follows: *Black v. Sony BMG Music Entm't*, No. CIV-05-1315 WDS/RLP (D. N.M. Dec. 19, 2005); *Klemm v. Sony BMG Music Entm't*, No. C 05 5111 BZ (N.D. Cal. Dec. 9, 2005); *Melcon v. Sony BMG Music Entm't*, No. C 05 5084 MHP (N.D. Cal. Dec. 8, 2005); *Ponting v. SONYBMG Music Entm't, LLC*, No. CV-05-08472-JFW(AJWx) (C.D. Cal. Dec. 2, 2005); *Jacoby v. Sony BMG Music Entm't*, No. 05/116679 (N.Y. Sup. Ct. Nov. 30, 2005); *Bahnmaier v. Sony BMG Music Entm't*, No. CJ 2005 06968 (Okla. Dist. Ct. Nov. 28,

2005); *Xanthakos v. Sony BMG Music Entm't, LLC*, No. 05-0009203 (D.C. Super. Ct. Nov. 28, 2005); *Maletta v. Sony BMG Music Entm't Corp.*, No. BC343615 (Cal. Super. Ct. Nov. 28, 2005); *Burke v. Sony BMG Music Entm't*, No. 857213 (Cal. Super. Ct. Nov. 22, 2005); *Hull v. Sony BMG Music Entm't*, No. BC343385 (Cal. Super. Ct. Nov. 21, 2005); *Cooke v. Sony BMG Music Entm't*, No. 05-0009093 (D.C. Super. Ct. Nov. 18, 2005); *DeMarco v. Sony BMG Music*, No. 2:05-cv-05485-WHW-SDW (D.N.J. Nov. 17, 2005); *Stynchula v. Sony Corp. of Am.*, No. BC343100 (Cal. Super. Ct. Nov. 15, 2005); *Gruber v. Sony Corp. of Am.*, No. BC342805 (Cal. Super. Ct. Nov. 9, 2005); *Guevara v. Sony BMG Music Entm't*, No. BC342359 (Cal. Super. Ct. Nov. 1, 2005). Although several of the complaints in the Action and the Non-S.D.N.Y. Actions misidentify the proper corporate entity or the name of the defendant, it is understood that SONY BMG is the defendant meant to have been named in each such complaint.

E. The Complaint and the complaints in the Non-S.D.N.Y. Actions allege that, when and if an XCP CD is inserted into a computer, an End User License Agreement (a "EULA", and, with respect to XCP CDs, the "XCP EULA") appears automatically on the screen and the XCP Software installs itself on the user's computer. The Complaint and the complaints in the Non-S.D.N.Y. Actions assert that the XCP Software contains a potentially harmful "rootkit" which renders the user's computer more vulnerable to "malware" promulgated by third parties, including "viruses," "Trojan Horses" and "spyware," than the computers would have been had the XCP Software not been installed. Plaintiffs also allege that the XCP Software interferes with the user's ability to access the music via non-XCP Software, consumes excess computer resources and causes system

4

errors.  According to Plaintiffs, SONY BMG also uses the XCP Software to collect and store information over the Internet from CD users, including Internet Protocol ("IP") addresses.

F.     The Complaint and the complaints in the Non-S.D.N.Y. Actions also allege that SONY BMG, including through the XCP EULA, misrepresented, or did not fully or adequately disclose, the true nature of the XCP Software, and that the XCP EULA contained terms that are unconscionable or otherwise unenforceable.  Plaintiffs further allege that, once installed, the XCP Software is difficult to locate and remove, and that SONY BMG did not make available a ready means to uninstall the XCP Software.  Plaintiffs allege that when SONY BMG made an uninstaller program available to remove the XCP Software, this program also created a security risk.

G.     The Complaint and the complaints in the Non-S.D.N.Y. Actions further claim that when a MediaMax CD is inserted into a computer, a EULA appears automatically on the screen (for CDs containing MediaMax 3.0, the "MediaMax 3.0 EULA"; for CDs containing MediaMax 5.0, the "MediaMax 5.0 EULA"; each, a "MediaMax EULA", and collectively, the "MediaMax EULAs"), and that certain software files are immediately loaded onto the computer even before the user of the MediaMax CD has an opportunity to accept or reject a MediaMax EULA.  Plaintiffs allege that the MediaMax Software remains on the computer even if the MediaMax EULA is rejected, and further allege that SONY BMG uses the MediaMax Software to collect and store information over the Internet from CD users, including IP addresses.

5

H.     The Complaint and the complaints in the Non-S.D.N.Y. Actions also allege that SONY BMG, including through the MediaMax EULAs, misrepresented, or did not fully or adequately disclose, the true nature of the MediaMax Software, and that the MediaMax EULAs contained terms that are unconscionable or otherwise unenforceable. Plaintiffs also allege that MediaMax 5.0 causes a file folder to be installed on a user's computer that renders the user's computer more vulnerable to security breaches by third parties by allowing these third parties to gain enhanced permissions over the user's computer running the Windows operating system.  Plaintiffs further allege that SONY BMG did not make available a ready means to uninstall the MediaMax Software. Plaintiffs allege that when SONY BMG made a program available to uninstall the MediaMax Software, this program also created a security risk.

I.     The Complaint and the complaints in the Non-S.D.N.Y. Actions claim that SONY BMG and F4I, by disseminating the XCP Software on XCP CDs, and that SONY BMG and SunnComm, by disseminating the MediaMax Software on MediaMax CDs, violated, among other things, the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030, et seq.; the consumer fraud, false advertising, and/or deceptive trade practices laws of the several states, and state and federal common law.  The Complaint seeks injunctive relief, equitable relief, restitution, and damages on behalf of a nationwide class of consumers who used any of the MediaMax CDs and/or the XCP CDs.  The plaintiffs in the Non-S.D.N.Y. Actions seek essentially the same relief on behalf of a nationwide class or the residents of individual states.

6

J.      Plaintiffs, through their counsel, have conducted an investigation of the facts and analyzed the relevant legal issues.  Although Plaintiffs and their counsel believe that the claims asserted in the Complaint have substantial merit, they also have examined the benefits to be obtained under the proposed Settlement, including the prompt removal of XCP CDs from the market, and patches and uninstallers for the MediaMax Software and in the disclosures regarding MediaMax Software, and have considered the risks, costs and delays associated with the continued prosecution of this litigation and the likely appeals of any rulings in favor of either Plaintiffs or Defendants.

K.      Defendants have conducted an investigation of the facts and analyzed the relevant legal issues.  Defendants deny all liability with respect to any and all facts or claims alleged in the Complaint and the complaints in the Non-S.D.N.Y. Actions, and believe that their defenses, including but not limited to, lack of personal jurisdiction, lack of personal service, and all other defenses available at law or equity to the claims asserted in the Complaint and the complaints in the Non-S.D.N.Y. Actions, have substantial merit. Defendants also have weighed the potential risks, costs and delays associated with continued litigation of the Action against the benefits of the proposed Settlement.

L.      Each of the Parties and counsel believes, in consideration of all the circumstances and after substantial arms' length settlement negotiations between counsel, that its interests are best served by entering into the proposed Settlement set forth in this Settlement Agreement, and that this proposed Settlement is fair, reasonable, adequate and in the best interests of the Settlement Class.

M.    The Parties also acknowledge that SONY BMG is subject to one lawsuit brought by the Attorney General of the State of Texas (*Texas v. SONY BMG Music Entertainment*, Dist. Ct., Travis Co, Tex.), an inquiry by the Federal Trade Commission, and numerous investigations by state attorneys general and other governmental authorities in various jurisdictions (together, the "Government Inquiries," however, the term "Government Inquiries" expressly excludes actions brought by private citizens of any jurisdiction under a private attorney general statute).   The Government Inquiries cover materially the same subject matter as the Complaint and the complaints in the Non-S.D.N.Y. Actions.   It is the intention of SONY BMG to seek, to the maximum extent possible, to resolve the Government Inquiries on an agreed basis, with settlement term(s) to be disclosed to Plaintiffs' Class Counsel, the Court and the public.   It is the intention of the Parties that the terms of this Settlement Agreement be complementary to the terms of the anticipated settlement(s) of the Government Inquiries, particularly with respect to injunctive relief.

N.    The Parties intend that the proposed Settlement embodied in this Settlement Agreement will resolve all Released Claims (as defined below).

NOW, THEREFORE, IT IS HEREBY AGREED by and between the Parties, that:

(a)    the Action be settled and compromised as between Plaintiffs, on behalf of themselves and all Settlement Class Members and the Defendants, subject to approval of the Court after a hearing (or hearings) as provided for in this Settlement Agreement; and

8

(b)     upon Court approval of the settlement and compromise of the Action, a Final Order and Judgment, substantially in the form annexed hereto as Exhibit B (the "Judgment") be entered: (1) dismissing the Action with prejudice; and (2) barring and enjoining the prosecution by Settlement Class Members of all Released Claims, as defined below, against the Defendants with prejudice.

(c)     All of the foregoing shall be subject to the following terms and conditions:

## II.   DEFINITIONS

In addition to the foregoing defined terms, for purposes of the Settlement Agreement and all Exhibits thereto, the following terms shall have the meanings given to them below:

A.     "Class Period" means the period from August 1, 2003 through the Effective Date.

B.     The "Effective Date" is the date on which the Judgment becomes Final.

C.     "Final" means, when used in connection with any court order or judgment, that the relevant order or judgment will be final:

a)     if no appeal is taken therefrom, on the date on which the time to appeal therefrom (including any potential extension of time) has expired; or

b)     if any appeal is taken therefrom, on the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing *en banc*, and petitions for *certiorari* or any other form of review, have been finally disposed of, such

9

that the time to appeal therefrom (including any potential extension of time) has expired, in a manner resulting in an affirmance of the relevant order or judgment.

D.     The "Injunctive Period" is the period between one day after the Preliminary Approval Date and December 31, 2007.

E.     "Security Vulnerability" means a weakness in a system, which may result from bugs or design flaws, allowing an attacker to violate the integrity, confidentiality, access control, availability, consistency or audit mechanism of the system or the data and applications it hosts.   For purposes of illustration, Security Vulnerabilities are of significant interest when the program containing the Security Vulnerabilities operates with special privileges, performs authentication, or provides easy access to user data or facilities.

F.     "Confirmed Security Vulnerability" means a Security Vulnerability associated with installation or use of Content Protection Software, or an update or patch thereto, that, after the Effective Date, is confirmed by an independent, qualified expert (the "Security Expert") selected by SONY BMG, such as (without limitation) Next Generation Security Software Ltd. or Cloakware, Inc., to be a Security Vulnerability that poses a significant threat to the security of a system.

G.     "Suspected Security Vulnerability" means a replicable Security Vulnerability associated with installation or use of Content Protection Software, other than the XCP Software, XCP Update, XP Uninstaller or an update or patch thereto, that, after the Effective Date, has been found by the SONY BMG personnel responsible for Content

10

Protection Software, or identified and described to such personnel by a reputable computer security firm, consultant, or other person with expertise in computer security.

H.   "Personal Data" means information stored on a computer that itself discloses the identity of the individual using that computer or websites, other than the SONY BMG and SunnComm websites, that the user has visited using the browser on such computer, but does not include the IP address of the computer's Internet connection or any information with respect to an album title, artists and tracks, or other non-personally identifiable information, that is routinely logged by SONY BMG in connection with enhanced or connected CDs.

I.   "Plaintiffs' Class Counsel" means the firms of Girard Gibbs & De Bartolomeo LLP and Kamber & Associates, LLC.  Plaintiffs' Class Counsel may, at their sole option, delegate certain responsibilities under this Settlement Agreement, including, without limitation, those responsibilities described in Sections III.I-M, III.Q, IV.B(3)(e) and IV.B(4).

J.   The "Preliminary Approval Date" is the date one business day after the Court grants preliminary approval to this Settlement Agreement and directs the Defendants to send notice to Settlement Class Members on the terms specified herein.

K.   "Released Parties" means each and all of the Defendants and each and all of Defendants' direct and indirect parent companies including, in the case of SONY BMG and without limitation, Sony Corporation and Bertelsmann AG, and each and all of each of Sony Corporation's, Bertelsmann AG's and Defendants' respective divisions and direct and indirect subsidiaries, affiliates, partners, joint ventures, predecessors and successor

11

corporations and business entities, and each and all of their past and present officers, directors, servants, licensees, joint ventures, sureties, attorneys, agents, consultants, advisors, contractors, employees, controlling or principal shareholders, general or limited partners or partnerships, divisions, insurers, designated management companies, and each and all of their successors or predecessors in interest, assigns, or legal representatives, and any persons or entities that have designed, developed, programmed, manufactured, supplied, advertised, marketed, distributed or sold MediaMax CDs and/or XCP CDs or software thereon.

L. "Settlement Agreement" refers to this Settlement Agreement and "Settlement" refers to the terms of the settlement described herein.

M. "Settlement Class" means the named Plaintiffs in the Action and all natural persons or entities in the United States who purchased, received, came into possession of or otherwise used one or more MediaMax CDs and/or XCP CDs from August 1, 2003 through the Effective Date. SONY BMG shall provide to Plaintiffs' Class Counsel, prior to the Fairness Hearing, an affidavit or other confirmatory discovery verifying that no MediaMax CDs or XCP CDs were sold or issued in the United States prior to August 1, 2003 and the total number of MediaMax CDs and XCP CDs manufactured and sold as of the date of Fairness Hearing. Excluded from the Settlement Class are Released Parties; SONY BMG-authorized resellers or distributors of the XCP CDs and MediaMax CDs; current or former employees of Released Parties; and any persons or entities that have previously executed releases discharging any or all of the Defendants from liability

12

concerning or encompassing any or all claims that are the subject of the Complaint and the complaints in the Non-S.D.N.Y. Actions.

N.    "Settlement Class Member" means any person who falls within the definition of the Settlement Class and who does not validly and timely elect exclusion from the Settlement Class under the conditions and procedures for exclusion as determined by the Court and described in any Notice of Pendency and Settlement of Class Action approved by the Court.

O.    "Released Claims" means any and all claims, rights, damages, losses, demands, obligations, actions, causes of action, suits, cross-claims, matters, issues, debts, liens, contracts, liabilities, agreements, costs, or expenses, of any nature whatsoever, ascertained or unascertained, suspected or unsuspected, existing or claimed to exist, including Unknown Claims, of any and all Plaintiffs and/or Settlement Class Members arising out of any purchase or use by them of an XCP CD or a MediaMax CD, the XCP Update (as defined below), the XCP Uninstaller (as defined below), the MediaMax Update (as defined below), or the MediaMax Uninstaller (as defined below) or any installation or de-installation of XCP Software or MediaMax Software at any time, to the extent that such claims: (a) arise out of the Action or the Non-S.D.N.Y. Actions; (b) relate to any allegations that either were or could have been asserted in the Action or the Non-S.D.N.Y. Actions; or (c) which might in the future be asserted by any Plaintiff or Settlement Class Member, against any of the Released Parties that would arise out of, or relate to in any manner, directly or indirectly, any acts, facts, transactions, occurrences, conduct, representations or omissions alleged in the Action and the Non-S.D.N.Y. Actions,

13

including, without limitation, claims respecting any disclosure, advertising or other descriptions of, or claims relating to (*i*) the nature, quality, value, and/or functionality of the MediaMax CDs, the XCP CDs, the MediaMax Software, MediaMax Update, MediaMax Uninstaller, XCP Software, XCP Update or XCP Uninstaller; and/or (*ii*) the EULAs, and/or (*iii*) the alleged collection by Defendants of Personal Data or IP addresses. Released Claims also include claims for abuse of process, malicious prosecution or any other claim arising out of, relating to, or in connection with the defense or resolution of the Action.  For avoidance of doubt, Released Claims include claims relating to (*i*) the asserted costs of removing XCP Software and/or MediaMax Software from a computer or network and (*ii*) damages caused by negligent removal of XCP Software and/or MediaMax Software.  The sole exception to the definition of Released Claims is that such claims do not include claims for consequential damage to a computer or network that may or are alleged to have resulted from interactions between the XCP Software or the MediaMax Software and other software or hardware installed on such computer or network.  (For avoidance of doubt, Released Claims also do not include copyright, trademark or other claims concerning the ownership of intellectual property rights in the MediaMax Software or the XCP Software, or any uninstallers or updates thereto, which were not alleged)

     P.    "Unknown Claims" means all claims arising out of facts relating to any matter covered by the Released Claims which all persons or entities providing releases under this Settlement Agreement, including all Settlement Class Members, do not know or suspect to exist in their favor at the time of the release of the Released Parties and which, if known by them, might have affected their decision to settle with Defendants and release

14

the Released Parties or to take any other action including, but not limited to, objecting or not objecting to the Settlement.   All persons or entities providing releases under this Settlement Agreement may hereafter discover facts other than or different from those which such persons now know or believe to be true with respect to the subject matter of the Released Claims.   Upon the Effective Date, each person or entity providing releases under this Settlement Agreement, including all Settlement Class Members, shall be deemed to have waived any and all rights that he, she, it or they may have under any statute, regulation, administrative adjudication or common law principle that would otherwise limit the effect of the foregoing releases to those claims actually known or suspected to exist at the time of execution of this Settlement Agreement, including, but not limited to, the provisions of Section 1542 of the California Civil Code, to the extent deemed applicable, which provides as follows:

> 1542. "General Release-Claims Extinguished.   A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

III.    TERMS AND CONDITIONS OF THE SETTLEMENT BENEFITS

A.    In exchange for the dismissal of the Action and for entry of the Judgment as provided for in this Settlement Agreement, on the Preliminary Approval Date, SONY BMG shall make available to Settlement Class Members the benefits in this Section III (the "Settlement Benefits"), in accordance with the procedures set forth below.

B.    **XCP Exchange Program.**

1.    After some of the complaints had been filed, but before the Parties began
      negotiating this Settlement Agreement, SONY BMG had offered all persons
      possessing any XCP CD the opportunity to exchange such XCP CD for an
      identical CD title that does not contain any Content Protection Software.
      SONY BMG also has offered any such person the opportunity to download
      non-content protected MP3 versions of the music contained on any such
      XCP CD that he or she is exchanging.  Those offers are hereby incorporated
      into this Settlement Agreement as terms of the Settlement and are subject to
      the terms and conditions of this Settlement Agreement.

2.    In addition to the exchange described in Section III.B.1, SONY BMG also
      shall offer the additional incentives specified below in Section C (the
      "Incentives") to induce Settlement Class Members to exchange their XCP
      CDs for CDs that do not contain Content Protection Software.

3.    SONY BMG will use commercially reasonable efforts to advise its
      authorized resellers that SONY BMG will accept returns from that reseller
      of XCP CDs in any condition, and SONY BMG will provide full refunds to
      the reseller for those returned XCP CDs.  Although SONY BMG cannot
      compel its resellers to accept such returns from consumers, or dictate the
      consideration (*i.e.,* refunds, store credit or exchanges) that its resellers will
      offer upon the return of XCP CDs, SONY BMG will use commercially
      reasonable efforts to encourage resellers to provide at least an even
      exchange of that XCP CD, and to provide a receipt for the exchange so that
      Settlement Class Members may readily claim the Incentives by sending the
      receipt to SONY BMG.

4.    If a Settlement Class Member returns an XCP CD to a reseller, and wishes
      to claim the Incentives, he or she may do so by filling out a Claim Form,
      and by sending that Claim Form and the exchange receipt by mail or
      electronic mail to the address specified on the Claim Form.

5.    SONY BMG also will offer Settlement Class Members the option of
      returning their XCP CDs to SONY BMG by U.S. Mail, or another shipping
      method, at no charge to the Settlement Class Member.  SONY BMG may
      administer this exchange program itself or it may, at its option, engage a
      vendor of its choosing to administer the exchange program.

6.    If a Settlement Class Member returns an XCP CD to SONY BMG using the
      procedure specified above in Section III.B(5), that Settlement Class
      Member may claim the Incentives by completing the Claim Form.

C.    Settlement Class Members who exchange XCP CDs purchased before February 1, 2006 shall be entitled, by submitting the Claim Form, to claim either of the following Incentives from SONY BMG:

1.    *Incentive #1.* For each XCP CD returned by a Settlement Class Member, the Settlement Class Member may elect to receive a cash payment of seven dollars and fifty cents ($7.50), payable (at SONY BMG's sole option) by check or debit card, and a promotional code allowing the holder of the code to download the contents of any one (1) of the albums specified on the list attached hereto as Exhibit C.

2.    *Incentive #2.* For each XCP CD returned by a Settlement Class Member, the Settlement Class Member may elect to receive a promotional code allowing the holder of the code to download the contents of any three (3) of the albums specified on the list attached hereto as Exhibit C.

3.    For both Incentive #1 and Incentive #2, Settlement Class Members will be able to select promotional codes usable to download the specified album contents from any one of three (3) major download services. SONY BMG will use commercially reasonable efforts to ensure that one of the three download services offered as an option to Settlement Class Members is the "iTunes" service. The promotional codes will be fully transferable, and will expire no less than 180 days after they are issued.

D.    To claim entitlement to the Incentives, a Settlement Class Member shall (*i*) return one or more XCP CDs to SONY BMG, or provide SONY BMG with a receipt indicating the return or exchange of an XCP CD at the place of purchase after November 14, 2005; and (*ii*) complete an on-line or hard-copy Claim Form, which shall include an affirmance that, if the Settlement Class Member has installed the XCP Software, he or she has run the XCP Uninstaller or the XCP Update. If a Settlement Class Member who returns the XCP CD to the place of purchase elects to send the Claim Form by any means other than electronic mail, the Settlement Class Member shall be responsible for the costs of postage for that Claim Form.

E.   **MediaMax 3.0 Compensation.**   A Settlement Class Member who purchased one or more MediaMax CDs containing MediaMax 3.0 before December 31, 2006, and who provides proof of such purchase under the terms specified below in Section III.H., will be entitled to receive, for each such CD purchased, the opportunity to download non-content protected MP3 versions of the music contained on such MediaMax 3.0 CD.

F.   **MediaMax 5.0 Compensation.**   A Settlement Class Member who purchased one or more MediaMax CDs containing MediaMax 5.0 before December 31, 2006, and who provides proof of such purchase under the terms specified below in Section III.H., will be entitled to receive, for each such CD purchased, (*i*) the opportunity to download non-content protected MP3 versions of the music contained on such MediaMax 5.0 CD; and (*ii*) a transferable promotional code allowing the holder of the code to download, from any one of the three (3) major download services referred to in Section III.C.3, the contents of any one (1) of the albums specified on the list attached hereto as Exhibit C.  The promotional code described in clause (ii), above, will expire no less than 180 days after it is issued.

G.   The benefits to MediaMax CD purchasers described above in paragraphs III.E. and III.F. shall be referred to collectively herein as the "MediaMax Compensation."

H.   To claim entitlement to the MediaMax Compensation, a Settlement Class Member shall complete the on-line or hard-copy Claim Form, which shall include an affirmance that, if the Settlement Class Member installed the MediaMax Software, he or she has run the MediaMax Update or the MediaMax Uninstaller, and submit with the Claim Form one of the following proofs of purchase for each MediaMax CD for which

compensation is sought: (*i*) the original UPC code, cut out from the cover artwork of the MediaMax CD; (*ii*) a purchase receipt (including but not limited to an electronic purchase confirmation from any on-line retailer), credit card or bank statement reflecting the purchase, or cancelled check reflecting the purchase, or (*iii*) the MediaMax CD itself (in which case, SONY BMG will not be required to return the MediaMax CD to the Settlement Class Member).  If the Settlement Class Member sends the Claim Form and requisite proof of purchase specified in clause (*ii*), above, by means other than electronic mail, the Settlement Class Member shall be responsible for the costs of postage or shipment for that Claim Form and proof of purchase.  The proof of purchase specified in clauses (*i*) and (*iii*), above, must be sent by U.S. Mail or other method of shipment, and the Settlement Class Member shall be responsible for the costs of postage or shipment for the Claim Form and proof of purchase.

I.     Plaintiffs' Class Counsel shall have the right to periodically monitor the XCP Exchange Program and ensure that SONY BMG is (itself or through the vendor it selects) providing the appropriate replacement CDs (under Section II.B(1)), Incentives and MediaMax Compensation to Settlement Class Members within a reasonable time after receiving such claims.  Additionally, on the later of December 31, 2006 or the Effective Date, SONY BMG will provide to Plaintiffs' Class Counsel information about the total number of Settlement Class Members who (*i*) downloaded the XCP Update, XCP Uninstaller, MediaMax Update and MediaMax Uninstaller, and (*ii*) submitted claims for the Incentives and/or MediaMax Compensation.  Plaintiffs' Class Counsel shall treat this

information as Confidential under the terms of an appropriate Confidentiality Stipulation to be negotiated prior to the commencement of confirmatory discovery.

     J.    **XCP Update**. SONY BMG commits to continue making available, through its Internet website, a software utility (the "XCP Update"), downloadable by Settlement Class Members, that will remove the cloaking portion of the XCP Software that hid or "cloaked" filenames, including directories or registry keys with the prefix of $sys$, so that the XCP Software's Content Protection Software is visible to users through an ordinary directory search. Settlement Class Members will not need to provide Defendants with any Personal Data in order to obtain the XCP Update. The XCP Update also will offer Settlement Class Members the opportunity to completely remove the XCP Software from their computer or network. Plaintiffs' Class Counsel has had and will have an opportunity to review and comment on all instructions provided to Settlement Class Members on how to use the XCP Update. SONY BMG shall verify, subject to confirmatory discovery by Plaintiffs' Class Counsel, that it has obtained the opinion of an independent, qualified expert that the XCP Update is effective, and that installation of the XCP Update would create no known Security Vulnerabilities that would be considered Confirmed Security Vulnerabilities.

     K.    **XCP Uninstaller**. SONY BMG commits to continue making available, through its Internet website, a software utility (the "XCP Uninstaller"), downloadable by Settlement Class Members, that will remove the installed XCP Software from the hard disk drive of a Settlement Class Member's computer. Settlement Class Members will not need to provide Defendants with any Personal Data in order to obtain the XCP Uninstaller.

Plaintiffs' Class Counsel will have an opportunity to review and comment on all instructions provided to Settlement Class Members on how to use the XCP Uninstaller. SONY BMG shall verify, subject to confirmatory discovery by Plaintiffs' Class Counsel, that it has obtained the opinion of an independent, qualified expert that the XCP Uninstaller is effective, and that use of the XCP Uninstaller would create no known Security Vulnerabilities that would be considered Confirmed Security Vulnerabilities.

L.    **MediaMax Update.**  SONY BMG commits to continue making available, through its Internet website and SunnComm's website, software utilities (collectively, the "MediaMax Update"), downloadable by Settlement Class Members, that eliminate all currently-known Security Vulnerabilities associated with the MediaMax Software that would be Confirmed Security Vulnerabilities post-Effective Date.   Settlement Class Members will not need to provide any Personal Data in order to obtain the MediaMax Update. Plaintiffs' Class Counsel will have an opportunity to review and comment on all instructions provided to Settlement Class Members on how to use the MediaMax Update. SONY BMG shall verify, subject to confirmatory discovery by Plaintiffs' Class Counsel, that it has obtained the opinion of an independent, qualified expert that the MediaMax Update is effective, and that installation of the MediaMax Update would create no known Security Vulnerabilities that would be considered Confirmed Security Vulnerabilities.

M.    **MediaMax Uninstaller.**   SONY BMG commits to continue making available, through its website, a software utility (the "MediaMax Uninstaller") available through SunnComm's website, downloadable by Settlement Class Members, that will remove the MediaMax Software from the hard disk drive of a Settlement Class Member's

21

computer.  Settlement Class Members will not need to provide any Personal Data in order to obtain the MediaMax Uninstaller.  Plaintiffs' Class Counsel has had and will have an opportunity to review and comment on all instructions provided to Settlement Class Members on how to use the MediaMax Uninstaller.  SONY BMG shall verify, subject to confirmatory discovery by Plaintiffs' Class Counsel, that it has obtained the opinion of an independent, qualified expert that the MediaMax Uninstaller is effective, and that use of the MediaMax Uninstaller would create no known Security Vulnerabilities that would be considered Confirmed Security Vulnerabilities.

N.  The XCP Update, the XCP Uninstaller, the MediaMax Update and the MediaMax Uninstaller shall be available continuously on or through SONY BMG's website until December 31, 2007.

O.  In the website locations where SONY BMG makes available the XCP Update, the XCP Uninstaller, the MediaMax Update and the MediaMax Uninstaller, SONY BMG also shall provide links to the websites of at least two providers of anti-virus/anti-spyware software, at least one of which companies provides its software at no charge, and will include language encouraging users to visit those websites and learn more about the anti-virus/anti-spyware offerings of such vendors.  SONY BMG shall not, by so doing, incur any liability or responsibility for the functionality or performance of such vendors' offerings, and may so state on its website.

P.  SONY BMG will begin making the Incentives and the MediaMax Compensation available to Settlement Class Members upon the provision of notice of this Settlement to Settlement Class Members.  If the Effective Date does not occur and/or this

22

Settlement Agreement is terminated pursuant to its terms, Settlement Class Members who have received Settlement Benefits prior to such termination will not have any obligation to return those Settlement Benefits to SONY BMG.

Q.     Between the Preliminary Approval Date and the Effective Date, SONY BMG agrees to explore and to discuss with Plaintiffs' Class Counsel other methods for publicizing and disseminating the XCP Update, MediaMax Update, XCP Uninstaller and MediaMax Uninstaller.

R.     Defendants agree not to object if any operating system manufacturer, provider of computer security or anti-virus software plans to disseminate the XCP Update, the XCP Uninstaller, the MediaMax Update or the MediaMax Uninstaller, to such provider's customers.

S.     **No Collection of Personal Data.**  SONY BMG asserts that it has not used the MediaMax or XCP Software, or any of the enhanced content on XCP CDs or MediaMax CDs, to collect, aggregate or retain Personal Data about persons who listened to XCP CDs or MediaMax CDs on computers, without such persons' express consent. SONY BMG further asserts that it only has collected information necessary to provide enhanced CD functionality.  SONY BMG believes and, on that basis, asserts that such functionality requires that the album title, artist, IP address, and certain non-personally identifiable information be collected.  Beginning prior to the Fairness Hearing, SONY BMG will take commercially reasonable steps to destroy the information it collects to provide enhanced CD functionality, including logs of IP addresses, within ten (10) days after the collection of such data, except as required by law, regulation, litigation discovery

23

rule or court order. SONY BMG shall, however, be permitted to compile aggregate, non-personally identifiable data about hits to its servers from enhanced CDs.

T.    **Third Party Verification.** Between the Preliminary Approval Date and a date to be specified in the Hearing Order, SONY BMG will cause an independent third party to investigate whether SONY BMG has collected, aggregated or retained Personal Data or IP addresses in a manner inconsistent with the above representations. SONY BMG will provide the third party's conclusions to Plaintiffs' Class Counsel and to the Court prior to the Fairness Hearing, and shall post the third party's conclusions on its website. SONY BMG will similarly engage an independent third party to repeat this review once during each of calendar years 2006 and 2007. SONY BMG will post the third party's conclusions on its website no more than thirty (30) days after receiving those conclusions.

U.    **Defendants' Waiver of Certain Provisions Of the XCP EULA and the MediaMax EULAs.** As of the Effective Date, Defendants shall waive all of their rights to enforce the following provisions of the XCP EULA and the MediaMax 5.0 EULA (which are identical):

1.    **Article 2**, to the extent such provision could be construed as precluding consumers from transferring music they purchased to media players and portable devices that are not "APPROVED MEDIA PLAYERS" and "APPROVED PORTABLE DEVICES" (as those terms are defined in the EULA);

2.    **Article 2.3**;

3.    **Article 3.1(a)**, to the extent such provision could be construed to prevent copying or reproducing the "DIGITAL CONTENT" otherwise permitted by applicable laws;

24

4.   **Article 3.1(b)**, to the extent such provision could be construed to prevent resale of the physical CD on which the "DIGITAL CONTENT" is embodied;

5.   **Article 3.1(c)**, to the extent such provision could be construed as giving Defendants an affirmative right to preclude uninstallation of the XCP Software or MediaMax Software, or other non-negligent efforts to remedy the Security Vulnerabilities allegedly associated with such software;

6.   **Article 3.1(f)**, to the extent anything in such provision is inconsistent with SONY BMG's waiver of rights under this Paragraph U;

7.   **Articles 7 and 8;**

8.   **Article 9(1);** and

9.   **Article 9.2(ii)-(iii).**

As of the Effective Date, SONY BMG and SunComm also shall waive all of their rights to enforce the following provisions of the MediaMax 3.0 EULA:

1.   **Paragraph III**, to the extent anything in such provision is inconsistent with SONY BMG's waiver of rights under this Paragraph U;

2.   **Article 1.1**, to the extent such provision could be construed as precluding consumers from transferring music they purchased to a media player or portable device that is not a "Digital Content System" (as that term is defined in the MediaMax 3.0 EULA);

3.   **Article 1.2;**

4.   **Article 1.3**, to the extent such provision could be construed as (*i*) preventing copying or reproducing otherwise permitted by applicable laws, (*ii*) preventing the resale of the physical CD on which the "Digital Content" is embodied, or (*iii*) giving SONY BMG or SunnComm an affirmative right to preclude uninstallation of the MediaMax software, or other non-negligent efforts to remedy the Security Vulnerabilities allegedly associated with such software; and

5.   **Article 1.4**, to the extent such provision could be construed to prevent copying or reproducing otherwise permitted by applicable laws.

25

As provided in the Proposed Judgment attached hereto as Exhibit B, Defendants agree to waive the limitation of liability provisions (Article 6 of each of the XCP EULA and the MediaMax 5.0 EULA; Article 4.1 of the MediaMax 3.0 EULA), and the New York forum selection clauses (Article 10 of each of the XCP EULA and the MediaMax 5.0 EULA; Article 6.1 of the MediaMax 3.0 EULA) of the EULAs only in cases where a Settlement Class Member alleges non-Released Claims on his or her own behalf only, and not as a putative class action, mass action or private attorney general proceeding.

V.      If, after the date on which this Settlement Agreement is executed, SONY BMG enters into any settlement agreement, consent decree, assurance of discontinuance or other, similar pre-trial resolution in connection with any of the Government Inquiries, in which SONY BMG undertakes to provide additional benefits directly to all Settlement Class Members who reside in any single state or states respecting Released Claims, SONY BMG agrees to offer the same benefits to all Settlement Class Members on the same terms. For avoidance of doubt, the payment of civil or criminal penalties, fines or investigative costs by Defendants in connection with any of the Government Inquiries would not constitute the provision of additional benefits directly to Settlement Class Members under this Section.

IV.     AGREEMENT WITH ATTORNEYS GENERAL

A.      The Parties expect that, by the date of the Fairness Hearing, SONY BMG will have entered into an enforceable, nationwide agreement resolving one or more of the Government Inquiries. The Parties also expect that the resolution of these Government Inquiries will include, at least, the restrictions on SONY BMG's future conduct stated

26

below in Paragraph IV.B. If, as of the date of the Fairness Hearing, SONY BMG has not entered into such an enforceable agreement, and/or if such agreement is not nationwide in scope and does not address each and every one of the provisions stated in Section IV.B, then as of the date of the Fairness Hearing, this Settlement Agreement will be deemed amended to include an entitlement by Settlement Class Members to an injunction, issued by and enforceable by the Court, implementing each and every such provision not so addressed.

B.     The provisions expected to be covered in an agreement to resolve the Government Inquiries, and which will be deemed part of this Settlement Agreement if no enforceable agreement resolving the Government Inquiries is reached prior to the Fairness Hearing, are as follows:

1.     SONY BMG will agree not to manufacture or distribute audio CDs with XCP Software. (SONY BMG, in fact, has not been manufacturing or distributing audio CDs with XCP Software since November 2005.)

2.     SONY BMG will agree not to manufacture audio CDs with MediaMax 3.0 or MediaMax 5.0. (SONY BMG, in fact, has not been manufacturing audio CDs with MediaMax 3.0 or MediaMax 5.0 since December 18, 2005.)

3.     If SONY BMG manufactures any CDs with any Content Protection Software during the Injunctive Period, it will, before doing so:

a)     Ensure that the Content Protection Software operates in a manner ensuring that no software will be installed on the hard disk drive of a user's computer unless and until the user has agreed to such installation by accepting a EULA or by otherwise affirmatively consenting to such installation.

b)     Ensure that an uninstaller for such Content Protection Software is made readily available to consumers, without their needing to provide personal information, either on the CD, through a link on the CD's user interface, or by such other comparable method as is generally used in the software industry.

27

c)  Ensure that the functionality of any updates and/or material changes in functionality of the Content Protection Software is adequately disclosed.

d)  Ensure that any EULA associated with the Content Protection Software accurately describes the nature and function of the software, and does so in easily understandable language.

e)  Show any EULA associated with the Content Protection Software in advance of its use to an independent third party (the "EULA Reviewer") to be designated jointly by SONY BMG and Plaintiffs' Class Counsel, and receive comments on the proposed EULA from the EULA Reviewer.  SONY BMG shall consider, but will not be required to adopt, the comments of the EULA Reviewer.  However, to the extent that SONY BMG determines not to accept the EULA Reviewer's comments, the EULA Reviewer will not be required to keep such non-accepted comments confidential.

f)  Provide any Content Protection Software to at least one qualified, independent third party, and obtain an opinion from that third party that the installation and use of the software would create no Security Vulnerabilities that would be considered Confirmed Security Vulnerabilities.

g)  Ensure that, with respect to CDs with Content Protection Software, SONY BMG will, if such CDs are played on computers with active connections to the Internet and the CDs cause the computer to make a connection to the Internet, make a record only of the associated album title, artist, IP address from which the connection was made, and certain non-personally identifiable information; provided, however, that the foregoing shall not preclude SONY BMG from obtaining personally-identifiable information from the user upon consent.

h)  Include, on any SONY BMG CD containing any Content Protection Software, a written disclosure, in plain language and type size, and at a location reasonably calculated to provide appropriate pre-sale notice to consumers, that the CD contains such Content Protection Software and a brief description of such Content Protection Software, and, unless such connection is only made upon the user's prior informed, affirmative consent, that the CD seeks to connect to a SONY BMG (or a contractor's) server.

28

4.    If, during the Injunctive Period, the SONY BMG personnel responsible for Content Protection Software are made aware of a Suspected Security Vulnerability, either by virtue of their weekly monitoring of a designated email address or other designated means of communication, or otherwise, SONY BMG will take the following steps:

a)    SONY BMG will ensure that, within no more than five (5) business days after having received such notice, the circumstances of the Suspected Security Vulnerability are communicated to the Security Expert for evaluation and testing.

b)    If the Security Expert determines that the Suspected Security Vulnerability is a Confirmed Security Vulnerability (which determination will be made as soon as practicable), within five (5) business days after the vulnerability is confirmed SONY BMG will, to the extent practicable and where appropriate, notify at least two major computer security providers (*e.g.,* Symantec and Microsoft) of the Confirmed Security Vulnerability.

c)    As soon as practicable, and, in any event, within thirty (30) days after the determination that there is a Confirmed Security Vulnerability, SONY BMG will cause to be developed and released (in conjunction with its vendors and with other experts it may elect, in its sole discretion, to retain) an update to the Content Protection Software that corrects the Confirmed Security Vulnerability. The thirty (30)-day period may be extended for good cause if an update is under development, and SONY BMG believes that an update will be able to be released within a reasonable time.

d)    At the time SONY BMG releases such an update, SONY BMG will, to the extent practicable, notify at least two major computer security providers (*e.g.,* Symantec and Microsoft) of the update. The update shall remain continuously available on or through SONY BMG's website throughout the Injunctive Period.

e)    At the time SONY BMG releases such an update, SONY BMG also will so notify Plaintiffs' Class Counsel.

f)    If, after the period specified above in subparagraph (c), SONY BMG determines that it cannot effectively address the Confirmed Security Vulnerability through means of an update, SONY BMG will so notify Plaintiffs' Class Counsel, and will meet and confer with Plaintiffs' Class Counsel on an appropriate course of action. SONY BMG will take such action as it deems appropriate. If Plaintiffs'

29

Class Counsel does not believe that the actions taken by SONY BMG are appropriate, it may seek relief from the Court, pursuant to the Court's continuing jurisdiction over matters related to this Settlement Agreement.

V.     CERTIFICATION OF SETTLEMENT CLASS

A.     For settlement purposes only, the Parties will jointly request, as part of the Settlement Notice and Hearing Order, that the Court make preliminary findings and enter an Order granting conditional certification of the Settlement Class subject to final findings and ratification in the Judgment, and appointing Plaintiffs and Plaintiffs' Class Counsel as representatives of the Settlement Class.

B.     Defendants do not consent to certification of the Settlement Class for any purpose other than to effectuate the settlement of the Action.  If this Settlement Agreement is terminated pursuant to its terms, or if the Effective Date for any reason does not occur, the order certifying the Settlement Class and all preliminary and/or final findings regarding the Court's provisional class certification order shall be automatically vacated upon notice to the Court of the termination of the Settlement Agreement or the failure of the Effective Date to occur, and the Action shall proceed as though the Settlement Class had never been certified and such findings had never been made, without prejudice to the ability of any Party thereafter to request or oppose class certification on any basis.

VI.    ENTRY OF SETTLEMENT NOTICE AND HEARING ORDER AND
       NOTICES TO THE SETTLEMENT CLASS

A.     Promptly upon execution of the Settlement Agreement the Plaintiffs in the Action shall apply to the Court for entry of an Order, substantially in the form annexed hereto as Exhibit D:

1.      Finding that the requirements for conditional certification of the Settlement Class have been satisfied, appointing the Plaintiffs and Plaintiffs' Class Counsel as representatives of the Settlement Class, and preliminarily approving the Settlement as being within the range of reasonableness such that notice thereof should be given to members of the Settlement Class;

2.      Approving the Notice of Pendency and Settlement of Class Action (the "Full Settlement Notice"), substantially in the form of Exhibit E annexed hereto, which will contain instructions for Settlement Class Members to obtain the Settlement Benefits, and a summary form of that Settlement Notice, substantially in the form of Exhibit F annexed hereto (the "Summary Settlement Notice"); and ordering that the Full Settlement Notice and Summary Settlement Notice be disseminated in the manner set forth below and in the Hearing Order;

3.      Providing that all members of the Settlement Class who do not, in accordance with the terms of the Settlement Notice, file valid and timely requests for exclusion from the Settlement Class be bound by the Judgment dismissing the Action on the merits and with prejudice;

4.      Finding that the form and method of notice to be given in accordance with the terms of this Settlement Agreement and the Hearing Order constitute the best notice practicable under the circumstances and constitute valid, due and sufficient notice to the members of the Settlement Class, satisfying the requirements of the Federal Rules of Civil Procedure, the Constitution of the United States, and any other applicable law;

5.      Providing that, pending final determination of whether the Settlement should be approved, neither the Plaintiffs nor any member of the Settlement Class, either directly, representatively or in any other capacity, shall commence or prosecute any action or proceeding in any court or tribunal asserting any of the Released Claims against Defendants or any other of the Released Parties;

6.      Scheduling a hearing or hearings (collectively, the "Fairness Hearing") to be held by the Court to consider and determine whether the requirements for certification of the Settlement Class have been met and whether the proposed settlement of the Action in accordance with the terms set forth in this Settlement Agreement, including as part of the Settlement the payment of Plaintiffs' Class Counsel's attorneys' fees and reimbursement of Plaintiffs' Class Counsel's expenses, should be approved as fair, reasonable and adequate, and whether the Judgment approving the Settlement and dismissing the Action on the merits and with prejudice against Plaintiffs and Settlement Class Members should be entered;

31

7. Providing that the Fairness Hearing may, from time to time and without further notice to the Settlement Class (except those Settlement Class Members who file timely and valid objections), be continued or adjourned by order of the Court;

8. Providing a procedure for members of the Settlement Class to request exclusion from the Settlement Class and to file papers in support of the Settlement with the Court;

9. Establishing December 31, 2006 as the date by which, if a Settlement Class Member has not sought to receive one or more of the Settlement Benefits available under this Settlement Agreement, that Settlement Class Member shall forever be barred from participating or receiving the Settlement Benefits set forth herein, but shall in all other respects be subject to the provisions of this Settlement Agreement, the releases contained in Section VIII, and the Judgment;

10. Providing that any objections by any Settlement Class Member to: (*i*) the certification of the Settlement Class and the proposed Settlement, as described in the Full Settlement Notice, including the provision for payment of Plaintiffs' counsel's attorneys' fees and reimbursement of expenses, and/or (*ii*) entry of the Judgment, shall be heard and any papers submitted in support of said objections shall be considered by the Court at the Fairness Hearing only if, on or before a date (or dates) to be specified in the Hearing Order, such objector files with the Court a notice of the objector's intention to appear, submits documentary proof that the objector is a Settlement Class Member, states in writing the basis for such objections, and serves copies of the foregoing and all other papers in support of such objections upon counsel for the Parties identified in the Full Settlement Notice so that such papers are actually received by the date set by the Court;

11. Requiring notice to be provided to the authorities that are required to be notified of prospective class action settlements under the Class Action Fairness Act of 2005, as set forth in Section X.D; and

12. Establishing a date (or dates) by which the Parties shall file and serve all papers in support of the application for final approval of the Settlement, including the provision for payment of Plaintiffs' counsel's attorneys' fees and reimbursement of expenses, and/or in response to any valid and timely objections received by the designated counsel for the Parties identified in the Full Settlement Notice.

B.     The Settlement Class shall be given notice of the proposed Settlement (collectively, the "Notice") as set forth below, subject to the approval of the Court:

1.     SONY BMG shall cause the Full Settlement Notice to be sent by electronic mail, on or before a date to be set forth in the Hearing Order, to all Settlement Class Members whose email addresses SONY BMG possesses.

2.     SONY BMG shall post the Full Settlement Notice on its website.  The Full Settlement Notice will remain posted on that website until December 31, 2006 or until this Settlement Agreement is terminated by its terms.

3.     When a user inserts certain XCP CDs and MediaMax CDs into a computer with an active connection to the Internet, the computer queries SONY BMG's website and SunnComm's website (for XCP CDs and MediaMax CDs, respectively) for content, hereafter referred to as the "Banner," specific to the artist whose work appears on the XCP CD or MediaMax CD. SONY BMG will ensure that, on or before a date to be set forth in the Hearing Order, the Banner on MediaMax CDs and XCP CDs so equipped will, in addition to its regular artist-specific content, display a clear and conspicuous link to the Full Settlement Notice.

4.     SONY BMG shall work with (and, if necessary, compensate) Google and other search engine firms to ensure that a link to the Full Settlement Notice is displayed prominently when users of those search engines search for words such as "XCP," "MediaMax" and "SONY BMG Settlement."

5.     SONY BMG shall cause the Summary Settlement Notice to be published, on or before a date to be set forth in the Hearing Order in (*i*) the *USA Today* newspaper, or another, similar publication of national circulation; (*ii*) *People* magazine, or another, similar publication of national circulation; (*iii*) *Rolling Stone* and *Spin* magazines; (*iv*) the *Los Angeles Times*, (*v*) the *New York Daily News*; (*vi*) the *New York Post*, (*vii*) the *Chicago Tribune* and (*viii*) the *Atlanta Journal-Constitution*.  With respect to the daily publications listed above, the advertisements containing the Summary Settlement Notice shall be published on any single Monday, Tuesday, Wednesday or Thursday, and shall not be required to be more than an eighth-page in size.

6.     Plaintiffs' Class Counsel may continuously post the Summary Settlement Notice and the Full Settlement Notice on their firm websites, beginning two (2) business days prior to the date set forth in the Hearing Order for transmission of the Full Settlement Notice and publication of the Summary Settlement Notice, and ending on December 31, 2006.  Plaintiffs' Class

33

Counsel will, additionally, cause the joint press release described below in Section XI.F, which will contain the information included in the Summary Settlement Notice, to be issued over PR Newswire, or another similar national business wire service, on any one date on or after the date two (2) business days prior to the date set forth in the Hearing Order for transmission of the Full Settlement Notice and publication of the Summary Settlement Notice.

C.   The Parties agree that if, for any reason, the Notice is not or cannot be first provided before February 1, 2006, the Parties will confer in good faith and recommend to the Court that the date by which any Settlement Class Member must seek to receive one or more of the Settlement Benefits (specified above in Section VI.A(9)) be extended correspondingly.

D.   The Parties also agree that, if the Settlement Benefits available to Settlement Class Members change, including by operation of Section III.V. or IV.A, no new notice need issue to Settlement Class Members.

VII.   THE JUDGMENT

If, at or after the Fairness Hearing, the Settlement Agreement is approved by the Court, Plaintiffs shall promptly submit to the Court the Judgment:

1.   Ratifying the certification of the Settlement Class and approving the Settlement, judging its terms to be fair, reasonable, adequate and in the best interests of the Settlement Class Members, directing its consummation in accordance with its terms, and reserving continuing jurisdiction to implement, enforce, administer, effectuate, interpret, monitor and ensure compliance with the provisions of this Settlement Agreement and the Judgment;

2.   Dismissing the Action on the merits, with prejudice and without costs (except as otherwise provided herein), and releasing the Released Claims;

3.   Permanently barring and enjoining Plaintiffs and Settlement Class Members from asserting, commencing, prosecuting, maintaining, or continuing (as members of a class action or otherwise) any of the Released Claims;

34

4.     Providing for Defendants' waivers of the limitation of liability provisions (Article 6 of each of the XCP EULA and the MediaMax 5.0 EULA; Article 4.1 of the MediaMax 3.0 EULA), and the New York forum selection clauses (Article 10 of each of the XCP EULA and the MediaMax 5.0 EULA; Article 6.1 of the MediaMax 3.0 EULA) of the EULAs, only to the extent that a person pursues non-Released Claims against Defendants on an individual, as opposed to class action or mass action, basis; and

5.     Containing findings based on the record and confirmatory discovery obtained by Plaintiffs' Class Counsel that the scope of the class and the releases are appropriate in light of concerns that non-Released Claims for consequential damages to a computer or network, as provided in Section II.O, may raise questions concerning the predominance and manageability requirements under Federal Rule of Civil Procedure 23(b)(3).

VIII.   <u>RELEASES</u>

A.     In accordance with the provisions of the Judgment, for good and sufficient consideration, the receipt of which is hereby acknowledged, on the Effective Date, each Plaintiff and each Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged each and all of the Released Claims against each and all of the Released Parties, in the manner(s) set forth above.

B.     In accordance with the provisions of the Judgment, for good and sufficient consideration, the receipt of which is hereby acknowledged, on the Effective Date, the Defendants shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever released, relinquished and discharged all of the Plaintiffs, Plaintiffs' Class Counsel and all agents of and expert witnesses retained by Plaintiffs' Class Counsel from any claims (including Unknown Claims) for abuse of process, malicious prosecution or any other claim arising out of, relating to, or in connection with the institution, prosecution, assertion or resolution of the Action.

IX.   ATTORNEYS' FEES, COSTS AND INCENTIVE PAYMENTS TO NAMED PLAINTIFFS

A.   As of the date this Settlement Agreement was executed, the Parties have not substantially discussed either the amount of attorneys' fees or costs that Plaintiffs' counsel may ask the Court to award to them.  It is, however, the understanding of the Parties that Plaintiffs' counsel will apply for an award of attorneys' fees and reimbursable expenses in accordance with legal principles, that any fees and costs applied for and ultimately awarded by the Court will be paid by Defendants, and that Defendants' payment of Plaintiffs' attorneys' fees and reimbursable expenses will not affect the Settlement Benefits provided to Settlement Class Members in any way.

B.   The Parties will seek to reach agreement on the amount of attorneys' fees and reimbursable expenses to be applied for.  If the Parties reach agreement on the subject of fees and/or costs to be awarded to Plaintiffs' counsel prior to the sending of notice to Settlement Class Members, the Full Settlement Notice will reflect that agreement.

C.   Plaintiffs' Class Counsel will request that the Court award an incentive payment, not to exceed $1,000, to each of the Plaintiffs in the Action and the named plaintiffs in the Non-S.D.N.Y. Actions.  Defendants shall not oppose any such requests, and will pay $1,000 or such lesser amounts as the Court may direct to each of the specified individuals within ten (10) business days after the Effective Date.

X.   COSTS OF NOTICE AND ADMINISTRATION

A.   SONY BMG agrees to disseminate the Full Settlement Notice and publish the Summary Settlement Notice, and to pay all costs of doing so, in accordance with the terms of this Settlement Agreement.  In the event this Settlement Agreement does not

36

become final or the Effective Date does not occur for any reason, other than a breach by Plaintiffs or Plaintiffs' Class Counsel of one or more provisions of this Settlement Agreement, Plaintiffs shall have no obligation to reimburse Defendants for any costs or expenses paid, incurred or obligated for notice of this Settlement to the Settlement Class.

B.      SONY BMG agrees to be responsible for paying all costs incurred in connection with providing the Settlement Benefits and otherwise complying with the procedures set forth in the Judgment and this Settlement Agreement.  All procedures followed to provide the Notice to the Settlement Class shall be subject to approval by Plaintiffs' Class Counsel and subject to review for completeness and compliance with the Hearing Order by Plaintiffs' Class Counsel.

C.      Plaintiffs' Class Counsel will have the right to monitor the fulfillment and payment of Settlement Benefits to Settlement Class Members and, pursuant to the terms and conditions included in this Settlement Agreement, may act on behalf of Settlement Class Members to assist in their receipt of the Settlement Benefits.  SONY BMG shall cooperate in such effort consistent with the provisions of this Settlement Agreement.

D.      SONY BMG shall have the responsibility to prepare and provide the notices required by the Class Action Fairness Act of 2005, Pub. L. 109-2 (2005), including, but not limited to, the notices to the United States Department of Justice and to the Attorneys General of all states in which Settlement Class Members reside, as specified in 28 U.S.C. § 1715.  Plaintiffs' Class Counsel shall cooperate in the drafting of such notices and shall provide Defendants with any and all information in its possession necessary for the preparation of these notices.

37

XI.   OTHER PROVISIONS

A.      Upon execution of this Settlement Agreement, the Parties agree to cooperate and use all reasonable efforts to achieve approval of the Settlement in accordance with the terms of this Settlement Agreement, and to implement the Settlement and comply with, confirm the bases for and effectuate the terms of this Settlement Agreement.

B.      Plaintiffs' Class Counsel shall, upon execution of an appropriate confidentiality agreement, be entitled to appropriate confirmatory discovery from SONY BMG, F4I and SunnComm, as specified in this Settlement Agreement or as may be agreed between the Parties.  Such confirmatory discovery shall occur between the Preliminary Approval Date and the Fairness Hearing.  Any confidential documents given to Plaintiffs' Class Counsel during confirmatory discovery shall be returned to Defendants prior to the Fairness Hearing, or immediately upon termination of this Settlement Agreement pursuant to its terms.  Plaintiffs' Class Counsel's return of such documents shall be without prejudice to its ability to demand document production through party discovery if the Effective Date does not occur and/or this Settlement Agreement is terminated pursuant to its terms.

C.      Whether the Effective Date does or does not occur, this Settlement Agreement, all negotiations and papers related to it, and any proceedings in connection with the Settlement: (1) are not and shall not be construed as evidence of an admission or concession of wrongdoing or liability by Defendants or any other Released Party as to any claim or allegation asserted in the Action and the Non-S.D.N.Y. Actions; and (2) are not

and shall not be construed as evidence or an admission or concession by Plaintiffs that claims or allegations asserted in the Action and the Non-S.D.N.Y. Actions against Defendants or any other Released Party lack merit.

D.      Plaintiffs and Defendants agree that the terms of this Settlement Agreement were not based solely on the amount of consideration to be paid, but were based on (1) vigorous arm's-length negotiations between counsel for the Parties; (2) the assessment of the signatories to this Settlement Agreement of the strengths and weaknesses of the various claims asserted in the Action and the Non-S.D.N.Y. Actions against Defendants, based on the various claims asserted or which could be asserted; and (3) the expense and risks of ongoing litigation. Moreover, the amount of damages that Plaintiffs could prove is a matter of serious and genuine dispute, and the terms of the Settlement do not constitute a finding, admission or concession with respect to the measure of damages that could be proved at trial. The Parties further acknowledge that no determination has been made by the Court as to the amount, if any, of damages suffered by Settlement Class Members or of the proper measure of any such damages, and that the determination of damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting expert opinions.

E.      At all times during the course of this litigation, Defendants have denied and continue to deny any liability to Plaintiffs and Settlement Class Members, and have denied and continue to deny that Plaintiffs or any Settlement Class Members were damaged by any alleged wrongful conduct, or that, even if damaged, any compensable damages could be measured or recovered.

39

F.      In order to ensure that all information provided to the Settlement Class Members regarding the terms and conditions of this Settlement is neutral in terms of content and consistent with what has been submitted for approval of, or has been approved by, the Court, Defendants and Plaintiffs' Class Counsel agree jointly to draft a press release, subject to the approval of both Defendants and Plaintiffs' Class Counsel, that describes this Settlement Agreement (including Defendants' denial of liability and Plaintiffs' assertion that their claims were meritorious) and includes substantially all the information contained in the Summary Settlement Notice.  The signatories to this Settlement Agreement agree that they shall not issue or cause others to issue any statements for publication or otherwise disseminate statements regarding the terms and conditions of the Settlement that are inconsistent with those included in this Settlement Agreement and/or the joint press release.  Notwithstanding the foregoing agreement, Defendants retain their right to deny liability.

G.      Within five (5) business days after the deadline established by the Court in the Hearing Order for members of the Settlement Class to request exclusion from the Settlement Class, Plaintiffs' Class Counsel shall furnish to Defendants' counsel a complete list of all timely and valid requests for exclusion they have received (the "Opt-Out List").

H.      Defendants shall have the option to withdraw from this Settlement Agreement if the number of timely and valid requests for exclusion exceeds one thousand. Defendants shall have thirty (30) days from their receipt of the Opt-Out List in which to exercise their right of withdrawal pursuant to this paragraph.  Withdrawal shall be accomplished by filing with the Court a notice of withdrawal (the "Withdrawal Notice"),

which notice shall, if Defendants withdraw pursuant to this Section XI.H, be served on Plaintiffs' Class Counsel.

I.       This Settlement Agreement is conditioned upon the Judgment in the Action becoming Final. If the Judgment is reversed or vacated, or if the Effective Date does not occur for any other reason, the Defendants, and each of them, shall have the right to terminate this Settlement Agreement with respect to such Defendant(s). If the Judgment is modified in any manner that limits the scope of releases given to the Released Parties as provided in Section VIII of this Settlement Agreement, or does not include the findings identified above in Section VII(5), or if the Hearing Order imposes obligations on Defendants substantially different from those stated above in Section V, each of Plaintiffs and Defendants shall separately have the right either to affirm this Settlement Agreement as modified, or to terminate this Settlement Agreement by filing and serving a Withdrawal Notice on all the other non-withdrawing Parties.

J.       The signatories to this Settlement Agreement agree to assist Defendants in seeking and obtaining the dismissal of all other actions, including the Non-S.D.N.Y. Actions, alleging Released Claims.

K.       If the Effective Date does not occur or this Settlement Agreement is otherwise terminated in accordance with its provisions, the Parties shall be restored to their respective positions as of December 22, 2005, except that any extensions of time granted since that date by one Party to the other shall continue to have force and effect, and neither Party shall seek an order of default against any other Party for actions not taken while approval of the Settlement was pending. The terms and provisions of the Settlement

41

Agreement shall at that time have no further force and effect with respect to the Parties and, to the extent permitted by law, shall not be used in any action or proceeding for any purpose. Any Judgment entered in accordance with the terms of the Settlement Agreement shall be treated as vacated, nunc pro tunc.

   L. SunnComm and/or F4I may withdraw from this Settlement Agreement at any time before January 15, 2006 or the date Notice is first disseminated, whichever is earlier, by filing and serving a Withdrawal Notice to Plaintiffs' Class Counsel.  If either SunnComm and/or F4I so timely withdraws from this Settlement Agreement, the remaining Parties shall request that the Court enter a Judgment that excludes the withdrawing Defendant (and of each of its divisions and direct and indirect subsidiaries, affiliates, partners, joint ventures, predecessors and successor corporations and business entities, and each and all of its past and present officers, directors, servants, licensees, joint ventures, sureties, attorneys, agents, consultants, advisors, contractors, employees, controlling or principal shareholders, general or limited partners or partnerships, divisions, insurers, designated management companies, and each and all of its successors or predecessors in interest, assigns, or legal representatives, all of which collectively and, with such withdrawing Defendant, the "Withdrawing Defendant Parties") from the definition of "Released Parties," the Withdrawing Defendant Parties shall be restored to their position as of December 22, 2005, and Plaintiffs shall be restored to their position in respect of the Withdrawing Defendant Parties as of December 22, 2005.

   M. The Parties agree that, to the fullest extent permitted by law, neither the Settlement Agreement nor the fact of the Settlement, nor any act performed nor document

executed pursuant to or in furtherance of the Settlement Agreement or the Settlement, is or may be deemed to be or may be used as an admission of, or evidence of: (1) the validity of any claim of any Settlement Class Member, or (2) any wrongdoing, fault, omission, or liability of the Defendants in any proceeding in any court, administrative agency or other tribunal. Nothing in this Section XI.M shall preclude any Party from using the Settlement Agreement, the Judgment, or any act performed or document executed pursuant thereto in a proceeding to consummate, monitor or enforce the Settlement Agreement, the terms of the Settlement or the Judgment.

N.     All of the Exhibits to this Settlement Agreement are material and integral parts hereof.

O.     The undersigned signatories represent that they are fully authorized to execute and enter into the terms and conditions of this Settlement Agreement on behalf of the respective persons or entities for whom they have signed this Settlement Agreement.

P.     This Settlement Agreement contains the entire agreement among the Parties hereto and supersedes any prior agreements or understandings between them. All terms of this Settlement Agreement are contractual and not mere recitals and shall be construed as if drafted by all Parties. All provisions of this Settlement Agreement are and shall be binding upon each of the Parties hereto, their agents, attorneys, employees, successors and assigns, and upon all other persons claiming any interest in the subject matter hereto through any of the Parties hereto, including Plaintiffs and any Settlement Class Member who does not validly opt out of membership in the Settlement Class.

43

Q.     The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all affected Parties or their successors-in-interest.

R.     The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Counsel for the Parties to the Settlement Agreement shall exchange among themselves copies of the original signed counterparts, and a complete set of original signed counterparts shall be filed with the Court.

S.     The Parties agree that the Court shall have exclusive and continuing jurisdiction over the Parties for all purposes relating to the implementation, effectuation, interpretation, administration, monitoring and enforcement of this Settlement Agreement and all provisions thereof with respect to all Parties hereto and all beneficiaries hereof, including all Plaintiffs, Plaintiffs' Class Counsel, Defendants, Settlement Class Members and Released Parties. Except as provided solely in this Section XI.S, F4I does not admit that it has been personally served as required by law, or that this or any court in the United States has jurisdiction over it, and that by subjecting itself to the jurisdiction of this Court for purposes of this Settlement Agreement, it does not accept or subject itself to jurisdiction for any other action or matter. The Parties agree that the Court also shall retain continuing jurisdiction to determine whether, in the event an appeal is taken from any aspect of the Judgment approving the Settlement or any award of attorneys' fees and/or costs, notice should be given at the appellant's expense to some or all Settlement Class Members apprising them of the pendency of the appeal and such other matters as the Court may order. Any and all disputes, requests or petitions regarding or arising out of the

enforcement, construction, administration or interpretation of the Settlement Agreement, any provisions of the Settlement Agreement or the Judgment, must be made, if at all, to this Court by motion to the Court.

T.    The terms and conditions of this Settlement Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of New York, without regard to any applicable choice of law or conflicts rules.

DATED: December 28, 2005

KAMBER & ASSOCIATES, LLC

Scott A. Kamber, Esq. (SK-5794)
19 Fulton Street, Suite 400
New York, New York 10038
(212) 571-2000

GIRARD, GIBBS & DE BARTOLOMEO
LLP

Daniel C. Girard, Esq.
Elizabeth C. Pritzker, Esq.
601 California Street, Suite 1400
San Francisco, California 94108
(415) 981-4800

*Plaintiffs' Co-Lead Counsel and Interim
Class Counsel*

45

SONY BMG MUSIC ENTERTAINMENT

_____
Daniel M. Mandil, Esq., General Counsel
550 Madison Avenue
New York, New York 10022
(212) 833-8000

*Defendant*

DEBEVOISE & PLIMPTON LLP

_____
Bruce P. Keller, Esq.
Jeffrey S. Jacobson, Esq.
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Defendant*
*SONY BMG Music Entertainment*

46

THACHER, PROFFITT & WOOD LLP


Leonard T. Nuara, Esq.
25 DeForest Avenue
Summit, NJ 07901
(908) 598-5777

*Attorneys for Defendant*
*First4Internet Ltd.*

47

MANATT, PHELPS & PHILLIPS, LLP

Andrew C. DeVore, Esq.
7 Times Square
New York, New York 10036
(212) 790-4535

*Attorneys for Defendants*
*SunnComm International Inc. and*
*MediaMax Technology Corp.*

48

ELECTRONIC FRONTIER
FOUNDATION

Cindy A. Cohn, Esq.
Corynne McSherry, Esq.
454 Shotwell Street
San Francisco, CA 94110
(415) 436-9333


GREEN WELLING LLP

Robert S. Green, Esq.
Jenelle W. Welling, Esq.
595 Market Street, Suite 2750
San Francisco, CA 94105
(415) 477-6700


LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP

Jeffrey Friedman, Esq.
100 Pine Street, 26th Floor
San Francisco, CA 94111
(415) 288-4545


*Attorneys for Plaintiffs Tom and Yvonne
Ricciuti, Mary Schumacher, Robert Hull,
Joseph Halpin, and Edwin Bonner*

49