**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

SONY BMG CD
TECHNOLOGIES LITIGATION

Case No. 1:05-cv-09575-NRB

**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Edwin Bonner, Ori Edelstein, Joseph Halpin, Robert Hull, Andrew Klewan, John Maletta, James Michaelson, Jeffrey Potter, Tom Ricciuti, Yvonne Ricciuti, Dora Rivas, Mary Schumacher and James Springer (collectively "Plaintiffs") by and through their undersigned attorneys, hereby complain against Defendants SONY BMG Music Entertainment ("SONY BMG"), First 4 Internet, Ltd. ("F4I"), SunnComm International Inc. and MediaMax Technology Corp. (collectively "SunnComm") on behalf of themselves and all others similarly situated as follows.  Plaintiffs' allegations are based upon information and belief, except as to their own actions, which are based on knowledge.  Plaintiffs' information and belief are based on the investigation of their counsel, and the facts that are a matter of public record, as follows:

**NATURE OF THE CASE**

1.      In September 2003, SONY BMG, the second largest owner and distributor of record labels, began including a digital rights management ("DRM") software program from SunnComm called MediaMax ("MediaMax") on some of its compact discs ("CDs").  In January 2005, SONY BMG introduced a second DRM program called Extended Copy Protection

Software ("XCP") that was designed by F4I.  This Complaint refers to MediaMax and XCP software as "DRM Software" and to SONY BMG CDs with DRM Software as "DRM CDs."

2.      SONY BMG's DRM Software limits the number of copies of a CD that a user can make, limits the DRM CDs to being compatible with only Sony and Microsoft software programs and devices, exchanges information between the user's computer and SONY BMG, and does not contain a mechanism to uninstall the software.  SONY BMG fails to make adequate disclosures of these restrictions and features on the DRM CD jewel case, throughout the installation process or elsewhere.

3.      SONY BMG's DRM Software also contains a variety of security vulnerabilities, which allow third parties to access users' computers and expose those computers to malicious software such as viruses and spyware.  Defendants have compounded these problems by releasing fixes and uninstallers that include additional security vulnerabilities and require further fixes and uninstallers.  As recently as December 7, 2005, at least one of SONY BMG's security fixes was discovered to have an additional security vulnerability.

4.      Consumers who buy or use DRM CDs unknowingly install software programs that render their computers vulnerable to viruses and spyware.  These programs cannot be removed reasonably and require a dizzying array of fixes and uninstallers, each of which exposes the computer to additional security vulnerabilities.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 18 U.S.C. § 1030(g) and 28 U.S.C. §§ 1331.

6.      This Court also has jurisdiction pursuant to 28 U.S.C. § 1332.  The aggregate claims of Plaintiffs and the proposed class members exceed the sum or value of $5,000,000, and there is diversity of citizenship between proposed class members and Defendants.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b) and (c).  A substantial portion of the events and conduct giving rise to the violations of law occurred in this District, SONY BMG is headquartered in this district, and SONY BMG conducts business with consumers in this District.

## PARTIES

8.      Plaintiff Edwin Bonner purchased one or more DRM CDs and is a resident of California.

9.      Plaintiff Ori Edelstein purchased one or more DRM CDs and is a resident of New Jersey.

10.      Plaintiff Joseph Halpin purchased one or more DRM CDs and is a resident of California.

11.      Plaintiff Robert Hull purchased one or more DRM CDs and is a resident of California.

12.      Plaintiff Andrew Klewan purchased one or more DRM CDs and is a resident of New Jersey.

13.      Plaintiff John Maletta purchased one or more DRM CDs and is a resident of California.

14.      Plaintiff James Michaelson purchased one or more DRM CDs and is a resident of Illinois.

15.      Plaintiff Jeffrey Potter purchased one or more DRM CDs and is a resident of New York.

16.      Plaintiffs Tom Ricciuti and Yvonne Ricciuti purchased one or more DRM CDs and are residents of New York.

17.     Plaintiff Dora Rivas purchased one or more DRM CDs and is a resident of California.

18.     Plaintiff Mary Schumacher purchased one or more DRM CDs and is a resident of Florida.

19.     Plaintiff James Springer purchased one or more DRM CDs and is a resident of Illinois.

20.     Defendant SONY BMG is a Delaware corporation with its principal place of business located in New York, New York.  SONY BMG Music Entertainment is a 50-50 joint venture between Sony Corporation of America and Bertelsmann AG.  SONY BMG is the second largest record label in the world.  It owns and distributes recording labels such as Arista Records, Columbia Records, Epic Records, J Records, RCA Victor, RCA Records and Sonic Wave America, and boasts an artist roster that includes Aerosmith, Jennifer Lopez, Avril Lavigne, Alicia Keys, OutKast, Jessica Simpson and Britney Spears.

21.     Defendant F4I is a corporation organized and existing under the laws of the United Kingdom, with its principal place of business in Wales, United Kingdom.  F4I is a developer of DRM software including the XCP1 Burn Protect.  F4I produced a customized version of this software for worldwide use on SONY BMG CDs, including CDs sold in the United States.

22.     Defendant SunnComm International Inc. and Defendant MediaMax Technology Corp. are corporations organized and existing under the laws of Nevada with their principal places of business located in Arizona.  SunnComm International Inc. recently agreed to merge with MediaMax Technology Corp.  Collectively, the two entities are referred to as "SunnComm."   SunnComm markets the MediaMax software package.

4

### <u>FACTUAL ALLEGATIONS COMMON TO ALL DEFENDANTS</u>

23.     SONY BMG placed MediaMax and XCP software on some of its CDs beginning in September 2003 and January 2005, respectively.  The two DRM Software programs are similar in their intended DRM goals and functions.

24.     SONY BMG's DRM Software limits the number of copies of a CD a user can make.  The DRM Software also makes audio files and digital content on the DRM CDs compatible only with Sony or Microsoft products and software.  For example, DRM CDs can only be played and copied on a computer using SONY BMG's DRM Software.  Sony BMG's DRM Software does not allow audio file compression in the dominant non-proprietary MP3 format.  Instead, SONY BMG's DRM Software forces the user to use either Microsoft's and SONY BMG's proprietary audio file compression formats.  As a result, users cannot transfer the audio files on the DRM CDs to Apple, Inc.'s iPod device or iTunes media player, the dominant portable and computer media players, because they are not compatible with Microsoft or Sony products.

25.     SONY BMG also prevents its DRM Software from being listed in the commonly accessed "Add/Remove Programs" utility in the Microsoft Windows operating system, making removal all the more difficult.  Microsoft's "Add/Remove Programs" utility is the most common mechanism by which users uninstall software programs from their computers.  SONY BMG's DRM CDs also lack their own uninstall utility, a function that is common in the software industry particularly when a given software program cannot be uninstalled by Microsoft's "Add/Remove Programs" utility.

26.     The only way to uninstall SONY BMG's DRM Software is for the user to visit one of Defendants' websites, fill out a form that requires a user to disclose his or her email address, then wait for an email, download additional software, and install a program that

removes the files.  Because SONY BMG's DRM Software integrates itself deep within the architecture of the operating system, a user will cripple his or her computer by attempting to uninstall the DRM Sofware manually.

27.     SONY BMG's DRM Software can exchange information between the users' computer and Sony computer servers. This information includes, but is not limited, to a code unique to the DRM CD installed on the user's computer and the user's Internet Protocol ("IP") Address.

28.     When a user inserts a DRM CD into a computer, an End User License Agreement ("EULA") appears on the computer screen and requires the user to accept the terms of the EULA to access the audio files or digital content.  If a user accepts the EULA for one DRM CD, the EULA is not displayed when subsequent discs containing the same DRM Software are loaded onto the computer.

29.     The EULAs fail to disclose the restrictions the DRM Software imposes on the consumer's use of the DRM CD's audio files and fails to disclose that the DRM Software sends and receives personal information about the consumer.

30.     The EULAs are false and misleading, because they fail to disclose the following material facts:

- the DRM Software cannot be readily removed by the computer user;
- the DRM Software collects personal data about the computer user and his or her computer;
- the DRM Software exchanges information between the user's computer and Sony's computer servers;
- the DRM Software is not compatible with Apple's digital music file format or the MP3 file format;
- the DRM Software is only compatible with Sony's and Microsoft's digital music file formats; and
- the DRM Software will manage all DRM CDs subsequently inserted in the computer.

31.     Similarly, the SONY BMG CD jewel cases inadequately disclose material facts about the nature and function of the DRM Software, including those described in the preceding paragraph.

32.     The DRM Software, fixes and uninstallers create a variety of security vulnerabilities which allow third parties to access the user's computer and expose the computer to malicious software.  SONY BMG's DRM Software also consumes computer resources, creates software conflicts and causes system errors.

**FACTUAL CLAIMS SPECIFIC TO XCP**

33.     To date SONY BMG has manufactured over 5 million CDs with XCP software ("XCP CDs").  Over 2 million of these CDs are in circulation.

34.     In late October 2005, Mark Russinovich, a computer security research specialist, discovered that he had a hidden software program running on his system.  Upon further investigation, Mr. Russinovich traced the installation of the hidden software program to an XCP CD he had purchased and used on his computer.  Mr. Russinovich published his findings on the Internet, notifying the public of the invasive and deceptive nature of SONY BMG's DRM Software.

35.     Mr. Russinovich discovered that XCP employs a variety of software techniques typically used by spyware and virus software programs to conceal its existence from the user.  Most notably, XCP installs a rootkit on the user's computer.  The XCP rootkit hides its existence by integrating itself deep in the architecture of a computer's operating system and forcing the operating system to conceal any file, directory or process that begins with "$sys$."  XCP Software has no mechanism to ensure that other software programs cannot employ the "$sys$"

cloaking mechanism, however.  In other words, any application can make itself virtually invisible to the user by renaming its files so that they begin with "$sys$."

36.     Consequently, the XCP rootkit makes the user's computer susceptible to intrusion from third parties, as it effectively disables any firewall, anti-spyware and anti-malware protection programs previous installed on the computer.

37.     The rootkit is unique to XCP and does not appear to exist in MediaMax.

38.     On November 10, 2005, Symantec Corporation announced that it discovered the first virus that uses XCP software.  The virus reportedly tears down firewalls and gives hackers access to personal computers, using XCP to hide itself.

39.     In response to the criticism sparked by Mr. Russinovich's findings, on November 3, 2005, SONY BMG issued a fix that purportedly removed XCP's cloaking mechanism and allowed XCP to be visible on the user's computer ("Decloaking Fix").  The initial Decloaking Fix failed to perform adequately, and within the first month of its release, SONY BMG issued three versions of the Decloaking Fix.

40.     On November 3, 2005, SONY BMG also issued an uninstall tool for XCP ("XCP Uninstall Tool").  Obtaining the XCP Uninstall Tool was burdensome.  Computer users had to visit SONY BMG's website, fill out a form that required disclosure of the user's email address, and wait for an email from SONY BMG that included a link to download the XCP Uninstall Tool.

41.     On November 4, 2005, Mr. Russinovich concluded that both the Decloaking Fix and the XCP Uninstall Tool created additional security vulnerabilities to the user's computer.

42.     On November 15, 2005, SONY BMG conceded that the XCP Uninstall Tool created security vulnerabilities and stopped distributing it.

43.     On November 18, 2005, SONY BMG issued its regrets for security vulnerabilities that XCP software created.  SONY BMG announced that it was removing the XCP CDs from retailers' shelves and inventory, and initiating a mail-in program for customers to exchange their SONY BMG compact discs with XCP software for the same discs without the software.

## FACTUAL CLAIM SPECIFIC TO MEDIAMAX

44.     To date, SONY BMG has manufactured more than 20 million CDs with MediaMax Software ("MediaMax CDs").  SONY BMG has used two versions of the software, MediaMax 3.0 and MediaMax 5.0.

45.     Like the XCP software, the EULAs for the MediaMax software are false and misleading and failed to disclose the materials facts described above in ¶ 27.

46.     Both versions of the MediaMax software install on the user's computer, even if the user declines to accept the EULA.  When a MediaMax CD is inserted into a computer, a EULA is displayed, which the user may accept or decline.  Prior to the appearance of the EULA however, MediaMax automatically installs approximately one dozen files on the computer's hard disk, and these files remain installed and active, even if the user declines to accept the EULA.

47.     Although Defendants developed an uninstall tool for MediaMax software, they stopped its distribution on November 17, 2005, because of reports that the uninstall tool created certain security vulnerabilities on user's computers.

48.     On December 6, 2005, SONY BMG issued a press release stating that an additional security vulnerability had been found in the MediaMax 5.0 software.  SONY BMG issued a software patch and a new uninstall tool for MediaMax 5.0.

49.     The next day, on December 7, 2005, a computer specialist found that the MediaMax 5.0 patch itself had an additional security vulnerability.

## CLASS ACTION ALLEGATIONS

50.     Plaintiffs bring this action on behalf of themselves and all other similarly situated

people as members of a Class as defined as follows:

> The named Plaintiffs and all natural persons or entities in the
> United States who purchased, received, came into possession of or
> otherwise used one or more MediaMax CDs and/or XCP CDs.

Excluded from the Class are Defendants, SONY BMG-authorized resellers or distributors of

XCP CDs and MediaMax CDs; current or former employees of Defendants; and any persons or

entities that have previously executed releases discharging Defendants from liability concerning

or encompassing any or all claims that are the subject of this Action.

51.     This action has been brought and may properly be maintained on behalf of the

Class proposed above under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

52.     **Numerosity.**  Members of the Class are so numerous that their individual joinder

herein is impracticable.  It is estimated that the Class consists of tens of millions of members.

Although the exact number of Class members and their addresses are unknown to Plaintiffs, they

are readily ascertainable from SONY BMG's records.  Class members may be notified of the

pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court)

by published notice.

53.     **Existence and predominance of common questions.**  Common questions of law

and fact exist as to all members of the Class and predominate over questions affecting only

individual Class members.  These common questions include whether:

> a.      Defendants failed to disclose, inadequately disclosed, and/or concealed at
>
> the point of sale and through the software installation process that DRM
>
> CDs contain DRM Software;

b.    Defendants failed to disclose, inadequately disclosed, and/or concealed at the point of sale and through the software installation process that SONY BMG's DRM Software restricts the use of the audio files contained on DRM CDs;

c.    Defendants failed to disclose, inadequately disclosed, and/or concealed at the point of sale and through the software installation process that SONY BMG's MediaMax DRM software is installed and runs on the user's computer, whether the user consents to the EULA or not;

d.    Defendants failed to disclose, inadequately disclosed, and/or concealed at the point of sale and through the software installation process that SONY BMG's DRM Software does not have an uninstall feature and that a user's attempt to uninstall the DRM Software manually will damage the computer on which the DRM Software is installed;

e.    Defendants failed to disclose, inadequately disclosed, and/or concealed at the point of sale and through the software installation process that SONY BMG's DRM Software exchanges information concerning the user between the user's computer and Sony's computer servers;

f.    Defendants' DRM Software, fixes and uninstall tools create security vulnerabilities in the computers upon which the software and patches are installed;

g.    Defendants have a duty to disclose (a)-(f) above;

h.    Defendants violated the Computer Fraud and Abuse Act, as alleged;

i.      Defendants engaged in deceptive acts and practices violating Section 349 of the New York General Business Law; as alleged;

j.      Defendants engaged in deceptive acts and practices violating Section 350 of the New York General Business Law; as alleged;

k.      Defendants breached the implied covenant of good faith and fair dealing associated with the EULAs, as alleged;

l.      Defendants violated the common law for trespass to chattels, as alleged;

m.      Defendants committed the common law tort of fraud, as alleged;

n.      Defendants committed the common law tort of negligent misrepresentation; and

o.      Plaintiffs and the other Class members are entitled to damages and injunctive relief.

54.    **Typicality.** Plaintiffs' claims are typical of the claims of the Class because, among other things, Plaintiffs purchased DRM CDs.

55.    **Adequacy.** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.  The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

56.    **Superiority.**  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to

individually redress the wrongs done to them.  There will be no difficulty in the management of this case as a class action.

57.     In the alternative, the Class may be certified because:

a.     the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendants;

b.     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.     Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## **FIRST CAUSE OF ACTION**

### **(Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030)**

58.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.  Plaintiffs bring this cause of action against all Defendants.

59.     This claim is brought under Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* (the "Act").  By virtue of Defendants' conduct set forth above, Defendants violated Section 1030(a)(5) of the Act which specifically applies to anyone who:

a.      Knowingly causes the transmission of a software program, information, code or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

b.      Intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damages; or

c.      Intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage.

60.      Defendants knowingly caused, and continue to cause, the transmission of their DRM Software to millions of consumers through sales of DRM CDs at retail stores.  During both XCP and MediaMax software installation, Defendants intentionally accessed Class members' computers without authorization and thereby caused damage within the meaning of the Act.

61.      During the installation process, which is controlled by SONY BMG's DRM Software, Defendants accessed, installed, and reconfigured essential operating components of users' operating system.  Defendants' transmission of malicious software code to Plaintiffs' and Class members' computers was unauthorized.

62.      Defendants are liable under the Act, because their actions *either*:  (1) intentionally caused damage, (Section 1030(a)(5)(i)); (2) recklessly caused damage (Section 1030(a)(5)(ii)); *or* (3) simply caused damage (Section 1030(a)(5)(iii)).  Under the Act, "damage" is defined to include "any impairment to the integrity of availability of data, a program, a system, or information," that causes "loss to 1 or more persons during any 1-year period . . . aggregating at least $5000 in value . . . ." 18 U.S.C. § 1030(e)(8), (a)(5)(B)(i).

63.      As described above, Defendants fail to disclose that the DRM Software makes sweeping, dangerous changes to the operating system.  As a result of these changes, Class

14

members will have to spend time and labor repairing their computers.  Additionally, the DRM Software has consumed the resources and hindered the performance of Plaintiffs' and Class members' computers.  Class members have also lost personal and business opportunities and goodwill, as well as irreplaceable data.  The harm caused by the approximately 25 million DRM CDs would produce aggregate damages far exceeding $5,000.

64.     Plaintiffs' and Class members' computers are "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2)(B).  By accessing the Internet, these computers are used in interstate commerce and communication.

65.     As a direct result of the installation of SONY BMG's DRM Software and intentional access by SONY BMG to Plaintiffs' and Class members' computers, Defendants caused damage to Plaintiffs' and Class members' computers including, but not limited to, the following: (1) the software modifies and reconfigures operating system files on the computer; (2) the software results in software conflicts, system crashes, and complete operating system failure; (3) the software leaves the computer vulnerable to malicious software programs such as viruses and spyware; and (4) it is virtually impossible to remove the product from their computers without jeopardizing the operating system itself.

66.     Plaintiffs and Class members suffered damages as defined in 18 U.S.C. § 1030(e). As a direct result of Defendants' conduct, Plaintiffs and Class members' computers have suffered an impairment to the integrity or availability of data software programs including the operating system.  Such impairment has caused and will cause losses aggregating to at least $5,000 in value in any one-year period to Plaintiffs and Class members.  In addition, SONY BMG's act of producing its master encoded tapes through which DRM CDs were made, was a single act that proximately resulted in damages greater than $5,000.

67.     Because of Defendants' violation of the Computer Fraud and Abuse Act and pursuant to 18 U.S.C. § 1030(g), Plaintiffs seek recovery of compensatory damages and injunctive relief on behalf of themselves and Class members.

## SECOND CAUSE OF ACTION

### (For violation of Section 349 of the New York General Business Law)

68.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.  Plaintiffs bring this cause of action against all Defendants.

69.     By their conduct, including the non-disclosure of material facts as alleged above, and the continued sale of DRM CDs, Defendants have engaged and continue to engage in deceptive acts and practices in the conduct of business, trade and commerce, and in the furnishing of services within New York State, all in violation of New York General Business Law ("GBL") § 349 *et seq.*

70.     GBL § 349(h) provides in relevant part that:

> . . . any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, [and] an action to recover his actual damages . . .

71.     Plaintiffs and Class members are "person[s] who have been injured" by reason of the Defendant's violation of GBL § 349.

72.     Defendants' acts and practices described above have directly and proximately resulted in damages to Plaintiffs and Class members.  Such damages include the costs of purchasing DRM CDs, the harm incurred through the DRM Software's illicit use of Plaintiffs' and Class members' computers, the costs of repairing damage caused by SONY BMG's DRM Software, and the costs of removing and attempting to remove SONY BMG's DRM Software.

73.     Defendants willfully and knowingly engaged in the conduct described above.

74.     Plaintiffs and Class members are entitled to all applicable damages, including treble damages, and attorneys' fees pursuant to New York GBL § 349(h).

## THIRD CAUSE OF ACTION

### (For violation of Section 350 of the New York General Business Law)

75.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.  Plaintiffs bring this cause of action against all Defendants.

76.     GBL § 350 makes unlawful "false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

77.     By repeatedly and persistently engaging in the acts and practices described above, including omitting materials facts about the DRM CDs, Defendants have repeatedly engaged in false advertising in violation of GBL § 350, causing harm to Plaintiffs and Class members.

78.     Defendants willfully and knowingly engaged in the conduct described above.

79.     Plaintiffs and Class members are entitled to all applicable damages, including treble damages, and attorneys' fees pursuant to New York GBL § 350-e.

## FOURTH CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

80.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.  Plaintiffs bring this cause of action against all Defendants.

81.     A covenant of good faith and fair dealing is implied in every contract.

82.     The EULAs for XCP software and for MediaMax software constitute contracts between SONY BMG and Class members including Plaintiffs.  Defendants F4I and SunnComm are third-party beneficiaries to those contracts.

83.     By engaging in the acts described above, Defendants violated the implied covenant of good faith and fair dealing in the EULAs.

17

84.     By engaging in the acts described above, Defendants caused Plaintiffs and the Class to suffer damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (Trespass to Chattels)

85.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.  Plaintiffs bring this cause of action against all Defendants.

86.     The common law prohibits the intentional intermeddling with a chattel, including a computer, in possession of another that results in the deprivation of the use of the chattel or impairment of the condition, quality, or usefulness of the chattel.

87.     By engaging in the acts described above without the authorization of Plaintiffs and Class members, Defendants dispossessed Plaintiffs and Class members from use and/or access to their computers, or parts of them.  Further, these acts impaired the use, value, and quality of Plaintiffs' and Class members' computers.  Defendants' acts constituted an intentional interference with the use and enjoyment of the computers that were subject to the programs included on the DRM CDs.  By the acts described above, Defendants have repeatedly and persistently engaged in trespass to chattels in violation of the common law.

88.     Plaintiffs and Class members are entitled to damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### (Common Law Fraud)

89.     Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.  Plaintiffs bring this cause of action against all Defendants.

90.     Defendants have knowingly and/or recklessly engaged in the deceptive practices, uniform misrepresentations and material omissions complained of herein in order to induce

Plaintiffs and Class members to pay for DRM CDs that install damaging software on their computers without their knowledge.

91.    Plaintiffs and Class members had no knowledge of the falsity and/or incompleteness of Defendants' misrepresentations when they bought the DRM CDs and when the DRM Software was installed on their computers.  Plaintiffs and Class members relied upon Defendants' deceptive practices, uniform misrepresentations, and omissions to their detriment.

92.    Plaintiffs and Class members have been damaged as a result of the conduct complained of herein, and the harm or risk of harm is ongoing.

93.    Defendants are liable for actual damages to Plaintiffs and Class members, and their ongoing fraudulent and deceptive conduct should be enjoined.

94.    Defendants' conduct in perpetuating the fraud and deceptive practices described above was malicious, willful, wanton and oppressive, or in reckless disregard of the rights of Plaintiffs and Class members, thereby warranting the imposition of punitive damages against Defendants.

## SEVENTH CAUSE OF ACTION

### (Negligent Misrepresentation)

95.    Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein, except that Plaintiffs expressly disclaim any allegation of scienter or intentional fraud. Plaintiffs bring this cause of action against all Defendants.

96.    Defendants had a duty to their customers who installed SONY BMG's DRM software to exercise reasonable care in the design, manufacture, testing, processing, advertising, marketing and packaging of DRM CDs.

97.    By virtue of the foregoing, Defendants breached that duty.

98.     As a direct and proximate result of Defendants' breach of duty, the DRM CDs performed defectively, as described above.

99.     Plaintiffs and Class members had no knowledge of the falsity and/or incompleteness of Defendants' misrepresentations and/or of the defects in the DRM CDs when they bought the DRM CDs and when the DRM Software was installed on their computers. Plaintiffs and Class members relied upon Defendants' deceptive practices, uniform misrepresentations, and omissions to their detriment.

100.    Plaintiffs and Class members have been damaged as a result of the conduct complained of herein.

101.    Defendants are liable for actual damages to Plaintiffs and Class members.

WHEREFORE, Plaintiffs pray that the Court enter judgment and orders in their favor and against Defendants as follows:

A.      An order certifying the Class, directing that this case proceed as a class action, and appointing Plaintiffs and their counsel to represent Plaintiffs and the Class;

B.      Judgment in favor of Plaintiffs and Class members in an amount of actual damages or restitution to be determined at trial;

C.      An order enjoining Defendants from the further sale of the DRM CDs;

D.      An order granting reasonable attorneys' fees and costs, as well as pre- and post-judgment interest at the maximum legal rate; and

E.      Such other and further relief as this Court may deem appropriate.

## DEMAND FOR TRIAL BY JURY

The Plaintiffs demand a trial by jury on all issues so triable as a matter of right.


Dated: December 28, 2005                  Respectfully Submitted,

                                          **GIRARD GIBBS &**
                                          **De BARTOLOMEO LLP**


                                          By:          /s/ Jonathan K. Levine
                                          Jonathan K. Levine (JL-8390)
                                          Daniel C. Girard (Pro Hac Vice)
                                          Elizabeth C. Pritzker (Pro Hac Vice)
                                          Aaron M. Sheanin (Pro Hac Vice)
                                          601 California Street, Suite 1400
                                          San Francisco, California  94108
                                          Telephone:     (415) 981-4800
                                          Facsimile:     (415) 981-4846

                                          **KAMBER & ASSOCIATES, LLC**


                                          By:        /s/ Scott A. Kamber with permission
                                          Scott A. Kamber (SK-5794)
                                          19 Fulton Street, Suite 400
                                          New York, New York 10038
                                          Telephone:     (212) 571-2000
                                          Facsimile:     (212) 202-6364


                                          *Plaintiffs' Co-Lead Counsel &*
                                          *Interim Class Counsel*

**MILBERG WEISS BERSHAD &
  SCHULMAN LLP**
Sanford P. Domain (SD-8712)
Peter Safirstein (PS-6176)
One Pennsylvania Avenue
New York, New York  10119-0165
Telephone:    (212) 594-5300
Facsimile:    (212) 868-1229

**KIRBY McINERNEY & SQUIRE, LLP**
Ira M. Press (IP-5313)
Mark A Strauss (MS-2288)
830 Third Avenue
New York, NY  10022
Telephone:    (212) 317-2000
Facsimile:    (212) 751-2540

**GISKAN & SOLOTAROFF**
Jason L. Solotaroff (JS-5739)
Oren Giskan (OG-3667)
207 West 25th Street
New York, New York 10001
Telephone:    (212) 847-8315
Facsimile:    (212) 473-8096

*Plaintiffs' Executive Committee*

## CERTIFICATE OF SERVICE

I, Zackary M. Lyons, hereby declare as follows:

I am employed by Girard Gibbs & De Bartolomeo, a Limited Liability Partnership, 601 California Street, Suite 1400, San Francisco, California  94108.  I am over the age of eighteen years and am not a party to this action.  On December 28, 2005, I served the following documents:

1)  **CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

on:

| | |
|---|---|
| Scott A. Kamber (SK-5794)<br>**KAMBER & ASSOCIATES, LLC**<br>19 Fulton Street, Suite 400<br>New York, New York 10038<br>Telephone:     (212) 571-2000<br>Facsimile:     (212) 202-6364<br><br>*Plaintiffs' Co-Lead Counsel* | Sanford P. Domain (SD-8712)<br>Peter Safirstein (PS-6176)<br>**MILBERG WEISS BERSHAD &<br>   SCHULMAN LLP**<br>One Pennsylvania Avenue<br>New York, New York  10119-0165<br>Telephone:     (212) 594-5300<br>Facsimile:     (212) 868-1229<br><br>*Plaintiffs' Executive Committee* |
| Ira M. Press (IP-5313)<br>Mark A Strauss (MS-2288)<br>**KIRBY McINERNEY & SQUIRE, LLP**<br>830 Third Avenue<br>New York, NY  10022<br>Telephone:     (212) 317-2000<br>Facsimile:     (212) 751-2540<br><br>*Plaintiffs' Executive Committee* | Jason L. Solotaroff (JS-5739)<br>Oren Giskan (OG-3667)<br>**GISKAN & SOLOTAROFF**<br>207 West 25th Street<br>New York, New York 10001<br>Telephone:     (212) 847-8315<br>Facsimile:     (212) 473-8096<br><br>*Plaintiffs' Executive Committee* |
| David Nester<br>**NESTER & CONSTANCE, P.C.**<br>123 West Washington Street<br>Belleville, Illinois  62220-2021<br>Telephone:     (618) 234-4440<br>Facsimile:     (618) 234-6193<br><br>*Counsel for Plaintiffs* | Robert I. Lax (RL-8413)<br>**ROBERT I. LAX & ASSOCIATES**<br>535 Fifth Avenue, 21st Floor<br>New York, NY  10017<br>Telephone:     (212) 818-9150<br>Facsimile:     (212) 818-1266<br><br>*Counsel for Plaintiffs* |

| | |
|---|---|
| Daniel Lynch<br>Ethan Preston<br>**CIRIGNANI HELLER HARMAN &**<br>**LYNCH**<br>150 S. Wacker Drive, #2600<br>Chicago, IL  60606<br>Telephone:     (312) 346-8700<br>Facsimile:     (312) 896-5883<br><br>*Counsel for Plaintiffs* | Jeffrey S. Jacobson<br>**DEBEVOISE & PLIMPTON LLP**<br>919 Third Avenue<br>New York, NY  10022<br>Telephone:  (212) 909-6000<br>Facsimile:  (212) 909-6836<br><br>*Counsel for Defendant*<br>*Sony BMG Music Entertainment* |
| Robert M. Rothman<br>**LERACH COUGHLIN STOIA GELLER**<br>**RUDMAN & ROBBINS LLP**<br>200 Broadhollow Road, Suite 406<br>Melville, New York  11747<br>Telephone: (631) 367-7100<br>Facsimile: (631) 367-1173<br><br>*Counsel for Tom Ricciuti, Yvonne Ricciuti and*<br>*Mary Schumacher* | Robert S. Green<br>Jenelle Welling<br>Avin P. Sharma<br>**GREEN WELLING LLP**<br>595 Market Street, Suite 2750<br>San Francisco, California  94105<br>Telephone: (415) 477-6700<br>Facsimile: (415) 477-6710<br><br>*Counsel for Tom Ricciuti, Yvonne Ricciuti and*<br>*Mary Schumacher* |
| Cindy Cohn<br>Fred Von Lohmann<br>Kurt Opsahl<br>Corynne McSherry<br>**ELECTRONIC FRONTIER**<br>**FOUNDATION**<br>454 Shotwell Street<br>San Francisco, California  94110<br>Telephone: (415) 436-9333<br>Facsimile: (415) 436-9993<br><br>*Counsel for Tom Ricciuti, Yvonne Ricciuti and*<br>*Mary Schumacher* | Robert I. Harwood<br>Jeffrey M. Norton<br>**WECHSLER HARWOOD LLP**<br>488 Madison Avenue, 8th Floor<br>New York, New York  10022<br>Telephone: (212) 935-7400<br>Facsimile: (212) 753-3630<br><br>*Counsel for John Maletta* |
| Lynne M. Kizis<br>**WILENTZ GOLDMAN & SPITZER**<br>90 Woodbridge Center Drive, Suite 900<br>Woodbridge, New Jersey  07095<br>Telephone: (732) 636-8000<br><br>*Counsel for Darren DeMarco* | Philip A. Tortoreti<br>**TORTORETI TOMES & CALLAHAN**<br>150 Tices Lane<br>East Brunswick, New Jersey  08816<br>Telephone: (732) 257-9100<br><br>*Counsel for Darren DeMarco* |

| Stephen Raff | Michael D. Halbfish |
|---|---|
| Michael Raff | **LAW OFFICES OF** |
| **RAFF & RAFF LLP** | **MICHAEL D. HALBFISH** |
| 30 Church Street | 245 Main Street |
| Paterson, New Jersey  07505 | Woodbridge, New Jersey  07095 |
| Telephone:  (973) 742-1917 | Telephone:  (732) 636-4900 |
| | |
| *Counsel for Darren DeMarco* | *Counsel for Darren DeMarco* |
| Andrew C. DeVore | Leonard T. Nuara |
| **MANATT PHELPS & PHILLIPS LLP** | **THACHER PROFFITT & WOOD LLP** |
| 7 Times Square | 25 DeForest Avenue |
| New York, New York  10036 | Summit, New Jersey  07901 |
| Telephone:  (212) 790-4535 | Telephone:  (908) 598-5777 |
| | |
| *Counsel for Defendant* | *Counsel for Defendant* |
| *SunComm International Inc.* | *First4Internet Ltd.* |

 XXX  by placing the document(s) listed above for collection and mailing following the firm's ordinary business practice in a sealed envelope with postage thereon fully prepaid for deposit in the United States mail at San Francisco, California addressed as set forth above.

_____ by transmitting via facsimile the above listed document(s) to the fax number(s) set forth above on this date.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct, executed December 28, 2005, at San Francisco, California.

_____
Zackary M. Lyons