Exhibit 8

 GREEN ▪ WELLING LLP

November 14, 2005

**VIA FACSIMILE & CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**

Daniel M. Mandil,
Executive Vice President, Global General Counsel, and Secretary
**SONY BMG MUSIC ENTERTAINMENT**
550 Madison Avenue
New York, NY 10022

Howard Stringer
Chief Executive Officer
**Sony Entertainment**
c/o Daniel M. Mandil,
Executive Vice President, Global General Counsel, and Secretary
**SONY BMG MUSIC ENTERTAINMENT**
550 Madison Avenue
New York, NY 10022

Gunter Thielen
Chief Executive Officer
**Bertelsmann AG**
c/o Daniel M. Mandil,
Executive Vice President, Global General Counsel, and Secretary
**SONY BMG MUSIC ENTERTAINMENT**
550 Madison Avenue
New York, NY 10022

    Re:    Notice Under California Consumers Legal Remedies Act,
             Civil Code Sections 1750, et seq. and California's Unfair Competition Law,
             Business and Professional Code Section 17200

Dear Sirs:

      The purpose of this letter is to accord Sony BMG Music Entertainment ("Sony BMG"), Sony Entertainment and Bertelsmann AG notice of the claims, pursuant to California Consumers Legal Remedies Act ("CLRA") and California's Unfair Competition Law ("UCL"), of

595 MARKET ST ▪ SUITE 2750 ▪ SAN FRANCISCO ▪ CALIFORNIA 94105
TEL (415) 477-6700 ▪ FAX (415) 477-6710 ▪ EMAIL GW@CLASSCOUNSEL.COM ▪ WWW.CLASSCOUNSEL.COM

Daniel M. Mandil,
Executive Vice President, Global General Counsel, and Secretary
November 14, 2005
Page 2

Robert Hull and all persons similarly situated and to propose certain remedies to resolve their claims.

Independent researcher Mark Russinovich and many others documented the fact that Sony BMG is using Digital Rights Management software, Extended Copy Protection (XCP) by First4Internet and MediaMaxx by SunComm. The XCP technology installs itself onto a consumer's computer as a rootkit. The Anti-Spyware Coalition, Computer Associates, and Microsoft Corporation describe rootkits as malware. The End User License Agreement ("EULA") that appears before the installation process of XCP and SunComm software begins, fails to disclose to the consumer the rootkit or the risk that this software creates on the user's computer.

Robert Hull purchased a CD, 12 Songs by Neil Diamond, which was produced and distributed by Sony BMG. The "12 Songs" CD is known to have XCP software. When Mr. Hull played the "12 Songs" CD, the software program presented him with a EULA that fails to disclose the rootkit, the impact of the rootkit on Mr. Hull's computer system, and the harm it could cause to Mr. Hull's computer.

These offices, on behalf of Mr. Hull, assert that Sony BMG, Sony and Bertelsmann AG violated California law including, but not limited to, California's Consumer Legal Remedies Act (Civil Code § 1750, *et seq.*), California's Unfair Competition Law (Business & Professions Code § 17200, *et seq.*), and California's Computer Protection against Computer Spyware Act (Business & Professions Code § 22947, *et. seq.*) as to the members of a putative class composed of:

All California residents who purchased an audio compact disc distributed by Sony BMG, which contains XCP or SunComm software.

Moreover, pursuant to California Civil Code Section 1782, you are notified that Sony BMG marketed, advertised and sold CDs that contain XCP software, although the XCP software on such CDs: (1) was written with the intent to conceal its presence and operation from the owner of the computer; (2) causes harm to the consumer's computer; (3) increases the risk of damage to a consumer's computer by malware; (4) installs itself in the consumer's computer without a means to uninstall; and (5) causes a consumer's computer to transmit information without the consumer's knowledge. Despite the existence of the undisclosed nature of the product, Sony BMG continued to market and sell its audio CDs to consumers, including Mr. Hull.

This conduct constitutes violations of Section 1770 of the Civil Code as follows:

- In violation of Section 1770(a)(5) of the Act, Sony BMG represented that its goods have characteristics, uses, benefits which they do not have;

- In violation of Section 1770(a)(9) of the Act, Sony BMG advertised goods or services

Daniel M. Mandil,
Executive Vice President, Global General Counsel, and Secretary
November 14, 2005
Page 3

    with the intent not to sell them as advertised;

- In violation of Section 1770(a)(14) of the Act, Sony BMG advertised that a transaction confers or involves, rights, remedies, or obligations which it does not have or involve; and/or

- In violation of Section 1770(a)(19) of the Act, Sony BMG inserted an unconscionable provision in the contract.

Mr. Hull, on behalf of himself and all others similarly situated hereby demands that Sony BMG correct, repair, replace or otherwise rectify the violations of Section 1770 listed above, including taking the following steps with regard to the plaintiff Class, by 9:00 a.m. Pacific Time on Friday November 18, 2005:

1. Recall all CDs that contain the XCP and SunnComm Media Max technology. The recall must include removing all infected CDs from store shelves as well as halting all online sales of affected merchandise.

2. Remove from all current and future marketing materials statements like that on http://cp.sonybmg.com/xcp/english/updates.html that say the cloaking software "is not malicious and does not compromise safety" and cease from making such statements to the public.

3. Widely publicize the potential security and other risks associated with the XCP and SunnComm MediaMax technology, to allow the 2.1 million consumers who have already purchased the CDs to make informed decisions regarding their use of those CDs. The publicity campaign should include, at a minimum, issuing a public statement describing the risks and listing every Sony CD, DVD or other product that contains XCP or SunnComm MediaMax. The publicity campaign should be advertised in a manner reasonably calculated to reach all consumers who have purchased the products, including in all markets where the CDs have been sold and should include "banner" notifications and hyperlinks displayed within Sony XCP players, as installed on users' personal computers.

4. To the extent that you can communicate with users of the XCP or SunnComm software electronically, provide them with notice of this demand and an opportunity to readily access and down load corrective software.

5. Cooperate fully with any interested manufacturer of anti-virus, anti-spyware, or similar computer security tools to facilitate the identification and complete removal of XCP and SunnComm MediaMax from the computers of those infected. In particular, Sony should publicly waive any claims it may have against for investigation or removal of these tools under the Digital Millennium Copyright Act (DMCA) and any similar laws.

6. Offer to refund the purchase price of infected CDs or, at the consumer's election, provide a replacement CD that does not contain the XCP or SunnComm technology. For those consumers who choose to retain infected CDs, develop and make widely available a safe and secure software update that will allow consumers to easily uninstall the technology without losing the ability to play the CD on their computer and without revealing any personally identifying information to Sony.

7. Compensate consumers for any damage to their computers caused by the infected products, including the time, effort, and expenditure required to remedy the damage or verify that their computer system or network was or was not altered or damaged by XCP or SunnComm MediaMax products.

8. Prior to releasing any future product containing DRM technology, thoroughly test the software to determine the existence of any security risks or other possible damages the technology might cause to any user's computer.

9. Certify in a statement included in the packaging of every CD containing DRM technology that the product does not contain any concealed software such as the XCP rootkit, does not electronically communicate with Sony-BMG or any other party nor initiate the download of any software update or other data without informed consent of the consumer immediately prior to each communication, can be uninstalled without any need to contact Sony or disclose personally identifying information to anyone, does not present any security risks to any consumer's computer, and will not damage or reduce the performance of the consumer's computer or data in any way.

10. Cease from engaging, or if immediate cessation is impossible or unreasonably expensive under the circumstances, within a reasonable time, cease to engage, in the methods, acts, and practices in violation of 1770 listed above, including without limitation Sony BMG's practice of inserting unconscionable terms in End User License Agreements.

Daniel M. Mandil,
Executive Vice President, Global General Counsel, and Secretary
November 14, 2005
Page 5

The ongoing harm and risk to Class Members is such that three days is a reasonable period of time to respond to these issues. Should SonyBMG refuse this demand, Mr. Hull intends to seek monetary or injunctive relief as appropriate in addition to attorneys' fees and such other relief as the Court deems appropriate.

Yours very truly,

ELECTRONIC FRONTIER FOUNDATION
454 Shotwell St.
San Francisco, CA 94110


GREEN • WELLING LLP
A Limited Liability Partnership

Robert S. Green

RSG/APS

Writer's Direct E-Mail
rsg@classcounsel.com