Exhibit 23



GREEN • WELLING LLP

CONFIDENTIAL SETTLEMENT COMMUNICATION

December 6, 2005

**VIA ELECTRONIC MAIL**
**AND FACSIMILE (202) 383 8118**

Jeffrey P. Cunard
**DEBEVOISE & PLIMPTON LLP**
555 13th St., N.W.
Suite 1100 East
Washington, D.C. 20004

    Re:    **Sony BMG**

Dear Jeff,

    We write in response to your letter of December 5, 2005. As we discussed by telephone, we are willing to continue discussions with a view to resolving the concerns of our clients and EFF on the issues asserted in our complaints and previous correspondence with you and your clients. We appreciate the spirit in which your client is addressing the issues we raised and we are prepared to continue our good faith discussions. This letter responds to the items in the bullet points on the third page of your letter as they relate to the demands we previously made.

    We have previously agreed to forego filing a motion for a temporary restraining order, due to the parties' substantial efforts in reducing the scope of potential harm to consumers. Notwithstanding, we remain concerned that serious potential irreparable harm presently exists for the over 2 million consumers who have purchased CDs containing MediaMax software version 5, or will purchase the over 2 million CDs that are presently in the distribution chain.

    Accordingly, we are in the process of preparing a motion for preliminary injunction addressing these specific vulnerable consumers. However, we are willing to agree to delay any such filing, provided we can reach agreement in principle on the first, second and fifth bullet points in your letter by Friday, December 9, 2005.

    Following the structure of your letter, we raise several additional issues that must be addressed to reach a global settlement:

1. A moratorium on the manufacture of CDs containing MediaMax software pending a complete re-examination of that software.

Response: Sony BMG will also need to provide protection and relief to customers who have already purchased or may purchase those CDs that are in the pipeline. While Sony BMG has made substantial progress in this regard with its current patch, undoubtedly there are other, yet to be identified, security risks that will arise from these or other Sony BMG CDs with DRM software. As such, the parties must reach agreement on a protocol that will provide these consumers sufficient protection.

Plaintiffs propose that defendants be required to release updated patches to the market within a set period of time from any discovery of security breaches – for example, within 15 days of such a breach being made public. Plaintiffs also propose that Sony BMG release all patches, updates and uninstall programs to a third-party, to be agreed upon by Sony BMG and EFF, prior to their release to the public. The third-party would audit the software code, and certify the safety of the patch or update to the public. This type of third-party certification can only benefit Sony BMG, as it allows for independent review and confirmation to the public of Sony BMG's good faith, much as iSec and NGS did recently.

Of course, plaintiffs' first preference is that Sony BMG agrees to recall all MediaMax CDs already in the distribution channel and offer to exchange MediaMax CDs already purchased by consumers for CDs without DRM software. This program is similar to that already embarked upon by Sony BMG as to the XCP CDs. Plaintiffs, however, are open to considering whether a solution exists that is less than a total recall of the CDs already in the market.

2. An Internet-based advertising and notice program with regard to the security issues and the availability of the updates and uninstallers that would supplement the banners, as discussed above, as well as the other efforts that are being made to reach users of XCP- and/or MediaMax-protected CDs.

Response: We will need to receive more detail on the Internet-based advertising and notice program you propose in order to assess its effectiveness. As we've discussed, we believe that the notice program is a key element in our consideration of whether a recall of both CDs in the pipeline and CDs already sold to users is still needed. Plaintiffs propose providing notice to consumers at the point-of-sale such as an external sticker on the CD package, in addition to an Internet-based advertising campaign. As well, we look forward to receiving further information regarding hard-copy notice given to class members, such as leaflets provided in stores.

3. Further relief, whether economic and/or in the form of free downloads of music, for purchasers of XCP-protected CDs.

Response: We believe it very important that Sony BMG provide a reasonable level of compensation to all injured class members. We appreciate Sony BMG's willingness to discuss this issue. We propose that Sony BMG agree to a monetary claim process for consumers who suffered verifiable computer problems associated with either XCP or MediaMax software and that a reasonable program of objective value be provided to all others.

4. Waiver of Sony BMG's rights to enforce certain provisions of the End User License Agreements for both XCP- and MediaMax-protected CDs.

   Response: Any such waiver should include the following EULA provisions:

   a. Restrictions on the user's ability to use the digital content on the CD in the event that that consumer chose to leave the United States;

   b. Restrictions on resale and transfer of the digital content on the CDs;

   c. Restrictions on user's ability to use the digital content on the CDs at work;

   d. Restrictions on user's ability to use and retain lawfully-made copies of the digital content on the CDs in the event that the original CD is stolen or lost;

   e. Restrictions on user's ability to use the digital content on the CDs following a bankruptcy;

   f. Conditioning the user's continued use of the digital content on the CDs on acceptance of all Sony BMG software updates;

   g. A purported $5.00 limit on Sony BMG's entire liability to the purchaser of the CDs;

   h. Restrictions on user's ability to examine and test his or her computer to understand and attempt to prevent the damage cause by the rootkit or to do any other sort of reverse engineering consistent with the limits of applicable law;

   i. A reservation of rights by Sony BMG to use "technological "self-help" measures against the computers of users who desire to make use of the digital content on the CDs "at any time, without notice to [the user].""

   j. Restrictions on the user's ability to seek redress in California courts, under California law, and the purchaser's ability to seek a trial by jury;

   k. A disclaimer of all warranties, including implied warranties of merchantability, satisfactory quality, noninfringement, and fitness for any particular purpose.

5. A commitment to continue the Sony BMG practice of not aggregating the IP addresses logged through enhanced/connected CDs (if that information is at all retained) with any personally identifiable data, to refrain from using that information

3

to identify individual consumers or for any purpose other than providing the enhancements and to make appropriate disclosures with respect to the privacy-related concerns you have identified.

Response: In order to remedy the problem caused by the fact that the software does not disclose that it communicates with Sony BMG or its contractors, users should be offered a patch that should either completely disable the communication function or clearly and conspicuously notify purchasers of their right to disable any communication after full disclosure of the risks and benefits to them of this function. The disclosures should be in plain language, inform the user what sort of logging/reporting the software does, and should do so at the time of purchase rather than after installation (when return of the disk becomes difficult, if not impossible). To the extent that the software does this, the disclosure should state that every time the CD is played on a computer with Internet access, the software will report back to MediaMax that fact, including the specific CD played and the IP address of the user, and that this information is correlated so that MediaMax is able to know all of the MediaMax CDs that a purchaser plays and when he or she plays them, even if it is not correlated with personally identifying information (again, if this is done). Finally, of course, the disclosures must match the actual behavior of the software. This means that no software is installed on a user's computer until after the EULA is presented and agreed to.

6. Finally, and we trust that Fred, you and others at EFF will appreciate the significance of this, Sony BMG is willing to enter into a discussion with EFF with regard to future use it might make of DRM on CDs. (I personally am looking forward to that exchange.)

Response: We are encouraged by this point and look forward to this conversation. As you know, EFF is skeptical of DRM for many reasons, including that it is ineffective in preventing piracy, casual or otherwise, and because of the burdens it places on consumers, technology researchers and others. We also believe that that security and privacy problems will continue, even as to MediaMax and XCP. We appreciate Sony BMG's willingness to discuss future use of DRM software and hope that this discussion can include discontinuing the use of this software altogether. If Sony BMG does ultimately choose to continue use of DRM software, however, we believe that there is much that can be done in the design of the software to avoid operating system-level control over the computer, in the disclosures to be made at the time of purchase and thereafter, and in the availability to actually decline to have the software installed and to uninstall, as examples, that may reduce our concerns.

In the context of settling the above issues, we are willing to discuss the appropriate class definition, notice, venue, claims administration process, and scope of any potential releases. Finally, in the event we are able to reach agreement on the issues outlined above, we believe it appropriate thereafter to discuss your client's payment of attorneys' fees and costs.

Again, we appreciate your prompt response and the constructive discussions and commitments Sony BMG has been willing to undertake to date. We believe that the next steps should be a call Wednesday before you leave for Europe. In particular, plaintiffs

4

seek prompt resolution concerning the appropriate notice to consumers for CDs that are already in the supply chain, as the Christmas season is rapidly approaching.

Thank you for considering these points. We look forward to discussing these matters with you further at your convenience, tomorrow.

Yours very truly,

ELECTRONIC FRONTIER
FOUNDATION

*Cindy Cohn* /APS

Cindy Cohn

GREEN • WELLING LLP
A Limited Liability Partnership

*Robert Green* /APS

Robert S. Green

cc:  Reed R. Kathrein
     Larry Feldman

5