UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

SONY BMG CD
TECHNOLOGIES LITIGATION

Case No. 1:05-cv-09575-NRB

DECLARATION OF CLASS REPRESENTATIVE JAMES MICHAELSON IN
SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

| | |
|---|---|
| **GIRARD GIBBS**<br>**& De BARTOLOMEO LLP**<br>Daniel C. Girard (Pro Hac Vice)<br>Jonathan K. Levine (JL-8390)<br>Elizabeth C. Pritzker (Pro Hac Vice)<br>Aaron M. Sheanin (Pro Hac Vice)<br>601 California Street, Suite 1400<br>San Francisco, California 94108<br>Telephone: (415) 981-4800 | **KAMBER & ASSOCIATES LLC**<br>Scott A. Kamber (SK-5794)<br>19 Fulton Street, Suite 400<br>New York, New York 10038<br>Telephone: (877) 773-5469 |

*Class Counsel*

I, James Michaelson, declare as follows:

1. I am an adult over 18 years of age and am legally competent to execute this declaration. I currently reside in Saint Charles, Illinois.

2. I am a named Plaintiff and Class Representative in a class action lawsuit, *Michaelson v. Sony BMG Music Inc*, No. 05-CV-9575, filed in the United States District Court for the Southern District of New York on November 14, 2005, and subject to consolidation before the Honorable Naomi Buchwald as *In Re Sony BMG CD Technologies Litigation*, No. 05-CV-09575-NRB. I hereby submit this declaration, on behalf of myself and the entire Settlement Class, in support of Plaintiffs' Application for Final Approval of Class Action Settlement. The statements contained herein are true and accurate, and based upon personal knowledge, except those matters that are stated upon information and belief, which I believe to be true and accurate based upon my personal inquiry and/or review of information reasonably available to me. If called to testify, I could and would testify to the following.

3. I purchased a Neil Diamond compact disc (CD) that was marketed and sold under a joint venture between Sony Corporation of America and Bertelsmann AG (collectively "Sony BMG"). Shortly after I purchased these CDs, I copied them to a personal computer at my home in Saint Charles, Illinois. At the time of purchase and during installation to my computer, I was not aware that the CDs contained digital rights management ("DRM") software that limited the number of copies I could make of the CDs, and that limited the software programs and musical devices that I could use to listen to the CDs.

4. On October 31, 2005, I read that Mark Russinovich, a computer security research specialist, had discovered a hidden software program, or "rootkit," running on his system after Mr. Russinovich had copied and installed a Sony BMG CD containing a DRM software program on his computer. According to Mr. Russinovich, the rootkit and hidden files were installed on

1

his system by DRM software called Extended Copy Protection ("XCP"), which was developed by a software company located in the United Kingdom and used on a Sony BMG CD that Mr. Russinovich had installed on his computer. In addition, according to Mr. Russinovich, the XCP software and rootkit contained on the Sony BMG CD effectively disables security protection programs, such as firewalls or anti-spyware programs, located on the user's computer, making that computer more susceptible to security vulnerabilities from third parties.

5. Concerned that the Sony BMG CD that I had purchased and installed on my computer in contained similar DRM software and posed similar security problems, I contacted the law firm of Kamber & Associates, LLC. After consultation with and further investigation by me and my counsel, I concluded that CD I had purchased, in fact, contained the XCP software that Mr. Russinovich had described..

6. Following such consultation and investigation, I agreed to serve as a Plaintiff and Class Representative in class action litigation arising out of the use of DRM software on certain CDs marketed and sold by Sony BMG within the United States.

7. By serving as a Class Representative, I understand that I assume some obligations beyond those of a plaintiff in an ordinary lawsuit. Stated in simple terms, these responsibilities require me to make sure that the interests of the Class are served by the settlement. These responsibilities also require me to ensure that the attorneys for the Class pursue the case diligently, and not place their own interests ahead of those of the Class. Any settlement must be approved by the Court and be fair to the Class.

8. In addition, as a Class Representative, I must actively supervise the work done by my attorneys on the case and independently evaluate the sufficiency of any settlement proposed by the lawyers. In evaluating the fairness of the settlement, I am required to consider the

interests of all members of the Class as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the Court.

9. I am familiar with the nature of this class action litigation against Sony BMG, First4Internet Ltd., and SunnComm International, Inc. In my capacity as Plaintiff and Class Representative, I read and am familiar with the class action complaint entitled *Michaelson v. Sony BMG Music Inc*, No. 05-CV-9575, filed in the United States District Court for the Southern District of New York on November 14, 2005. I also read, reviewed, and am familiar with the claims alleged in the consolidated amended complaint entitled *In Re Sony BMG CD Technologies Litigation*, which was prepared and filed by my attorneys in their role as Plaintiffs' Co-Lead Class Counsel, on December 28, 2005.

10. I have been in contact with Plaintiffs' Co-Lead Class Counsel throughout the litigation, and have spoken frequently with my attorneys regarding the status of the litigation. Based upon these discussions with my attorneys, I am generally familiar with the nature and extent of Plaintiffs' Co-Lead Class Counsel's negotiations with counsel for Sony BMG, on behalf of the Class, throughout the months of November and December 2005 and thereafter.

11. I understand that, ordinarily, the duty of Class Counsel would be to gather the factual proof necessary to prepare the case for trial, through investigation or formal discovery, or a combination of both. The circumstances of this case dictated a different approach. In this case, the ongoing nature of the harm – including the installation of an undisclosed "rootkit" on people's computers and the creation of attendant security vulnerabilities, and the need to promptly remove XCP CDs and software from the marketplace – as well as the fact Sony BMG did not contest the facts alleged by the Plaintiffs and sought to negotiate a settlement of the claims asserted in the litigation on an expedited basis, meant that a "business as usual" approach would not have worked here.

12.     Had my attorneys insisted on slowing down the case to obtain documents and take depositions, no purpose would have been served. I understand that the point of discovery is to obtain additional factual information to position the case for settlement or trial, and not an end in itself. Given Sony BMG's expressed interest in negotiating a resolution of the class claims on an expedited basis, the sensible thing for Plaintiffs' Class Counsel to do was to make sure that that counsel was sufficiently prepared to negotiate all settlement terms, to organize the various plaintiffs' attorneys and lawsuits arising out of the Sony BMG DRM software (to avoid wheel-spinning, unnecessarily duplicative efforts, and competition among plaintiffs' lawyers), and ensure that the proposed Settlement addressed all potential concerns associated with the Sony BMG DRM software, and minimized the incentives for Sony BMG to attempt to install similar software in the future.

13.     I read the Settlement Agreement, and I am aware of and approve all terms of the proposed settlement, as it affects the members of the Class and me. I understand that, under the Settlement, Sony BMG has agreed to stop manufacturing and distributing XCP CDs, and to stop manufacturing MediaMax CDs. The Settlement provides for, among other things, a recall of all Sony BMG CDs that contain XCP software, and permits Class members to either return their XCP CDs to the place of purchase, or exchange those CDs with Sony BMG directly, and receive an identical, "clean" CD without XCP software. In addition, under the Settlement, Sony BMG agrees to provide a variety of incentives, including cash and free album downloads, to Class members who participate in this XCP CD recall program. I am informed and believe that the album downloads available to Class members under the Settlement are available in several digital download formats – including *iTunes*, which is the most popular music download format available. In addition to these benefits, the Settlement requires Sony BMG to publish and distribute to the public software programs that will allow consumers to (a) update the XCP and

MediaMax programs on their computers to eliminate known security vulnerabilities, including the XCP "rootkit"; and/or (b) uninstall the XCP and MediaMax programs from their computers.

14. I am also aware that Sony BMG has agreed to several business practice changes as part of the Settlement Agreement. Specifically, as part of the Settlement, Sony BMG must inform consumers of the information that it collects as part of the "phone home" feature of the XCP and MediaMax software, must limit the information it collects from this software only to that information necessary to provide the CDs with enhanced functionality, and must then destroy that information within a short time of its collection so as to prevent any further or unauthorized use of that information for marketing or other purposes.

15. I also understand that Sony BMG has agreed to implement new "best practices" for any future DRM software that Sony BMG develops or includes on its music CDs. For example, under the terms of the Settlement, Sony BMG agrees that any future DRM software placed on Sony BMG music CDs over the next two years will be subject to independent, pre-sale testing by qualified independent computer security personnel, to ensure that the DRM software is effective and does not pose a known computer security vulnerability to end users. Sony BMG also agrees to promptly identify, fix and remove any security vulnerabilities discovered in any future Sony BMG DRM CD software or updates, following sale and distribution of those DRM CDs to the public. Sony BMG also agrees to include plain-language disclosures about the nature and function of any such DRM software, on any future music CD packaging and in End User Licensing Agreements ("EULAs") associated with such software. These improved disclosures will assist consumers in deciding whether to purchase and use Sony BMG CDs containing DRM software on their computers, by providing consumers with more information about the nature and function of any such DRM software, in clear language, at or near the time of purchase.

16. I also understand that the Settlement Agreement requires Sony BMG to waive and forgo its rights under EULAs associated with the XCP and MediaMax CDs, to the extent these EULAs: (a) limit the use of audio files to certain software programs and musical devices; (b) prevent removal of the software from the user's computer; (c) require the user to update the software to continue to use the audio files; (d) require physical possession of the CD to hold a license for the digital content of the CDs; (e) require the user to indemnify Sony BMG from harm arising from the use of the CDs; (f) prevent copying of music files and other digital content on the CDs; (g) prevent the consumer from reselling the CDs; and/or (h) require termination of the license if the user files for bankruptcy protection or is declared insolvent.

17. To the best of my knowledge, there are no significant problems associated with the Sony BMG DRM software, or the EULAs associated with that software, which are not addressed by the Settlement. I believe that the proposed Settlement achieves all of the major goals of the litigation and compares favorably with the results the Class could expect to achieve after a complex and costly trial. In addition, I recognize there is no guarantee that if a trial was held, the Class would succeed on any or all of the claims asserted. Thus, the proposed Settlement permits an immediate resolution of the problems resulting from the installation of DRM software on Sony BMG CDs without the risk, delay, and expense of trial. Based upon my understanding of the claims and defenses in this litigation, and my understanding of the terms of the Settlement Agreement, I believe the proposed settlement is fair, adequate, and reasonable, and in the best interests of the Class members, and should therefore be granted final approval.

18. The Settlement Agreement states that Sony BMG is responsible for paying the attorneys' fees and expenses of Plaintiffs' counsel. This term of the Settlement allows the attorneys for the Class to be paid without diminishing the settlement benefits to the Class. Consistent with the Settlement Agreement, Sony BMG has agreed to pay a fee to the attorneys

6

for the Class. I understand that no fee negotiation between Sony BMG and Class Counsel occurred until after this Court had preliminarily approved the Settlement.

19. I believe the Settlement Agreement between Sony BMG and Plaintiffs' Class Counsel was reached at arms' length, and that the terms of the Settlement Agreement reflect the independent evaluation of Sony BMG and Class Counsel of their respective best interests. I have no reason to believe that the subsequently-negotiated fee payment, if approved by the Court, will result in excessive compensation to attorneys or any reduction in settlement benefits to the Class. Rather, I believe that the agreed fee payment will fairly compensate the attorneys for taking on this matter with no assurance of being compensated for their services, and for their skill and diligence in bringing the case to a successful conclusion on an expedited basis.

I declare under penalty of perjury under the laws of the United States of America and the State of Illinois that the foregoing is true and correct.

Executed this __ the day of March, 2006, at Saint Charles, Illinois.

_____
James Michaelson

7