# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

In re:

SONY BMG CD
TECHNOLOGIES LITIGATION

Case No. 1:05-cv-09575-NRB

---

## AFFIDAVIT OF PLAINTIFF AND CLASS REPRESENTATIVE DORA RIVAS IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**GIRARD GIBBS**
**& De BARTOLOMEO, LLP**
Jonathan K. Levine (JL-8390)
Daniel C. Girard (Pro Hac Vice)
Elizabeth C. Pritzker (Pro Hac Vice)
Aaron M. Sheanin (Pro Hac Vice)
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800

**KAMBER & ASSOCIATES, LLC**
Scott A. Kamber (SK-5794)
19 Fulton Street, Suite 400
New York, NY  10038
Telephone:  (877) 773-5469

*Class Counsel*

I, Dora Rivas, being duly sworn, declare as follows:

1.      I am an adult over 18 years of age and am legally competent to execute this affidavit. I currently reside in San Francisco, California.

2.      I am a named Plaintiff and Class Representative in a class action lawsuit, *Rivas v. Sony BMG Music Entertainment*, No. 05-CV-9598-NRB, filed in the United States District Court for the Southern District of New York on November 14, 2005, and subject to consolidation before the Honorable Naomi Buchwald as *In Re Sony BMG CD Technologies Litigation*, No. 05-CV-09575-NRB.  I hereby submit this affidavit, on behalf of myself and the entire Settlement Class, in support of Plaintiffs' Motion for Final Approval of Class Action Settlement.  The statements contained herein are true and accurate, and based upon personal knowledge, except those matters that are stated upon information and belief, which I believe to be true and accurate based upon my personal inquiry and/or review of information reasonably available to me.  If called to testify, I could and would testify to the following.

3.      Sometime in May and June 2005, I purchased three compact discs (CDs) that were marketed and sold by Sony BMG Music Entertainment ("Sony BMG"): (a) a CD entitled *Golden*, featuring the music of Elkland, marketed and sold by Sony BMG under the Columbia Records label; (b) a CD entitled *Contraband*, featuring the music of Velvet Revolver, marketed and sold by Sony BMG under the RCA Records label; and (c) a CD entitled *In Your Honor*, featuring the music of the Foo Fighters, also marketed and sold by Sony BMG under the RCA Records label.  Shortly thereafter, I copied the *Golden* and *Contraband* CDs to a personal computer at my parent's home in Tracy, California.  I tried to copy the *In Your Honor* CD to a personal computer at my home in San Francisco, California, but was unable to do so.  At the time of purchase and during installation to my parent's computer, and the attempted installation to my personal computer, I was not aware that the CDs contained digital rights management

("DRM") software that limited the number of copies I could make of the CDs, or that the DRM software limited the software programs and musical devices that I could use to listen to the CDs.

4.     In approximately early November 2005, I heard that certain Sony BMG CDs containing DRM software had other hidden software programs, or "rootkits," that effectively disable security protection programs, such as firewalls or anti-spyware programs, located on the user's computer, making that computer more susceptible to security vulnerabilities from third parties.  Concerned that the Sony BMG CDs that I had purchased contained similar DRM software and posed similar security problems to my and my parent's computers, I contacted the law firm of Girard Gibbs & DeBartolomeo, LLP.  After consultation with and further investigation by me and my attorneys, I concluded that each of the three Sony BMG CDs I had purchased, in fact, contained some form of DRM software.  Indeed, the *Golden* CD I had purchased contained a form of DRM software, now known to me as Extended Copy Protection ("XCP"), that had the hidden "rootkit" that I had previously heard about.  The *Contraband* and *In Your Honor* CDs contained another Sony BMG DRM software program, commonly known as Media Max.

5.     Following such consultation and investigation, I agreed to serve as a Plaintiff and Class Representative in class action litigation arising out of the use of DRM software on certain CDs marketed and sold by Sony BMG within the United States.

6.     By serving as a Class Representative, I understand that I assume some obligations beyond those of a plaintiff in an ordinary lawsuit.  Stated in simple terms, these responsibilities require me to make sure that the interests of the Class are served by the settlement.  These responsibilities also require me to ensure that the attorneys for the Class pursue the case diligently, and not place their own interests ahead of those of the Class.  I understand that any settlement must be approved by the Court and be fair to the Class.

7.     In addition, as a Class Representative, I understand that it is my responsibility to actively supervise the work done by my attorneys on the case and independently evaluate the sufficiency of any settlement proposed by the lawyers.  In evaluating the fairness of the settlement, I am required to consider the interests of all members of the Class as well as my own. I am free to disagree with my attorneys about the merits of a settlement and make my views known to the Court.

8.     I am familiar with the nature of this class action litigation against Sony BMG, First4Internet Ltd., and SunnComm International, Inc.  In my capacity as Plaintiff and Class Representative, I read and am familiar with the class action complaint entitled *Dora Rivas v. Sony BMG Music Entertainment*, filed on my behalf in the United States District Court for the Southern District of New York on November 14, 2005.  I also read, reviewed, and am familiar with the claims alleged in the consolidated amended complaint entitled *In Re Sony BMG CD Technologies Litigation*, which was prepared and filed by my attorneys in their role as Plaintiffs' Co-Lead Class Counsel, on December 28, 2005.

9.     I have been in contact with Plaintiffs' Co-Lead Class Counsel throughout the litigation, and have spoken frequently with my attorneys regarding the status of the litigation. Based upon these discussions with my attorneys, I am generally familiar with the nature and extent of Plaintiffs' Co-Lead Class Counsel's negotiations with counsel for Sony BMG, on behalf of the Class, throughout the months of November and December 2005 and thereafter.

10.     I understand that, ordinarily, the duty of Class Counsel would be to gather the factual proof necessary to prepare the case for trial, through investigation or formal discovery, or a combination of both.  I also understand, based on discussions with my attorneys, that the circumstances of this case dictated a different approach.  In this case, the ongoing nature of the harm – including the installation of an undisclosed "rootkit" on people's computers and the

3

creation of attendant security vulnerabilities, and the need to promptly remove XCP CDs and software from the marketplace – as well as the fact Sony BMG did not contest the facts alleged by the Plaintiffs and sought to negotiate a settlement of the claims asserted in the litigation on an expedited basis, meant that a "business as usual" approach would not have worked here.

11.    Had my attorneys insisted on slowing down the case to obtain documents and take depositions, no purpose would have been served.  I understand that discovery is designed to obtain additional factual information to position the case for settlement or trial, and that it is not an end in itself.  Given Sony BMG's expressed interest in negotiating a resolution of the class claims on an expedited basis, I believe the sensible thing for Plaintiffs' Class Counsel to do was to make sure that that they were sufficiently prepared to negotiate all settlement terms, to organize the various plaintiffs' attorneys and lawsuits arising out of the Sony BMG DRM software (to avoid wheel-spinning, unnecessary duplication, and competition among plaintiffs' lawyers), and to ensure that the proposed Settlement addressed all potential concerns associated with the Sony BMG DRM software and minimized the incentives for Sony BMG to attempt to install similar software on music CDs in the future.

12.    I reviewed the Settlement Agreement, discussed that Agreement with my attorneys, and am aware of and approve all terms of the proposed Settlement, as it affects the members of the Class and me.  Based upon this reading and my discussions with counsel, I understand that Sony BMG has agreed to stop manufacturing and distributing XCP CDs, and to stop manufacturing MediaMax CDs. I also understand that the Settlement provides for a recall of all Sony BMG CDs that contain XCP software, and permits Class members to either return their XCP CDs to the place of purchase, or exchange those CDs with Sony BMG directly, and receive an identical, "clean" CD without XCP software.  Sony BMG also agrees to provide a variety of incentives, including cash and free album downloads, to Class members who

participate in this XCP CD recall program. I understand that the album downloads available to Class members under the Settlement are available in several digital download formats – including *iTunes*, the most popular music download format available. Finally, I understand that the Settlement requires Sony BMG to publish and distribute to the public software programs that will allow consumers to (a) update the XCP and MediaMax programs on their computers to eliminate known security vulnerabilities, including the XCP "rootkit"; and/or (b) completely uninstall the XCP and MediaMax software programs from their computers.

13.    I am also aware that Sony BMG has agreed to several business practice changes as part of the Settlement and that, among other things, Sony BMG must inform consumers of the information it collects as part of the "phone home" feature of the XCP and MediaMax software, must limit the information it collects from this software only to that information necessary to provide the CDs with enhanced functionality, and must destroy that information within a short period time to prevent it being used for marketing or other unauthorized purposes. In addition, I understand that Sony BMG will implement several new "best practices" for any DRM software that it may include on music CDs in the future, including: (a) subjecting the software to independent pre-sale testing by qualified independent computer security personnel to make sure the software does not present any known computer security vulnerabilities; and (b) promptly identifying, fixing and removing any security vulnerabilities as may be discovered, post-sale, in any future DRM software or updates. Sony BMG also agrees to include plain-language disclosures – both on the exterior CD "jewel case" and in the End User Licensing Agreement ("EULA") found in the digital file portion of the CD itself – about the nature and function of any DRM software that Sony BMG may place on music CDs in the future. These improved disclosures will assist consumers in deciding whether to purchase and install Sony BMG CDs containing DRM software on their computers, by providing people with more information about

5

the nature and function of any such DRM software, in clear language, at or near the time of purchase.

14.     To the best of my knowledge, there are no significant problems associated with the Sony BMG DRM software which are not addressed by the Settlement. I believe that the proposed Settlement achieves all of the major goals of the litigation and compares favorably with the results the Class could expect to achieve after a complex and costly trial. In addition, I recognize that if a trial was held, there is no guarantee that the Class would succeed on any or all of the claims presented in this litigation. Thus, the proposed Settlement permits an immediate resolution of the problems resulting from the installation of DRM software on Sony BMG CDs, without the risk, delay, and expense of trial. Based upon my understanding of the Class claims asserted in this litigation, and my understanding of the terms of the Settlement Agreement, I believe the proposed Settlement is fair, adequate, and reasonable, and in the best interests of the Class members, and should therefore be granted final approval.

15.     The Settlement Agreement states that Sony BMG is responsible for paying the attorneys' fees and expenses of Plaintiffs' counsel. I understand that this term of the Settlement allows the attorneys for the Class to be paid without diminishing the settlement benefits to the Class. I am informed and believe, based on discussions with my attorneys, that Sony BMG has agreed to pay a fee of $2,300,000.00 to the attorneys for the Class. I also understand that no fee negotiations between Sony BMG and Plaintiffs' Class Counsel occurred until after this Court had preliminarily approved the Settlement.

16.     I believe the Settlement Agreement between Sony BMG and Plaintiffs' Class Counsel was reached at arms' length, and that the terms of the Settlement Agreement reflect the independent evaluation of Sony BMG and Class Counsel of their respective best interests. I have no reason to believe that the subsequently-negotiated fee payment, if approved by the Court, will

6

result in excessive compensation to attorneys or any reduction in settlement benefits to the Class. Rather, I believe that the fee payment will fairly compensate the attorneys for taking on this matter with no assurance of being compensated for their services, and for their skill and diligence in bringing the case to a successful conclusion on an expedited basis.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 4 the day of April, 2006, at San Francisco, California.

Dora Rivas

State of California      )
County of San Francisco )

On April 4, 2006, before me, Zackary M. Lyons, Notary Public, personally appeared Dora Rivas, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity on behalf of which the person acted, executed the instrument.

ZACKARY M. LYONS
Commission # 1362719
Notary Public - California
San Francisco County
My Comm. Expires Jun 28, 2008

WITNESS my hand and official seal.

7