# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>SONY BMG CD<br>TECHNOLOGIES LITIGATION | Case No. 1:05-cv-09575-NRB |

## CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS TO NAMED PLAINTIFFS

**GIRARD GIBBS**
**& De BARTOLOMEO LLP**
Daniel C. Girard (Pro Hac Vice)
Jonathan K. Levine (JL-8390)
Elizabeth C. Pritzker (Pro Hac Vice)
Aaron M. Sheanin (Pro Hac Vice)
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800

**KAMBER & ASSOCIATES, LLC**
Scott A. Kamber (SK-5794)
19 Fulton Street, Suite 400
New York, NY 10038
Telephone: (877) 773-5469

*Class Counsel*

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     THE PARTIES NEGOTIATED THE REQUESTED FEE AT ARM'S LENGTH
        AND SEPARATELY FROM THE CLASS BENEFITS, THEREBY CREATING A
        PRESUMPTION THAT THE FEE IS REASONABLE AND NOT THE PRODUCT OF
        COLLUSION.........................................................................................................2

  A.    Negotiated Attorneys' Fee Agreements Are Favored In Class Action Settlements............2

  B.    The Agreed-Upon Fee Carries A Presumption Of Reasonableness .....................................4

III.    ALL FEE NEGOTIATIONS WERE AT ARM'S LENGTH AND ONLY
        OCCURRED AFTER THE PARTIES REACHED AGREEMENT ON
        SETTLEMENT TERMS .......................................................................................6

  A.    The Parties Deferred Fee Negotiations Until After Preliminary Approval ..........................6

  B.    Class Counsel And Sony BMG Finalize Terms For An Agreed-Upon Fee Award ............9

IV.     THE AGREED-UPON FEE IS REASONABLE UNDER GOVERNING
        LEGAL CRITERIA.............................................................................................10

  A.    The Time And Labor Expended By Counsel ......................................................................11

  B.    The Magnitude And Complexities Of The Litigation ........................................................13

  C.    The Risks of the Litigation ................................................................................................14

  D.    The Quality Of Representation...........................................................................................15

  E.    The Requested Fee In Relation To The Settlement ...........................................................17

  F.    Public Policy Considerations..............................................................................................17

V.      THE AGREED-UPON FEE IS REASONABLE UNDER A LODESTAR
        CROSS-CHECK ANALYSIS ...........................................................................19

VI.     CLASS COUNSEL'S EXPENSES WERE REASONABLY AND
        NECESSARILY INCURRED..............................................................................20

VII.    THE INCENTIVE AWARDS FOR THE NAMED PLAINTIFFS ARE
        REASONABLE....................................................................................................21

VIII.   CONCLUSION....................................................................................................22

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

Arenson v. Board of Trade
372 F. Supp. 1349 (N.D. Ill. 1974)............................................................20

Behrens v. Wometco Enterprises, Inc.
118 F.R.D. 534 (S.D. Fla. 1988), aff'd, 899 F.2d 21 (11th Cir. 1990)...........................20

City of Detroit v. Grinnell Corp.
495 F.2d 448 (2d Cir. 1974) .................................................................20

Fears v. Wilhelmina Model Agency, Inc.
2005 U.S. Dist. LEXIS 7961 (S.D.N.Y. May 5, 2005) ..................................................21

Foster v. Boise Cascade, Inc.
577 F.2d 335 (5th Cir. 1978) ...............................................................12

Frank v. Eastman Kodak Co.
228 F.R.D. 174 (W.D.N.Y. 2005) ...........................................................21

Garst v. Franklin Life Ins. Co.
1999 U.S. Dist. LEXIS 22666 (N.D. Ala. June 25, 1999)..................................................5

Goldberger v. Integrated Resources, Inc.
209 F.3d 43 (2d Cir. 2000) .........................................................4, 10, 19

Hensley v. Eckerhart
461 U.S. 424 (1983) .......................................................................2

Hicks v. Morgan Stanley & Co.
2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005).............................................20

In re Cenco, Inc. Sec. Litig.
519 F. Supp. 322 (N.D. Ill. 1981).........................................................20

In re Combustion, Inc.
968 F. Supp. 1116 (W.D. La. 1997) .......................................................19

In re Continental Illinois Sec. Litig.
962 F. 2d 566 (7th Cir. 1992) ...........................................................3, 4

In re Copley Pharmaceutical, Inc.
1 F. Supp. 2d 1407 (D. Wy. 1998) .........................................................17

In re First Capital Holdings Corp. Financial Products Securities Litigation
[1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,937 (C.D. Cal. June 10, 1992),
appeal dismissed, 33 F.3d 29 (9th Cir. 1994) ................................................................................5

In re Lloyd's American Trust Fund Litig.
2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ............................................................20

In re Lupron® Mktg. & Sales Practices Litig.
2005 U.S. Dist. LEXIS 17456 (D. Mass. Aug. 17, 2005) .............................................................16

In re MDC Holdings Sec. Litig.
[1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,474, (S.D. Cal. Aug. 30, 1990) ..............2, 6

In re NASDAQ Market-Makers Antitrust Litig.
187 F.R.D. 465 (S.D.N.Y. 1998) ..................................................................................................19

In re RJR Nabisco
1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) ............................................................19

In re Sumitomo Copper Litig.
74 F. Supp. 2d 393 (S.D.N.Y. 1999) .......................................................................................14, 19

In re United Telecomms. Inc. Sec. Litig.
1994 U.S. Dist. LEXIS 9151 (D. Kan. June 1, 1994) ..................................................................16

In re Warner Comms. Sec. Litig.
618 F. Supp. 735 (S.D.N.Y. 1985) ...............................................................................................17

Johnson v. Georgia Highway Express, Inc.
488 F.2d 714 (5th Cir. 1974) ..........................................................................................................3

Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.
487 F.2d 161 (3d Cir. 1973) ..........................................................................................................12

Lobatz v. U.S. West Cellular of Cal, Inc.
222 F.3d 1142 (9th Cir. 2000) .........................................................................................................3

M. Berenson Co. v. Faneuil Hall Marketplace, Inc.
671 F. Supp. 819 (D. Mass. 1987) ..................................................................................................3

Malchman v. Davis
761 F.2d 893 (2d Cir. 1985), cert. denied, 475 U.S. 1143 (1986) ..................................................3

Maley v. Del Global Tech. Corp.
186 F. Supp.2d 358 (S.D.N.Y. 2002) .......................................................................................16, 19

McBean v. City of New York

233 F.R.D. 377 (S.D.N.Y. 2006) ........................................................................................4, 17

Rabin v. Concord Assets Group, Inc.
1991 U.S. Dist. LEXIS 18273 (S.D.N.Y. Dec. 19, 1991) ............................................20

Savoie v. Merchants Bank
166 F.3d 456 (2d Cir. 1999) ..........................................................................................19

Spann v. AOL Time Warner, Inc.
2005 U.S. Dist. LEXIS 10848 (S.D.N.Y. June 7, 2005) ...............................................21

Sutton v. Medical Service Ass'n of Pa.
1994 U.S. Dist. LEXIS 7512 (E.D. Pa. June 8, 1994) ....................................................6

Van Vranken v. Atlantic Richfield Co.
901 F. Supp. 294 (N.D. Cal. 1995) ................................................................................19

Vizcaino v. Microsoft Corp.
290 F.3d 1043 (9th Cir. 2002) ........................................................................................12

Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.
396 F.3d 96 (2d Cir. 2005) ...............................................................................................4

Weiss v. Mercedes-Benz of N. Am., Inc.
899 F. Supp. 1297 (D.N.J. 1995), aff'd, 66 F.3d 314 (3d Cir. 1995) ............................19

## STATUTES

28 U.S.C. § 1712(b)(2) ...................................................................................................19

Fed. R. Civ. P. 23(h) ....................................................................................................2, 8

Fed. R. Civ. P. 23(h)(1) ...............................................................................................2, 8

Fed. R. Civ. P. 23(h)(2) ...............................................................................................2, 8

## OTHER AUTHORITIES

Manual For Complex Litigation, Fourth (2004)
§ 40.23 .............................................................................................................................8

## I.    INTRODUCTION

Class Counsel submit this memorandum in support of their application for an award of $2.3 million in attorneys' fees and for reimbursement of $70,536 in expenses advanced in this case. Defendant Sony BMG Music Entertainment, Inc., ("Sony BMG") has agreed to pay these amounts separately from the benefits Class members will receive under the settlement.

The settlement is the product of vigorous and efficient efforts by Class Counsel on behalf of American consumers who bought or used music compact discs ("CDs") containing Digital Rights Management ("DRM") software marketed and sold by Sony BMG.   It offers an immediate and effective resolution to wide-spread public concern over security vulnerabilities and other problems associated with these CDs and software. The settlement benefits include: a recall of CDs containing Extended Copy Protection ("XCP") software; a return program to enable consumers to exchange XCP CDs for identical "clean" CDs without the software; cash incentives and free music downloads; software utility programs to update or uninstall DRM software from their computers; a two-year moratorium on Sony BMG's used of DRM software on CDs, going forward; a package of enhanced disclosures for consumers; and Sony BMG's commitment to adopt a series of consumer-oriented "best practices" for any DRM software it may use on CDs in the future. These and other benefits – and the relative efficiency with which they were negotiated – represent a win for consumers.

Sony BMG will pay the fees and expenses awarded by the Court separately from and without diminishing the benefits to Class members under the settlement. The requested fee and expenses were negotiated at arm's length and thus are presumptively reasonable. The requested fee also is reasonable in light of the work performed, complexities and risks of the litigation, and results achieved. The agreed fee will yield a modest multiplier on the time expended by or at the direction of Class Counsel. Accordingly, the Court should grant the application in full.

Class Counsel also apply for court approval of incentive payments in the amount of $1,000 to each of the Class Representatives in the consolidated action before this Court, and to other named plaintiffs, for their initiative and effort in pursuing the litigation to a favorable outcome for the Class. As with the requested fee, Sony BMG has agreed to pay these incentive awards separately from the benefits Class members will receive under the settlement.

## II. THE PARTIES NEGOTIATED THE REQUESTED FEE AT ARM'S LENGTH AND SEPARATELY FROM THE CLASS BENEFITS, THEREBY CREATING A PRESUMPTION THAT THE FEE IS REASONABLE AND NOT THE PRODUCT OF COLLUSION

### A. Negotiated Attorneys' Fee Agreements Are Favored In Class Action Settlements

It is common for the parties to a class action settlement to agree that defendants will pay attorneys' fees to plaintiffs' counsel separately from the benefits provided to the Class. Such an arrangement poses no particular problem for Court approval, so long as the amount of the fee is reasonable under the circumstances. Rule 23(h) of the Federal Rules of Civil Procedure incorporates this principle and states: "In an action certified as a class action, the court may award reasonable attorney fees and nontaxable costs <u>authorized</u> by law or <u>by agreement of the parties</u>." Fed. R. Civ. P. 23(h) (emphasis supplied).

Federal courts at all levels encourage litigants to resolve fee issues by agreement whenever possible. "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983); <u>see also</u> <u>In re MDC Holdings Sec. Litig.</u>, [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,474, at 97,487-88 (S.D. Cal. Aug. 30, 1990) ("Because this Court believes the parties should be encouraged to settle all their disputes as part of the settlement ... , including the amount of the fee, it believes that if the agreed-to fee falls within a range of reasonableness, it should be approved as part of the negotiated settlement between plaintiffs and defendants.");

2

M. Berenson Co. v. Faneuil Hall Marketplace, Inc., 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves."); Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.").

In affirming the award of a negotiated fee, the Second Circuit has observed:

> [W]here . . . the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the court for determination after the settlement.

Malchman v. Davis, 761 F.2d 893, 905 n.5 (2d Cir. 1985), cert. denied, 475 U.S. 1143 (1986); see also Lobatz v. U.S. West Cellular of Cal., Inc., 222 F.3d 1142 (9th Cir. 2000) (affirming award of fees and expenses, where defendant had agreed not to oppose request for fees and expenses up to negotiated ceiling and to be paid separately from class settlement benefits).

The virtue of a fee negotiated by the parties at arm's length is that it is, in effect, a market-set price. Defendants have an interest in minimizing the fee; plaintiffs have an interest in maximizing it; and the negotiations are informed by the parties' knowledge of the work done and result achieved and their views on what the court might award if the matter were litigated. In In re Continental Illinois Securities Litigation, 962 F.2d 566 (7th Cir. 1992), Judge Posner of the Seventh Circuit endorsed a market-based approach to evaluating fee requests. "[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price." Id. at 568. "It is to determine what the lawyer would receive if he were selling his services in the

market rather than being paid by court order." Id. "Markets know market values better than judges do." Id. at 570. "The object in awarding a reasonable attorney's fee . . . is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible." Id. at 572. Here, such a negotiation was feasible, and was conducted.

### B.   The Agreed-Upon Fee Carries A Presumption Of Reasonableness

This is not a common-fund settlement, where defendants typically have little interest in how much of the settlement consideration is allocated to attorneys' fees. Here, Defendants sought to minimize the fees, which they must pay in addition to the benefits they give the Class. Class Counsel wished to receive full compensation, as the law encourages, for undertaking this litigation on a priority basis and devoting the resources and skill necessary to bring it to a prompt and successful conclusion. Counsel for Defendants, on the other hand, had a keen interest in negotiating the smallest amount their clients would have to pay.

As Judge Lynch recently explained in McBean v. City of New York, 233 F.R.D. 377, 2006 U.S. Dist. LEXIS 5003 (S.D.N.Y. 2006), a court need not review an application for attorneys' fees with a heightened level of scrutiny where, as here, the parties have contracted for an award of fees that will not be paid from a common fund. "If money paid to the attorneys comes from a common fund, and is therefore money taken from the class," he reasoned, "then the Court must carefully review the award to protect the interests of the absent class members." Id. at *44 (citing Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 123-24 (2d Cir. 2005); Goldberger v. Integrated Resources, Inc., 209 F.3d 43 (2d Cir. 2000)). "If, however, money paid to attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members." Id. at *44-45. Judge Lynch concluded that the parties' agreement

4

for attorneys' fees in <u>McBean</u> was objectively reasonable because it was the product of arm's-length negotiations. <u>See id.</u> at *45.

The court in <u>In re First Capital Holdings Corporation Financial Products Securities Litigation,</u> [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,937 (C.D. Cal. June 10, 1992), <u>appeal dismissed,</u> 33 F.3d 29 (9th Cir. 1994), used similar reasoning in awarding a negotiated fee of $8 million. "The fee was negotiated at arm's length with sophisticated defendants by the attorneys who were intimately familiar with the case, the risks, the amount and value of their time, and the nature of the result obtained for the class." <u>Id.</u> at 93,969. "Where there is such arm's length negotiation and there is no evidence of self-dealing or disabling conflict of interest, the Court is reluctant to interpose its judgment as to the amount of attorneys' fees in the place of the amount negotiated by the adversarial parties in the litigation." <u>Id.</u>

In the present case, Sony BMG has agreed to pay an award of attorneys' fees of $2.3 million independent of the benefits to the Settlement Class. (<u>See</u> Settlement Agreement, ¶ IX.A, indicating the parties' agreement that Class Counsel will apply to the Court for a reasonable fee award which, if granted, will be paid by Defendants and "will not affect the Settlement Benefits provided to Settlement Class Members in any way"). The fee was negotiated at arm's length by sophisticated counsel familiar with the case, the risks for both sides, the nature of the result obtained for the class, and the magnitude of the fee the Court might award if the matter were litigated. Thus, the negotiated fee is entitled to a presumption of reasonableness. <u>See also</u> <u>Garst v. Franklin Life Ins. Co.,</u> No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666, at *81-82 (N.D. Ala. June 25, 1999) (awarding $12.2 million negotiated fee) ("The Court finds that the fee and expense negotiations were conducted at arm's length, only after the parties had reached agreement on all terms of the Settlement. There is absolutely no evidence in this case that the Settlement, or the fee and expense agreement, was in any way collusive. Under these

circumstances, the Court gives great weight to the negotiated fee in considering the fee and expense request."); Sutton v. Medical Service Ass'n of Pa., Civil No. 92-4787, 1994 U.S. Dist. LEXIS 7512, at *23-24 (E.D. Pa. June 8, 1994) (in awarding $3.7 million negotiated fee, finding, among other things, that fee was negotiated at arm's length and would not be paid from class benefits; that defense counsel believed amount was less than might have been awarded in litigation; and that amount was "fair in light of the effort, risk, quality of work and the result achieved"); MDC Holdings, [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,474, at 97,487-88 (awarding $3 million negotiated fee) ("MDC, its officers and directors and the insurance carrier were represented here by highly-skilled counsel, who did not seek protection from the Court in their negotiations as to fees and expenses to be paid in connection with the derivative settlement.").

## III. ALL FEE NEGOTIATIONS WERE AT ARM'S LENGTH AND ONLY OCCURRED **AFTER** THE PARTIES REACHED AGREEMENT ON SETTLEMENT TERMS

The requested fee contains further indicia of reasonableness. As detailed below, the parties' agreement for the payment of Plaintiffs' fees and expenses was made at arm's length, and even then, only after all material terms of the settlement were achieved.

### A. The Parties Deferred Fee Negotiations Until After Preliminary Approval

Sony BMG and Scott Kamber of Kamber & Associates, LLC began tentatively a potential resolution of this litigation in mid-November. (Joint Aff.[1], ¶ 16.) Mr. Kamber's goals were to secure immediate relief for consumers whose computers were exposed to XCP and MediaMax from malware and other security vulnerabilities, to remove XCP software from the market, and to distribute utilities to allow consumers to uninstall Sony BMG's content protection

---

[1] Citations to the Joint Affidavit Of Daniel C. Girard And Scott A. Kamber In Support Of: (1) Motion Of Class Counsel For Final Approval Of Class Action Settlement, And (2) Motion Of Class Counsel For Award Of Attorneys' Fees, Reimbursement Of Expenses And Incentive Award To Named Plaintiffs ("Joint Affidavit") are referred to herein as "Joint Aff., ¶ ___."

software. (Id.) For that reason, the ensuing settlement negotiations became the top priority of

Class Counsel, taking place on a daily basis for an entire month throughout the holidays until

preliminary approval papers were filed with the Court on December 28, 2005. (Joint Aff.,

¶¶ 17-24.) The negotiations involved numerous complex and technological issues. Class

Counsel were supported in their negotiations by the efforts of Executive Committee counsel and

their expert, Mark Russinovich, the "techie" who discovered the XCP rootkit. The parties agreed

to a broad package of compensatory and injunctive relief for Settlement Class Members

described in detail in Plaintiffs' motion for final approval of the settlement. (Joint Aff., ¶¶ 24-

25.) The settlement negotiations were at arm's length. (Joint Aff., ¶ 45.)

Despite having reached an agreement on all material terms of the settlement on or about

December 18, 2005, counsel did not engage in more than a preliminary negotiation over

attorneys' fees. (Joint Aff., ¶ 55.) Rather, to maintain focus on providing benefits to the

Settlement Class and fine-tuning certain aspects of the settlement, the parties agreed to defer fee

negotiations until well after the Court granted preliminary approval of the settlement. (Joint

Aff., ¶¶ 55-56.) The parties' agreement to defer fee discussion is reflected in the Settlement

Agreement as follows:

> A.   As of the date this Settlement Agreement was executed, the
> Parties have not substantially discussed either the amount of
> attorneys' fees or costs that Plaintiffs' counsel may ask the Court
> to award them. It is, however, the understanding of the Parties that
> Plaintiffs' counsel will apply for an award of attorneys' fees and
> reimbursable expenses in accordance with legal principles, that any
> fees and costs applied for and ultimately awarded by the Court will
> be paid by Defendants, and that Defendants' payment of Plaintiffs'
> attorneys' fees and reimbursable expenses will not affect the
> Settlement Benefits provided to Settlement Class Members in any
> way.

> B.  The Parties will seek to reach agreement on the amount of attorneys' fees and reimbursable expenses to be applied for. If the Parties reach agreement on the subject of fees and/or costs to be awarded to Plaintiffs' counsel prior to the sending of notice to Settlement Class Members, the Full Settlement Notice will reflect that agreement.

(Settlement Agreement, ¶ IX.A-B.)

Thus, the parties agreed that (1) Plaintiffs' counsel were entitled to a reasonable fee to be paid by Defendants; (2) the amount of the award would be negotiated on a separate basis following preliminary approval; and (3) the fee award would not affect the benefits to Settlement Class Members. (See id.)

Although fee negotiations began in earnest after the Court entered the Hearing Order on January 6, 2006, no fee agreement had been reached by the time notice was disseminated. Accordingly, the Full Settlement Notice informed Settlement Class Members as follows:

> Class Counsel and the Defendants may agree on the amount of attorneys' fees and expenses that Plaintiffs' counsel may request for legal work on behalf of the Class. Whether or not they agree, Class Counsel will submit a motion for an award of attorneys' fees and reimbursement of expenses to the Court no later than April 6, 2006.  A  copy  of  the  motion  will  be  available  at www.sonybmgcdtechsettlement.com. The Court will consider the motion at a Settlement Fairness Hearing on May 22, 2006. No matter how these issues are resolved, however, the amount of fees and expenses awarded to Plaintiffs' counsel by the Court will not affect in any way the settlement benefits to which you are entitled.

(Full Settlement Notice, ¶ 17 at 7.)

This form of notice complies with the requirements of Rule 23(h) of the Federal Rules of Civil Procedure in that it:  (1) provides notice that Class Counsel will move for an award of attorneys' fees and expenses by April 6, 2006; (2) informs Settlement Class Members that the motion will be published on the internet website for the settlement after it has been filed; and (3) affords Settlement Class Members the opportunity to review and object to the motion. See Fed. R. Civ. P. 23(h)(1) and (2).

8

**B.** **Class Counsel And Sony BMG Finalize Terms For An Agreed-Upon Fee Award**

Class Counsel and Sony BMG have entered into an agreement concerning the payment of attorneys' fees and litigation expenses ("Attorneys' Fee Agreement"), attached to the Joint Affidavit as Exhibit A. Under the Attorneys' Fee Agreement, Sony BMG agrees not to oppose an application by Class Counsel and the firms identified in Class Counsel's fee application for attorneys' fees of $2.3 million and reimbursement of expenses of up to $75,000, subject to additional terms described below. (Exh. A, ¶ II.A.) In accordance with the Court's Case Management Order No. 1 and the Settlement Agreement, Class Counsel undertook to negotiate a single agreed fee payment that would subsequently be allocated among participating plaintiffs' counsel in accordance with their respective contributions. (Joint Aff., ¶ 57.) See also Manual For Complex Litigation, Fourth, § 40.23, at page 793 n.2 (2004) ("In cases in which the court may award fees, time and expense records should ordinarily be submitted through lead counsel, if one has been appointed, in order to assist lead counsel in monitoring the activities of cocounsel and in preparing a single, consolidated report for filing with the court.").

Class Counsel requested time and expense information from all plaintiffs' counsel, and received in return sworn declarations from virtually all participating counsel. (Joint Aff., ¶ 58.) The declarations of plaintiffs' counsel who submitted their time and expenses to Class Counsel ("Fee Declarations") are being filed with the Court.

On March 30, 2006, Class Counsel were notified by one of the counsel for plaintiffs in *Ricciuti*, *Melcon*, and *Hull*, who are represented by the firms of Lerach Coughlin, Stoia, Geller, Rudman & Robbins LLP, Green Welling LLP, Lawrence E. Feldman & Associates, and the Electronic Frontier Foundation ("the *Ricciuti* Group"), that counsel for the *Ricciuti* Group were refusing to submit time and expense data to Class Counsel and were intending instead to file a separate application for attorneys' fees. (Joint Aff., ¶ 59.)

9

As represented in the Attorneys' Fee Agreement, "Sony BMG believes that the time expended and costs incurred by Plaintiffs' Class Counsel, and/or at the direction of Plaintiffs' Class Counsel, all of which is included in [Class Counsel's fee request], are the only time and expenses for counsel for Plaintiffs or Settlement Class Members compensable by SONY BMG in this matter." (Exh. A, ¶ II.B.)   Under the terms of the Attorneys' Fee Agreement, Sony BMG reserves the right to object to any applications for fees and/or expenses by any other counsel (including the *Ricciutti* Group), if the amount requested exceeds $250,000, individually or collectively.   Sony BMG represents in the agreement that "based on the information that it has, [Sony BMG] expects to object to any such request(s) to the extent that it or they individually or collectively exceed US$400,000." (Id.)

Under the Attorneys' Fee Agreement, Sony BMG and Class Counsel have agreed that if the Court awards more than $400,000 to the *Ricciutti* Group or any other counsel filing separate fee applications, individually or collectively, then Class Counsel's agreed-upon fee award would be reduced on a dollar-for-dollar basis to limit Sony BMG's total fee payment to $2.775 million. (Id., ¶ II.F.)   Class Counsel will therefore join Sony BMG in opposing any application by the *Ricciutti* Group's counsel and other plaintiffs' counsel to the extent they collectively seek an amount in excess of $400,000.   (Joint Aff., ¶ 61.)

## IV.   THE AGREED-UPON FEE IS REASONABLE UNDER GOVERNING LEGAL CRITERIA

The traditional criteria for determining whether a fee is reasonable include: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." Goldberger, 209 F.3d at 50 (citation omitted). In general, fee awards that do not create an unwarranted windfall for counsel are reasonable. See id. at 49.   Applying the six factors set forth in Goldberger to In re Sony CD Technologies

10

Litigation confirms that the amount of the parties' agreed fee is reasonable under the circumstances.

### A.     The Time And Labor Expended By Counsel

Class Counsel and Plaintiffs' Executive Committee[2] investigated, prosecuted and settled the litigation on a priority basis to address the fast moving circumstances of the litigation and the risk to Settlement Class Members' computers from viruses, spyware and other security vulnerabilities posed by the XCP and MediaMax CDs. From the time the actions were filed until settlement was achieved, Class Counsel treated the litigation as their first priority, logging hours throughout the holiday season.

The services included with this fee application include: conducting a pre-filing investigation and analysis; retaining experts and identifying and interviewing witnesses; testing the application of the software products at issue to personal computers; drafting the initial complaints and Consolidated Amended Class Action Complaint; negotiating the Settlement Agreement and all amendments with counsel for Defendants; drafting all settlement documents; drafting all papers in support of preliminary and final approval of the settlement; communicating with the Court; appearing at the preliminary approval at the January 6, 2006 hearing; coordinating plaintiffs' counsel's response to the motions for consolidation and transfer before the Panel, and drafting papers in support of the same; drafting the confidentiality agreement governing the exchange of information in confirmatory discovery; preparing a confirmatory discovery plan; negotiating the scope of confirmatory discovery with counsel for Defendants; reviewing and analyzing documents produced as part of confirmatory discovery; working with counsel for Defendants and the Claims Administrator to implement notice and the claims

---

[2] On December 1, 2005, the Court appointed the law firms of Milberg Weiss Bershad & Schulman LLP, Kirby McInerney & Squire, LLP, and Giskan & Solotaroff, LLP as Plaintiffs' Executive Committee. See CMO No. 1 at 5.

process; communicating with Settlement Class Members about the terms of the settlement and claims process; and monitoring the claims process. (Joint Aff., ¶ 23.)

This early settlement is a considerable benefit to the Settlement Class, because it provides, among other things, a timely mechanism for removing the threat of Sony BMG's DRM software from their computer systems. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1051 n.5 (9th Cir. 2002) ("We do not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief."). Foster v. Boise Cascade, Inc., 577 F.2d 335, 337 n.1 (5th Cir. 1978) ("A flash of brilliance by a trial lawyer may be worth far more to his clients than hours or days of plodding effort. Few among us would contend that an operation by a gifted surgeon who removes an appendix in fifteen minutes is worth only one-sixth that performed by his marginal colleague who requires an hour and a half for the same operation.").

As of April 6, 2006, Class Counsel and Plaintiffs' Executive Committee spent more than 2,751 attorney hours in the case for a total lodestar of $1,186,504. (Joint Aff., ¶ 62.) Class Counsel and Plaintiffs' Executive Committee were prepared to place at risk considerably more time, energy and money had the litigation not settled.

The time was calculated from contemporaneous, daily time records, which Class Counsel and Plaintiffs' Executive Committee regularly prepared and maintained in the ordinary course of business. Plaintiffs' counsel's rates are their actual current rates. See Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 167 (3d Cir. 1973) ("The value of an attorney's time generally is reflected in his normal billing rate."). These rates reflect the competitive market hourly rates for national cases involving complex litigation as well as the reputation, experience and success of the lawyers and firms involved.

Class Counsel also solicited declarations from other law firms which filed cases on behalf of plaintiffs in state and federal courts in various jurisdictions throughout the country. According to the declarations submitted, counsel for plaintiffs in other actions spent more than 1,416 attorney hours in the case for a total lodestar of $487,724.85. (Joint Aff., ¶ 63.) From the amount requested, Class Counsel will allocate fees to other plaintiffs' counsel based upon an assessment of the extent to which these firms provided services at the direction of Class Counsel or otherwise conferred a benefit upon the Settlement Class.

**B.   The Magnitude And Complexities Of The Litigation**

The host of complex technological issues presented by this litigation support a finding that the requested fee is reasonable.   Class Counsel is unaware of any other litigation involving a commercial product containing a rootkit and the dangers it poses to millions of consumers' computer systems. (Joint Aff., ¶ 48.) Understanding this exploit and the vulnerability it created for consumers was crucial to the case. Moreover, the threats to consumers' systems from XCP and MediaMax evolved throughout the negotiations, as Sony BMG released ineffective and sometimes dangerous utilities to update or patch their content protection software. (Russinovich Aff., ¶ 16.) To negotiate for appropriate remedies, Class Counsel had to develop a thorough understanding of the technologies and harms they presented.

As the Court is aware, the settlement benefits are wide-ranging.  Among these benefits are:  an incentive-based recall program for XCP CDs; the cessation of Sony BMG's use of XCP and MediaMax; the distribution of utilities to update and uninstall the software; the provision of meaningful disclosures on future content protection software; independent testing of future software for security vulnerabilities; fixes for confirmed security vulnerabilities; limits on the information about consumers that Sony BMG can collect and retain through its content protection software; and the waiver of onerous provisions of the EULAs for the software.

Negotiations over each of these concessions were often complex. (Joint Aff., ¶ 49.) Among other things, each of these issues required a reasonable understanding of the technology involved and the effect of the software on consumers' computer systems. (Id., ¶ 48.) Seemingly straight-forward matters, such as the best practicable form of notice, were complicated by the need to determine the extent to which the "phone home" technology in the CDs themselves could be used to provide information about the settlement directly to Settlement Class Members. (Id., ¶ 49.)

Further complicating the litigation was the fact that the attorneys general of several states and the Federal Trade Commission were pursuing separate investigations into Sony BMG's use of DRM software on music CDs marketed and sold in the United States. An action by the Attorney General of the State of Texas against Sony BMG remains pending. To account for these government inquiries, Class Counsel negotiated a "most favored nations" provision of the settlement which will augment benefits to all Settlement Class Members, if Defendants provide additional benefits to a subset of them through the settlement of a government inquiry.

In sum, the prompt resolution of this case on the favorable terms achieved in the settlement by Class Counsel is an outstanding result in light of the complexities and magnitude of the litigation.

### C.     The Risks of the Litigation

Plaintiffs' counsel undertook the prosecution of this complex matter on a wholly contingent basis. No client or class member was asked to pay fees or advance costs. Unlike defense counsel, who were compensated on a current basis, Plaintiffs' counsel have received no compensation and have incurred $69,788 in out-of-pocket costs. (Joint Aff., ¶ 66.) See In re Sumitomo Copper Litig., 74 F. Supp.2d 393, 399 (S.D.N.Y. 1999) (noting that class counsel not only undertook risks of litigation, but advanced their own funds and financed the case). Class

Counsel also deferred engaging in other work, focusing their efforts on achieving a favorable result on an expedited basis.

The subject matter of the litigation posed additional risks. This case involved the interaction of software with millions of consumers' computers, presenting vexing problems of proof, as the dangers posed by the XCP and MediaMax software are inherently transitory. (Joint Aff., ¶ 52.) The likelihood that Sony BMG or a software security company would develop and release on a widespread basis effective utilities to patch, update or uninstall Sony BMG's content protection software created a risk that Plaintiffs would not have been able to establish damages. (Id.) At some point, the advent of new software and computer systems would have undermined any effective remedy that could have been achieved through litigation. (Id.) Finally, there is a significant risk that the diversity of computer systems and software configurations would have caused individual issues to predominate the litigation, thus precluding class certification.

Class Counsel bore these risks and were prepared to litigate this case to trial and on appeal, if necessary. The requested fee takes these risks into consideration.

### D.    The Quality Of Representation

Class Counsel were well-qualified from the outset to pursue this case. Their professional background, qualifications and experience are set forth in the declarations submitted herewith. As shown by those declarations, Girard Gibbs & De Bartolomeo LLP has a great deal of experience in the prosecution and successful resolution of complex class actions, including those involving computer software and other complex technologies. (Joint Aff., ¶ 46.) Kamber & Associates, LLC also has successfully litigated a wide variety of technology-related class action cases. (Joint Aff., ¶ 47.)

Courts routinely recognize the experience of class action counsel in determining the reasonableness of a fee award. See In re Lupron® Mktg. & Sales Practices Litig., No. 01-cv-

10861-RGS, 2005 U.S. Dist. LEXIS 17456, at *14 (D. Mass. Aug. 17, 2005) ("MDL counsel are experienced in the handling of complex consumer class litigation. The court has previously found counsel involved on both sides of the MDL proceedings to be 'honorable litigators devoted to the interests of their clients...'"); In re United Telecomms. Inc. Sec. Litig., Civil Action No. 90-2251-O, 1994 U.S. Dist. LEXIS 9151, at *10 (D. Kan. June 1, 1994) ("Based upon a review of the attorney affidavits and firm biographies submitted by plaintiffs' counsel and the laudatory comments of Judge Walton regarding counsel for both sides at the settlement hearing, the court finds that plaintiffs' counsel were experienced and qualified attorneys with outstanding professional reputations in securities litigation who ably and zealously prosecuted the instant case on behalf of the class.").

In addition, the quality of representation is commonly measured by the result obtained. See Maley v. Del Global Tech. Corp., 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002). Class Counsel achieved a comprehensive settlement of claims which provides far-reaching injunctive and compensatory relief for the Settlement Class. These benefits include the XCP recall and exchange program, MediaMax compensation, effective and readily available uninstallers and updates for XCP and MediaMax, Defendants' waiver of rights under the EULAs, and Sony BMG's implementation of a "best practice" approach to future DRM software releases. These benefits are outstanding and provide meaningful relief to all consumers affected by the XCP and MediaMax software contained on Sony BMG music CDs.

Class Counsel's decision to avoid additional litigation costs and settle at this juncture also supports a finding of effective representation. A business as usual approach to litigation, with motion practice and protracted discovery skirmishing would have resulted in cost and delay, but would not have resulted in greater benefits to the Settlement Class. As a result, the Settlement Class was well-served by Class Counsel's decision to engage in early settlement discussions.

See McBean, 2006 U.S. Dist. LEXIS 5003, at *17-18 (where all parties "agree upon the basic facts as they relate to the plaintiff class ... class counsel's decision to forgo additional discovery in the hopes of minimizing costs and achieving a quick recovery for their clients ... falls within the bounds of 'effective representation'").

Finally, the quality of opposing counsel is also an important factor for the Court to consider in evaluating the quality of services provided by Class Counsel. See, e.g., In re Warner Comms. Sec. Litig., 618 F. Supp. 735, 749 (S.D.N.Y. 1985). Sony BMG was represented by Debevoise & Plimpton LLP, a prestigious law firm, whose lawyers negotiated each issue, phrase and nuance contained in the settlement. As the court stated in In re Copley Pharmaceutical, Inc., 1 F. Supp. 2d 1407, 1413-14 (D. Wy. 1998), "the skill required to perform the legal service presented by the instant case was great, particularly where class counsel were faced with opposing counsel of such high quality." Plaintiffs' counsel have proven themselves equal to the task of working effectively and efficiently opposite Sony BMG's skilled counsel.

**E.**    **The Requested Fee In Relation To The Settlement**

The requested fee is reasonable in relation to the value of the settlement. The settlement provides a broad package of injunctive and compensatory relief and its value to the Settlement Class is substantial. In comparison, the requested fee amounts to a modest percentage of the value of the settlement.

**F.**    **Public Policy Considerations**

Public policy considerations also support the requested fee award. As described throughout the papers submitted to the Court, the XCP and MediaMax software contained on Sony BMG music CDs posed immediate, substantial and continuous dangers to Settlement Class Members' computer systems. In particular, XCP CDs and their associated software created significant reliability and security problems for millions of computers, as they installed hidden

17

computer files that consumers did not know were on their systems and which could not be updated or removed without impairing the functionality of those systems. (Russinovich Aff., ¶ 13.) Absent this class action, the claims of the vast majority of Settlement Class Members would not have been heard. Nor would Settlement Class Members have obtained an effective remedy for the dangers presented by Sony BMG's DRM software. In light of the public nature of this lawsuit and the outstanding result achieved, this settlement will cause other companies to think twice before placing rootkits on their legitimate software releases. (Russinovich Aff., ¶ 39.)

In addition, this settlement establishes a "best practice" approach for Sony BMG's development and use of future DRM software. The settlement requires Sony BMG to provide greater disclosures in simple, understandable language on the jewel cases for music CDs, in their EULAs, and throughout the software installation process. Sony BMG must provide consumers with enough information to allow them to make an informed decision as to whether they will accept the terms and conditions of Sony BMG's DRM-enhanced music CDs at or near the time of purchase or installation on their computers. Moreover, Sony BMG must make uninstallers available to consumers, have the content protection software independently tested for effectiveness and security concerns, and fix all confirmed security vulnerabilities discovered in the future. These "best practices" are crucial for consumers and may prompt other record labels to take similar measures for any DRM they use or are considering using on their music CDs marketing and sold in the United States.

By awarding the agreed-upon fees, the Court will compensate counsel for their work on behalf of the Settlement Class and encourage counsel to bring class actions for the benefit of consumers in the future.

## V.     THE AGREED-UPON FEE IS REASONABLE UNDER A LODESTAR CROSS-CHECK ANALYSIS

Under the lodestar method, "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." Goldberger, 209 F.3d at 47. "Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys." Id. (quoting Savoie v. Merchants Bank, 166 F.3d 456, 460 (2d Cir. 1999)). The Class Action Fairness Act of 2005 approves of awarding fees under a lodestar/multiplier analysis. See 28 U.S.C. § 1712(b)(2) ("Nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees.")

Under the lodestar method, the agreed-upon fee award of $2.3 million represents a multiplier of less than 2.0 on the total time spent by Class Counsel and the Executive Committee and a far more modest multiplier on the time spent by all plaintiffs' counsel represented in this fee application.

Federal courts routinely award multipliers in complex litigation matters and in class action proceedings. See, e.g., Maley, 186 F. Supp.2d at 369 (4.65 multiplier); In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (3.97 multiplier: "In recent years multipliers of between 3 and 4.5 have become common."); Weiss v. Mercedes-Benz of N. Am., Inc., 899 F. Supp. 1297, 1304 (D.N.J. 1995) (9.3 multiplier), aff'd, 66 F.3d 314 (3d Cir. 1995); In re RJR Nabisco, M.D.L. Docket No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702, at *15-20 (S.D.N.Y. Aug. 24, 1992) (percentage-based fee representing 6 times lodestar); In re Sumitomo, 74 F. Supp. 2d at 399 (2.5 multiplier); In re Combustion, Inc., 968 F. Supp. 1116 (W.D. La. 1997) (percentage based fee representing 3 times lodestar); Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995) (3.6 multiplier); Rabin v. Concord Assets

Group, Inc., 89 CIV 6130 (LBS), 1991 U.S. Dist. LEXIS 18273, at *4 (S.D.N.Y. Dec. 19, 1991)

(4.4 multiplier: "multipliers of between 3 and 4.5 have been common"); Behrens v. Wometco

Enterprises, Inc., 118 F.R.D. 534, 549 (S.D. Fla. 1988), aff'd, 899 F.2d 21 (11th Cir. 1990)

("[T]he range of lodestar multiples in large and complicated class actions runs from a low of

2.26 to a high of 4.5." (citations omitted)); In re Cenco, Inc. Sec. Litig., 519 F. Supp. 322, 327

(N.D. Ill. 1981) (4.0 multiplier); Arenson v. Board of Trade, 372 F. Supp. 1349, 1359 (N.D. Ill.

1974) (4.0 multiplier).

     Here, approval of the agreed-upon fee will not result in an excessive multiplier. See In re

Lloyd's American Trust Fund Litig., 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663, at *80

(S.D.N.Y. Nov. 26, 2002) ("[T]he resulting multiplier of 2.09 is at the lower end of the range of

multipliers awarded by courts within the Second Circuit."). The multiplier takes into account the

contingent nature of the fee, the risks of litigation, and the results achieved. See id. at *81-82

(quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 470-71 (2d Cir. 1974) ("No one expects

a lawyer whose compensation is contingent upon his success to charge, when successful, as little

as he would charge a client who in advance had agreed to pay for his services, regardless of

success.")).

     In sum, the attorneys' fees requested are reasonable under a lodestar cross-check analysis.

## VI.   CLASS COUNSEL'S EXPENSES WERE REASONABLY AND NECESSARILY INCURRED

     In addition to the time they spent, Plaintiffs' counsel incurred $69,788 in expenses in the

pursuit of this litigation. "Attorneys may be compensated for reasonable out-of-pocket expenses

incurred and customarily charged to their clients." Hicks v. Morgan Stanley & Co., 01 Civ.

10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *29 (S.D.N.Y. Oct. 24, 2005).

     The declarations of Plaintiffs' counsel describe these expenses by category. These

expenses were reasonably and necessarily incurred in the prosecution of this action. Per the

Attorneys' Fee Agreement, Sony BMG will pay up to $75,000 to reimburse Plaintiffs' counsel for out-of-pocket expenses incurred in the investigation, prosecution and settlement of the litigation. (Attorneys' Fee Agreement, ¶ II.A.) The award of costs will not affect the benefits to the Settlement Class Members whatsoever. (Settlement Agreement, ¶ IX.A.) Accordingly, Class Counsel respectfully request that the Court award reimbursement of these expenses in full.

## VII.   THE INCENTIVE AWARDS FOR THE NAMED PLAINTIFFS ARE REASONABLE

Class Counsel request approval of a modest incentive award to each of the named Plaintiffs and others identified in Exhibit D to the Joint Affidavit in the amount of $1,000 each. Defendants do not oppose these awards and will pay them, if approved, as provided by the Settlement Agreement. (Settlement Agreement, IX.C.)

"Incentive awards are not uncommon in class action cases and are within the discretion of the court." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005). Based on Class Counsel's experience, the amounts requested here are consistent with or below the amounts typically awarded in similar litigation. See Fears v. Wilhelmina Model Agency, Inc., No. 02 Civ. 4911, 2005 U.S. Dist. LEXIS 7961, at *9 (S.D.N.Y. May 5, 2005) (collecting cases illustrating a range of incentive awards and approving an award of $25,000). The incentive awards requested are justified in light of the plaintiffs' willingness to devote their time and energy to prosecuting a representative action and reasonable in consideration of the overall benefit conferred on the Settlement Class, and should be approved. See, e.g., Spann v. AOL Time Warner, Inc., 02 Civ. 8238, 2005 U.S. Dist. LEXIS 10848, at *27 (S.D.N.Y. June 7, 2005) (granting incentive award of $10,000 per plaintiff on class action settlement with total cash value of $2.9 million).

## VIII.   CONCLUSION

For the foregoing reasons, Class Counsel respectfully ask that the Court grant this application in full and (1) award $2.3 million in attorneys' fees and $69,788 in reimbursement of expenses, to be paid by Defendants; and (2) approve incentive awards to the named Plaintiffs and others in the amount of $1,000 each.

Dated: April 6, 2006

Respectfully Submitted,

**GIRARD GIBBS &**
 **De BARTOLOMEO LLP**

By: 

Daniel C. Girard (Pro Hac Vice)
Jonathan K. Levine (JL-8390)
Elizabeth C. Pritzker (Pro Hac Vice)
Aaron M. Sheanin (Pro Hac Vice)
601 California Street, Suite 1400
San Francisco, California  94108
Telephone:     (415) 981-4800
Facsimile:     (415) 981-4846

**KAMBER & ASSOCIATES, LLC**
Scott A. Kamber (SK-5794)
19 Fulton Street, Suite 400
New York, New York 10038
Telephone:     (877) 733-5469
Facsimile:     (212) 202-6364

***Class Counsel***

Peter Safirstein
Jennifer Czeisler
**MILBERG WEISS BERSHAD & SCHULMAN LLP**
One Pennsylvania Avenue
New York, New York 10119
Telephone: (212) 594-5300

Ira M. Press
**KIRBY MCINERNEY & SQUIRE LLP**
830 Third Avenue
New York, New York 10022

22