# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In re:

SONY BMG CD
TECHNOLOGIES LITIGATION

**ELECTRONICALLY FILED**

Case No. 1:05-cv-09575-NRB

## CLASS COUNSEL'S MEMORANDUM IN OPPOSITION TO RICCIUTI CLASS REPRESENTATIVES' APPLICATION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

**GIRARD GIBBS**
  **& De BARTOLOMEO LLP**
Daniel C. Girard (Pro Hac Vice)
Jonathan K. Levine (JL-8390)
Elizabeth C. Pritzker (Pro Hac Vice)
Aaron M. Sheanin (Pro Hac Vice)
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800

**KAMBER & ASSOCIATES, LLC**
Scott A. Kamber (SK-5794)
Dana B. Rubin (DR-8451)
19 Fulton Street, Suite 400
New York, NY 10038
Telephone: (877) 773-5469

*Class Counsel*

## I.    INTRODUCTION

Class Counsel submit this memorandum in opposition to the motion of the Electronic Freedom Foundation ("EFF"), Lerach Coughlin Stoia Geller Rudman & Robbins LLP, Green Welling LLP, Lawrence E. Feldman & Associates, the Rothken Law Firm LLP, and the Law Offices of Mallison & Martinez ("Ricciuti Counsel") for an award of $1,846,480.16 in attorneys' fees and reimbursement of expenses in the amount of $90,148.66.

Ricciuti Counsel argue the wrong legal standard in support of their motion. The motion is governed by case law addressing the limited circumstances in which *non-lead* counsel are entitled to be paid for work done prior to the appointment of lead counsel or at the direction of *lead* counsel. In essence, the cases say that District Courts can, at their discretion, pay non-lead counsel for services provided before the appointment of lead counsel, if those services prove valuable to lead counsel or otherwise confer a demonstrable benefit on the class. Tasks performed after appointment of lead counsel are only compensable if undertaken at the direction of lead counsel. In an effort to avoid the application of there exacting standards, Ricciuti Counsel apply for attorneys' fees based on the common fund doctrine.

There are two immediate problems with this approach. First, under Second Circuit law, this is not a "common fund" settlement, as Sony BMG has not committed to establish a settlement fund. Estimating the value of the settlement, which Ricciuti Counsel fix at $250 million (while claiming that the settlement was tainted by a "reverse auction"), does not transform the settlement into a common fund. The common fund doctrine does not apply, since there is no fund from which to compensate the attorneys for their services.

1

Second, even if the settlement had resulted in the creation of a common fund, Ricciuti Counsel cannot claim "credit" for creating the fund, since as non-lead counsel they did not perform the legal services that led to the settlement.  These services were provided by Class Counsel, the members of the Executive Committee and the other firms who chose to comply with the Court's Case Management Order No. 1 ("CMO No. 1") consolidating these cases and appointing lead counsel.

Considered in light of the governing legal standard, almost none of Ricciuti Counsel's time is compensable.  Ricciuti Counsel bear the burden of demonstrating that the services they provided before the appointment of lead counsel proved useful to lead counsel or otherwise conferred a benefit on the class.  Services provided after the appointment of lead counsel are only compensable if they were authorized by lead counsel.  Time devoted by Ricciuti Counsel identifying and conferring with clients, preparing and filing a California-only class action in Los Angeles County Superior Court, filing duplicative federal actions in the Northern District of California and a petition for coordination and transfer (to the Northern District of California) with the Judicial Panel on Multidistrict Litigation ("JPML") is not compensable, as these services benefited no one and were undertaken in a clumsy effort to bolster Ricciuti Counsel's standing.

While the cases uniformly disapprove of attempts by non-lead counsel to obtain compensation for duplicative work done before the appointment of lead counsel, Ricciuti Counsel's claim to compensation for duplicating the work done by Class Counsel, most of the services provided after the appointment of lead counsel is even more tenuous.  After the appointment of lead counsel, and after CMO No. 1 appointing lead counsel was served on the Ricciuti plaintiffs, Ricciuti Counsel billed time for exploring strategies for "creative objecting," lobbying regulators, negotiating with Class Counsel for the right to perform

"monitoring" services which were never provided and the like. These services were not requested or authorized by lead counsel and conferred no benefit on the Class.

Ricciuti Counsel had ample opportunity to seek modification of the Court's case management order. Rather than move to modify the Order, Ricciuti Counsel chose instead to ignore it. By engaging in unauthorized, duplicative and often disruptive activity, Ricciuti Counsel have complicated the resolution of this case, and consumed disproportionate amounts of Class Counsel and Sony BMG's counsel's time. By refusing to acknowledge that this Court's CMO No. 1 governs their activities and by bringing their own fee application, Ricciuti Counsel now propose to complicate the Court's work as well.

Under the standards governing compensation of non-lead counsel, the only services for which Ricciuti Counsel are arguably entitled to be paid are those provided during a period of approximately two weeks in December 2005, when at Sony BMG's invitation, Ricciuti Counsel reviewed a draft settlement agreement which counsel for Sony BMG and Class Counsel had negotiated, and in conjunction with Class Counsel, negotiated a change to the settlement agreement allowing purchasers of MediaMax 5.0 CDs to obtain a single free album download from a list of available titles negotiated by counsel. Class Counsel agree with Sony BMG that a *quantum meruit* fee for their services in the range of $100,000 appears reasonable.

## II.   APPOINTMENT OF LEAD COUNSEL

On December 1, 2005, the Court entered stipulated CMO No. 1, consolidating the four class actions then pending in the Southern District of New York, appointing Girard Gibbs & De Bartolomeo LLP and Kamber & Associates LLC to serve as plaintiffs' interim class counsel, and appointing Milberg Weiss Bershad & Schulman LLP, Kirby McInerney & Squire LLP, and Giskin & Solotaroff LPP to serve as plaintiffs' Executive Committee.

(Joint Affidavit of Daniel C. Girard and Scott Kamber ("Joint Aff."), ¶ 13; see also Declaration of Jeffrey S. Jacobson in Opposition to "Ricciuti Counsel's" Motion for the Award of Attorneys' Fees ("Jacobson Decl."), ¶¶ 16-17.) As contemplated by the Manual for Complex Litigation, Fourth, ("MCL") §§ 21.11 and 40.22, the CMO No. 1 sets forth the duties and responsibilities vested in interim lead counsel and the Executive Committee:

a. To coordinate all proceedings, including preparing, structuring, and presenting pretrial and other management-related orders;

b. To encourage full cooperation and efficiency among all counsel;

c. To . . . delegate responsibilities for specific tasks in a manner to assure that pretrial and trial preparation is conducted effectively, efficiently, and economically;

d. To delegate work responsibilities and monitor the activities of counsel to assure that schedules are met and unnecessary expenditures of time and expenses are avoided;

\* \* \*

g. To initiate and conduct settlement negotiations with counsel for the Defendant;

h. To determine Plaintiffs' position on all matters arising during this litigation (after consultation with other counsel as they deem appropriate) . . . .

i. To consult with and employ experts, as necessary; [and]

\* \* \*

n. To perform such other duties as are necessary in connection with the prosecution of this litigation.

CMO No. 1, at pp.4-5; see also MCL, supra, § 21.11, at p. 246. The Court's order also conforms with the MCL by directing that the terms of CMO No. 1 "shall apply" to "[e]ach new case that arises out of the Consolidated Action which is filed in this Court or transferred to this Court, . . . unless a party in such newly-filed or transferred action objects

to . . . any provision of this Order, within ten (10) days after the date upon which a copy of this Order is served on counsel for such party, by filing an application for relief" with the Court. CMO No. 1, at p. 3; see also MCL § 40.22, at p. 741.

Ricciuti Counsel filed a class action complaint on behalf of individual Plaintiffs Tom and Yvonne Ricciuti and Mary Schumacher in this Court on December 5, 2005, three weeks after the previous four actions had been filed in this Court, and several days after entry of the Court's CMO No. 1.  (See Jacobson Decl., ¶¶ 16-17, 30.)  Ricciuti Counsel were alerted to the organizational structure and leadership roles and responsibilities of interim lead counsel set out in the Court's Order.  Ricciuti Counsel did not seek modification of the leadership structure, or challenge or modify CMO No. 1 in any way – despite having been afforded extensions of time until at least December 31, 2006 to do so.

Ricciuti Counsel nevertheless maintain that plaintiffs in the four cases that were pending in this Court when CMO No. 1 was entered acted improperly by conferring among themselves and agreeing on leadership structure for inclusion in the proposed consolidation order.  There is no merit to this claim.  The End User License Agreement at issue in this case includes a provision fixing venue in the state or federal courts of New York.  The parties to the New York actions are not responsible for the fact that Ricciuti counsel were thrashing about in California state court when CMO No. 1 was entered.  Even after they became aware of the New York actions, Ricciuti Counsel attempted to force the transfer of the cases to California.  The parties to the New York actions had no obligation to suspend their organizational efforts in order to negotiate with Ricciuti Counsel.

III.   **ARGUMENT**

    A.   **THE LAW GOVERNING RICCIUTI COUNSEL'S FEE CLAIM**

        1.   **This is Not a Common Fund Case**

Ricciuti Counsel's motion is premised on the "common fund doctrine." (Ricciuti Class Representatives' Memorandum of Law In Support of Motion For An Award Of Attorneys' Fees And Reimbursement Of Expenses ("Ricciuti Counsel Memo."), at 22-25.) The doctrine does not apply. "Under the 'common fund doctrine,' a party that secured 'a fund for the benefit of others, in addition to himself, may recover his costs, including his attorney's fees, from the fund itself or directly from the other parties enjoying the benefit.'" In re Holocaust Victim Assets Litig., 424 F.3d 150, 156-57 (2d Cir. 2005) (quoting Savoie v. Merchants Bank, 84 F.3d 52, 56 (2d Cir. 1996)). "The actions of the party seeking to recover costs must, however, be 'a substantial cause of the benefit obtained.'" Id. at 157 (quoting Savoie, 84 F.3d at 57).

There is no common fund here. Sony BMG has not set aside a fund of money to be shared among Class Members. Rather, the compensation available to Class Members is on an individual, claims-made basis. The injunctive relief does not establish a common fund. See In re Excess Value Ins. Coverage Litig., MDL No. 1339, M-21-84 (RMB), 2004 U.S. Dist. LEXIS 14822, at *58 (S.D.N.Y. July 30, 2004) ("'Particularly where the common benefits are in the form of discounts, coupons, options, or declaratory or injunctive relief, estimates of the value or even the existence of a common fund may be unreliable, rendering application of any percentage-of-recovery approach inappropriate.'") (quoting MCL, § 14.121).

Even if the common fund doctrine applied, Ricciuti Counsel could not prove their work led to the settlement. Their own motion shows the difficulty inherent in their

position. Ricciuti Counsel claim that Class Counsel were the low bidders in a "reverse auction" orchestrated by Sony BMG. (Ricciuti Counsel Memo., at 14-15.) Even if this unsupported contention were true, Ricciuti Counsel would have to concede that the settlement was the product of Class Counsel's efforts, since they claim Class Counsel bear responsibility for the inadequate bargain. Ricciuti Counsel's fee application is an effort to evade the legal standard governing payment for services by non-lead counsel.

### 2. The Legal Standard Governing Compensation of Non-Lead Counsel in Class Actions.

The law governing non-lead counsel's fee entitlement in class action litigation where the Court has appointed lead counsel is well-settled. Non-lead counsel who meet their burden of demonstrating that they "provided valuable pre-appointment legal services to the class . . . are entitled to some compensation for those services." In re WorldCom ERISA Litig., No. 02-Civ-4816 (DLC), 2004 U.S. Dist. LEXIS 20671, at *40 (S.D.N.Y. Oct. 18, 2004), vacated on other grounds by 2004 U.S. Dist. LEXIS 22952 (S.D.N.Y. Nov. 15, 2004). The benefit conferred upon the class by non-lead counsel depends on the extent to which lead counsel used the facts, legal theories and work product developed by non-lead counsel. See id. at *35-36; In re Indep. Energy Holdings PLC Securities Litig., 302 F. Supp. 2d 180, 183 (S.D.N.Y. 2003) ("The benefit attributable to [non-lead counsel] depends on the extent of the contribution  made by the Leonard Complaint to the Consolidated Amended Class Action Complaint filed by [lead counsel]."). The issue is whether non-lead counsel can demonstrate that their work  "conferred any identifiable and lasting benefit on the class such that they should be distinguished from all of the other counsel who, like them, filed . . . actions around the country and were not ultimately selected as Lead Counsel." In re WorldCom ERISA Litig., No. 02-Civ-4816 (DLC), 2004

U.S. Dist. LEXIS 22951 (S.D.N.Y. Nov. 16, 2004). Fee requests for non-lead counsel who fail to show that they provided valuable pre-appointment legal services to the class are denied. See In re WorldCom ERISA Litig., No. 02-civ-4816 (DLC), 2004 U.S. Dist. LEXIS 20671, at *41.

After the Court appoints lead counsel, non-lead counsel may receive compensation only for those post-appointment legal services that they perform at the direction of lead counsel. See In re Indep. Energy Holdings PLC Securities Litig., 302 F. Supp. 2d at 183 ("Those fees incurred [by non-lead counsel] after the appointment of lead counsel on December 20, 2000 are non-compensable."). Compare In re Auction Houses Antitrust Litig., No. 00 Civ. 648, 2001 U.S. Dist. LEXIS 1989, at *13, modified on other grounds by 2001 U.S. Dist. LEXIS 11381 (S.D.N.Y. Apr. 20, 2001), ("[c]ompensation for services rendered at the request of interim lead counsel in the period prior to the appointment of plaintiffs' lead counsel . . . may be appropriate.").

A contrary rule concerning fee awards would encourage non-lead counsel to engage in duplicative, unnecessary, non-compensable work outside of the supervision of lead counsel in the hope of conferring some benefit, however minor, on the class, thereby justifying a fee application. It also would unnecessarily increase the costs of litigation and complicate proceedings before the Court. Cf. In re Prudential Secs. Inc. Ltd. P'ships Litig., MDL Docket No. 1005, M-21-67 (MP), 1995 U.S. Dist. LEXIS 22103, at *6-7 (S.D.N.Y. Nov. 20, 1995) (Because plaintiffs' counsel "organized themselves in order to provide for the efficient prosecution of the actions . . . the time of the Court was not taken up with disputes over case management issues, unnecessary pleadings were eliminated and discovery and motion practice protocols were established.").

Several recent decisions of courts in this District have applied these rules in determining whether to award attorneys' fees to non-lead counsel. For example, the court in In re Independent Energy Holdings concluded that non-lead counsel were entitled to compensation for their pre-appointment work in researching, drafting and filing their original complaint, because lead counsel subsequently incorporated non-lead counsel's theories of liability and expanded class definition in the consolidated complaint. See In re Indep. Energy Holdings PLC Sec. Litig., supra, 302 F. Supp. at 183.

In In re WorldCom ERISA Litigation, three sets of non-lead counsel moved for an award of attorneys' fees for pre-appointment legal services. Emanuele Counsel sought compensation for: (1) obtaining an order requiring WorldCom to provide notice to all laid-off employees that ERISA cases had been filed which challenged the general release of claims in the former employees' severance packages; and (2) filing a petition for consolidation of the Worldcom litigation with the JPML. 2004 U.S. Dist. LEXIS 20671, at *34. Vivien Counsel requested fees for investigating the case, communicating with class members, obtaining WorldCom's insurance policies, notifying the insurance carriers of the pending claims, and unsuccessfully moving to lift the stay of litigation in the bankruptcy court. Id. at *35-36. Local Counsel also sought fees for filing an ERISA action and unsuccessfully arguing before the JPML. Id. at *37.

The WorldCom court concluded that Emanuele Counsel were entitled to an award of fees for requiring WorldCom to provide notice, because that notice was valuable in informing class members of the pending litigation challenging the validity of the general release. In re WorldCom ERISA Litig., No. 02-Civ-4816 (DLC), 2004 U.S. Dist. LEXIS 22952, at *2 (S.D.N.Y. Nov. 16, 2004). The court rejected Emanuele Counsel's request for fees for filing the first petition for coordination before the JPML, because "it was inevitable

9

that such an application would be made by plaintiffs and defendants." Id. at *3. The court awarded fees for Vivien Counsel's successful defense of a motion to dismiss a WorldCom ERISA action before consolidation and appointment of lead counsel, as the ruling benefited the classs. In re WorldCom ERISA Litig., No. 02-Civ-4816 (DLC), 2004 U.S. Dist. LEXIS 22951, at *2-3. The court denied fees to Vivien Counsel, however, for filing the first WorldCom ERISA action, interacting with WorldCom's insurance carriers, and unsuccessfully seeking to lift the bankruptcy stay, because none of these services conferred a particular benefit on the class. Id. at *4-5. Finally, the court denied Local Counsel's request for fees for pre-appointment work, because Local Counsel "failed to show that it provided valuable legal services to the class prior to its appointment." 2004 U.S. Dist. LEXIS 20671, at *41.

Applying these standards, it is immediately apparent that very little of the time and expenses devoted by Ricciuti Counsel to this litigation are compensable.

### 3. Time Expended Conferring With Potential Plaintiffs Is Not Compensable

Ricciuti Counsel seek to be compensated for the time and expense they devoted to locating, soliciting and conferring with potential plaintiffs. Such activities are not compensable. See, e.g., City of Detroit v. Grinnell Corp., 560 F.2d 1093, 1100-02 (2d Cir. 1977) (time expended to acquire clients not compensable); In re Medco Health Solutions, Inc. Pharmacy Benefits Mgmt. Litig., No. 03 MDL 1508 (CLB), 2004 U.S. Dist. LEXIS 28606, at *41, vacated and remanded on other grounds, 433 F.3d 181 (2d. Cir. 2005) (conferring with potential plaintiffs who wish to participate in class litigation not compensable).

### 4.   Time Spent Researching And Filing Duplicative Complaints And "Piling On" Is Not Compensable

Review of the time records submitted by Ricciuti Counsel indicates that over 250 hours of attorney time, including more than 100 hours of partner time by the Green Welling firm, 76 partner hours by the Lerach firm, and more than 80 hours by "in-house counsel" at EFF, were spent investigating, researching, drafting and filing four nearly identical complaints. See Affidavit of Elizabeth C. Pritzker ("Pritzker Aff."), at ¶ 22. Ricciuti Counsel's original complaint, brought on behalf of a California-only class, was filed on November 21, 2006 – some three weeks after five separate class action complaints has been filed by other plaintiffs in the California courts. By the time the Ricciuti action was filed in this Court on December 5, 2006, at least a dozen major class action lawsuits alleging substantially similar claims had been filed around the county.

Even after filing the Ricciuti action, Ricciuti Counsel brought two additional, duplicative lawsuits, the Melcon and Klemm actions in the Northern District of California on December 8 and 9, 2005, respectively. After filing the two unnecessary Northern District of California actions, Ricciuti Counsel drafted and filed a motion for coordination with the JPML, seeking transfer of the actions that were pending in this Court to the Northern District of California.

Ricciuti Counsel devoted at least 26 partner hours to preparing their MDL petition to consolidate the superfluous Northern District of California actions. See id. Ricciuti Counsel have not attempted to explain how these efforts benefited the Class or proved useful to anyone. Ricciuti Counsel were simply attempting to game the system, in a fit of *pique* over their failure to secure appointment as lead counsel.

11

Ricciuti Counsel also seek to be paid over $21,000 in expenses for experts, copying, filing and other costs associated with the preparation and filing of these complaints. See id. Ricciuti Counsel have not attempted to show that the preparation and filing of these complaints proved useful to Class Counsel in any way. None of these expenditures are compensable.

If anything, Ricciuti Counsel's generation of supplemental class action complaints in each of several jurisdictions "complicated the proceedings by increasing  costs of coordination."  In re Auction Houses Antitrust Litig., supra, 2001 U.S. Dist. LEXIS 1989, at *12. Such efforts do not benefit the Class, and are not compensable here. "There is no reason to compensate such piling on, much less create an incentive to repeat it." Id. As the Court observed in the In re Auction Houses Antitrust Litig.:

> [T]he filing of scores of duplicative class action complaints served no useful purpose. It simply multiplied the number of individual plaintiffs and their respective individual lawyers without benefiting the class. These activities will not be compensated.

Id., at *11 n.7; see also In re Heritage Bond Litig., supra, 2005 U.S. Dist. LEXIS 13627, at *56 (counsel's efforts in drafting the fourth putative class action filed in federal court concerning the same subject matter were not compensable because such efforts did not confer any benefit to the class); In re Cendant Corp. Sec. Litig., 404 F.3d 173, 195-97 (3d Cir. 2005) (drafting and filing of duplicative complaint for consolidation with an already pending action not compensable).

The stringent standard imposed by courts on non-lead counsel seeking compensation for pre-appointment activity is evident in In re WorldCom ERISA Litig., No. 02-Civ-4816 (DLC), 2004 U.S. Dist. LEXIS 22952, at *3 (S.D.N.Y. Nov. 16, 2004). Judge Cote denied compensation to non-lead counsel who filed the MDL petition to coordinate

the federal securities and ERISA litigation arising out of the demise of Worldcom, on the grounds that the work would eventually have been undertaken by the lead plaintiffs or the defendants.  The motion of Ricciuti Counsel, who seek to be compensated for coordinating their own duplicative litigation, presents a far less compelling case than the Worldcom litigation, where Judge Cote declined to compensate non-lead counsel.  Id.

### 5.   Work Performed By Ricciuti Counsel On Behalf Of Its Own Constituents Or Individual Clients Is Not Compensable

Ricciuti Counsel also claim substantial time and expense, in November 2005, for: (a) "notifying its membership . . . that the Sony BMG rootkit was an issue with grave security and privacy concerns," (b) "communicating with industry experts" about such issues, (c) "mobilizing" citizens through the EFF Action Center, (d) publishing articles about the security vulnerabilities associated with Sony BMG's DRM software, and (e) notifying EFF's members and others about Sony BMG's conduct in an "open letter" on behalf of the organization and published to the EFF website.  See Joint Decl. of Riciutti Counsel, at ¶¶ 3, 9-13.  Additionally, following preliminary approval of the settlement, Ricciuti Counsel claim to have voluntarily "spearheaded a 'get out the vote' campaign" about the settlement to EFF's nonprofit constituents.  Id., at ¶ 54.

Again, Ricciuti Counsel fail to show how these activities benefited the Class. EFF's outreach efforts were not approved by lead counsel, and these activities conferred no benefit upon the Class as a whole.  As a non-profit organization which advocates for consumer rights in electronic privacy issues, EFF would have undertaken these activities irrespective of whether it participated in any litigation.  Such efforts are not compensable. In re Auction Houses Antitrust Litig., supra, 2001 U.S. Dist. LEXIS 1989, at *12 ("Nor is there any reason for the class as a whole to compensate large numbers of lawyers for

individual class members for keeping abreast of the case on behalf of their individual clients, keeping their individual clients informed, or duplicating the efforts of lead counsel. If individual class members wished to have such services of individual counsel in addition to class counsel, they should bear the expense themselves."); see also In re Heritage Bond Litig., supra, 2005 U.S. Dist. LEXIS 13627, at *55 ("[A]ttorneys who confer no benefit on the class and simply serve [their own interests or] the interests of an individual plaintiff are not entitled to be compensated [for such efforts] from the common fund.").

      **6.**    **Fees And Expenses Incurred By The Ricciuti Counsel On Activities Unrelated To The Consolidated Actions Are Not Compensable**

Ricciuti Counsel seek compensation for activities which have no connection to the cases pending in this Court. For example, Ricciuti Counsel drafted an "open" demand letter posted by EFF on its website calling for a recall of all CDs containing MediaMax software. See Joint Decl. of Ricciuti Counsel, ¶¶ 13-14. This "open" demand letter was not served on behalf of any clients and did nothing to further the litigation. Id. Ricciuti Counsel also spent numerous hours researching and drafting a motion for a preliminary injunction and/or temporary restraining order in their California state action, to enjoin the sale of MediaMax CDs. See Joint Decl. of Ricciuti Counsel, ¶¶ 24-25. As this motion was never filed, let alone granted, there is no question that Ricciuti Counsel's work on these issues failed to confer an identifiable and lasting benefit on the Class. Additionally, Ricciuti Counsel paid more than $36,000 to computer security firm iSEC Partners who "discovered" a security vulnerability in the MediaMax software. See Cohn Decl., Exs. B and C. Within days, Ricciuti Counsel and Sony BMG jointly announced, apart from any of the lawsuits, that the vulnerability had been fixed by a software patch. See Jacobson Decl., ¶28. Although this resolution was not achieved through litigation, Ricciuti Counsel seek

fees and reimbursement of expenses for associated work from the Court. Ricciuti Counsel make no effort to show how these services relate to the consolidated actions, much less show how they benefited the Class. They are not compensable. See In re Auction Houses Antitrust Litig., supra, 2001 U.S. Dist. LEXIS 1989, at *13 (denying compensation for work that "plainly had nothing to do with the action").

### 7.   Time Spent Reviewing And Commenting On Work Product Of Other Counsel Is Not Compensable

Ricciuti Counsel spent at least 372 hours attorney hours and $4,000 in expert witness fees (a) reviewing and commenting on the draft settlement documents prepared and circulated by Class Counsel and counsel for Sony BMG, (b) monitoring the progress of other actions against Sony BMG nationwide, and (c) evaluating and commenting on the forms of banner notice prepared by Class Counsel in consultation with Sony BMG. See Joint Decl. of Ricciuti Counsel, at ¶¶ 35-41, 50; Jacobson Decl., ¶ 50-51. Indeed, Lawrence Feldman's time records indicate that he did little but bill time for reading and reviewing hundreds of emails on which he took no substantive action. Attorney time spent reviewing and commenting on the work product of others, or in conference with counsel on such matters, is not compensable attorney fee work. See In re AMF Bowling Sec. Litig., 334 F. Supp. 2d 462, 468 (S.D.N.Y. 2004) (The Court does "not consider a review by one set of class counsel of the work product of another set of class counsel to be recompensable, absent a particularized showing of the value that it added" for the class as a whole.).

Ricciuti Counsel participated to a limited extent settlement negotiations at Sony BMG's invitation. Time spent preparing for and participating in those negotiations may be compensable, at this Court's discretion. Ricciuti Counsel's failure to frame their motion in

accordance with the governing standard and segregate their time in compensable categories precludes a time-based award of attorneys' fees at this time, however, as Ricciuti Counsel's motion includes many hours devoted to duplicative or unnecessary review of settlement documents already reviewed by Class Counsel.

### 8. Time Spent Vying For Appointment As Lead Counsel or Negotiating With Lead Counsel Over Services That Were Never Performed Is Not Compensable

Ricciuti Counsel seek to be compensated for time EFF devoted to seeking strategy sessions devoted to advancing the interest of Ricciuti Counsel in being appointed lead counsel and corresponding and meeting with Class Counsel to enforce EFF's demand that it be delegated responsibility for monitoring Sony's compliance with aspects of the Settlement Agreement. See Joint Decl. of Ricciuti Counsel, at ¶¶ 40, 46-47. Time spent on these activities, which provided no benefit to the Class, is not compensable. In some cases, the interests of Ricciuti Counsel appear to have been the primary concern. For example, EFF claims that its decision to sign off on settlement terms was "conditioned" on EFF being assigned certain monitoring responsibilities. See id., at ¶ 46. (In an effort to avoid a dispute, Class Counsel offered in writing to give EFF responsibility for performing these tasks under Class Counsel's supervision. EFF refused, and no services were performed.) See Pritzker Aff. at ¶¶ 5-9. Whatever the motivations of Ricciuti Counsel for conditioning their support for the settlement on work being assigned to them, "time spent vying to become class counsel or promoting their lead plaintiff candidate is not compensable." In re Heritage Bond Litig., supra, 2005 U.S. Dist. LEXIS 13627, at *57.

9.      **Preparing Press Packets, Joining In "Blog Coverage," And Participating In Press Conferences Is Not Compensable**

Ricciuti Counsel also request payment for drafting press releases, publishing statements about the litigation or settlement on the EFF website, and responding to press calls and emails. See Joint Decl. of Riciutti Counsel, at ¶ 54-55, 57; Jacobson Decl., ¶ 43.  None of these efforts are compensable under Second Circuit law.  See Westchester Legal Servs., Inc. v. County of Westchester, No. 85 Civ. 3115 (SWK), 1987 U.S. Dist. LEXIS 410, *10 (S.D.N.Y. Jan. 27, 1987) ("There is no precedent for awarding fees for communications with newspapers and television stations and press conferences.  These are not hours 'expended on the litigation.'"); In Re Medco, supra, 2004 U.S. Dist. LEXIS 28606, at *41 ("There is no reasonable basis, in fact or in law," to compensate counsel for "writing opinion articles" for general publication.).

10.     **Time Expended In Communicating With State And Federal Regulators Is Not Compensable**

Several of Ricciuti Counsel's time entries show that they seek to be paid attorneys' fees for "provid[ing] work-product to the Texas Attorney General" regarding actions against Sony BMG, "sharing" work product with the Federal Trade Commission, and conferring with other state Attorneys General about the case and lead counsel's attempts at settlement, both before and after the Settlement Agreement was executed.  See Joint Decl. of Riciutti Counsel, at ¶¶ 30-33; Jacobson Decl., at ¶ 43.

Time spent by the Ricciuti Counsel communicating with state and federal regulators about Sony BMG is not compensable, for several reasons.  First, these communications were unauthorized.  Second, they did not relate to the litigation.  Third, they did not confer a substantial benefit on the Class.  See In Re Medco, supra, 2004 U.S. Dist. LEXIS 28606, at *41 (denying fees for attorney time expended by non-lead counsel conferring with Attorneys General engaged in their own litigation against Medco).

17

Finally, Class Counsel never authorized EFF or other Ricciuti Counsel to engage in a covert campaign to drum up regulatory activity against Sony BMG. EFF's attempts to inflame regulators, coming immediately after the parties had signed a Settlement Agreement, raise troubling questions about EFF's motivations and loyalties. Moreover, EFF's actions could have interfered with the implementation of the settlement and exposed the plaintiffs and their counsel to charges they had acted in bad faith by entering into a settlement agreement directed at resolving the litigation, while they were secretly encouraging or assisting regulators who were contemplating litigation or actively litigating cases against Sony BMG. Unauthorized and disruptive activity of this kind should not be compensated.

### 11. Efforts By The Ricciuti Counsel To Solicit Opt-Outs Or Assert "Creative Objections" Are Not Compensable

On December 27, 2005, nearly ten days after Ricciuti Counsel initialed a memorandum of understanding of settlement terms, and one day before Ricciuti Counsel executed the formal Settlement Agreement, one of Ricciuti Counsel, Lawrence Feldman, made time entries showing that he "composed and forward[ed] email advising 'Creative Objecting' may improve settlement agreement." An entry for December 29, 2005 indicates that attorney Feldman "reviewed email from C. Cohn regarding addressing questioning LEF's use of 'Creative Objecting' and its meaning." Subsequent entries by attorney Feldman on January 4, 2006 show further efforts by Feldman "noting importance of 'creative objecting.'" See Jacobson Decl., ¶ 43. As with Ricciuti Counsel's unauthorized contacts with regulators, Ricciuti Counsel's "creative objecting" strategy was not undertaken at the behest of Class Counsel. There is no precedent for compensating a settling party for creative objecting, whatever it is, and there is no indication that Ricciuti Counsel's exploration of a creative objection strategy conferred any benefit on the Class.

In any event, the law is clear:  efforts by counsel to solicit opt-outs or assert objections do not qualify as compensable attorney fee work.  See In Re Medco, supra, 2004 U.S. Dist. LEXIS 28606, at *43 (denying fees for time spent discussing opting out options).

### 12. Ricciuti Counsel's Attempts to Duplicate Or Supplement The Services Of Class Counsel Were Unnecessary And Disruptive

Riciutti Counsel suggest that their services were needed to supplement or bolster the work of Class Counsel in connection with the provision of notice to class members. (See Ricciuti Counsel Memo at 18.)  The Settlement Agreement provides for several forms of class notice:  among these is a form of banner notice that appears on MediaMax and XCP CDs.  CDs equipped with this functionality display a link to the Full Settlement Notice when a user inserts the CD into a computer with an active connection to the Internet.  See Settlement Agreement, ¶ VI.B.3.  Riciutti Counsel claim that they "negotiated the banner notices' look and feel" with Sony BMG after the Settlement Agreement was signed.  Joint Decl. of Riciutti Counsel, at ¶ 50.  What actually happened is that on January 4, 2006, at Riciutti Counsel's request, Class Counsel shared with Riciutti Counsel a form of banner notification that it had been negotiating with Sony BMG.  Pritzker Aff., ¶ 19.  On January 19, 2006, Riciutti Counsel forwarded to Class Counsel and to Sony BMG an alternative form of banner notification, which Ricciuti Counsel developed with an outside consultant whose retention Class Counsel had not authorized.  Id.  Sony BMG rejected the alternative design and language proposed by Riciutti Counsel, in favor of the banner notification negotiated with Class Counsel.  Id., ¶ 20.

Riciutti Counsel also claim they were misled about the number of MediaMax CDs that were banner-equipped, suggesting that at the time they signed the Settlement Agreement, they believed that all or most of the MediaMax CDs were equipped with this

function.  In fact, the parties negotiated the Settlement Agreement with the understanding that some but not all of the MediaMax CDs contained the banner function.  For this reason, the parties agreed that the Settlement Agreement would provide banner notification of settlement only on Sony BMG CDs that were "so equipped."  No one, except perhaps Ricciuti Counsel, believed that Sony BMG had represented that a particular percentage of CDs would have banner functionality.

Riciutti Counsel also complain that Class Counsel acted beyond the scope of their authority in negotiating an amendment to the Settlement Agreement, and submitting that amendment to the Court, without first consulting Riciutti Counsel.  As Class Counsel noted in a letter to the Court dated February 2, 2006, the Court's CMO No. 1 gives Class Counsel broad discretion to manage and settle the litigation.  CMO No. 1, ¶ I.2, II.1, II.3-5.  Allowing the Ricciuti plaintiffs to veto an amendment to the settlement would effectively undo the Court's order vesting in lead counsel the authority to settle the litigation.   In any event, the Ricciuti Plaintiffs' ultimately consented to the amendment, after demanding a symbolic language change, and their objections to the amendment proved meaningless.

### 13.    Fees And Expenses Incurred In Support Of The Ricciuti Counsel's Fee Application Are Not Compensable

The final category of expenses for which the Ricciuti Counsel seek compensation is for fees and expenses incurred in support of their fee motion.  Ricciuti Counsel cannot be considered a prevailing party, have no contractual fee entitlement, and offer no authority for the proposition that non-lead counsel can be compensated for time spent applying for attorneys' fees.  Such time, and the expenses incurred to compensate experts to support Ricciuti Counsel's application, are not compensable.

**B.     ANY FEE AWARD TO THE RICCIUTI COUNSEL SHOULD BE LIMITED TO NONDUPLICATIVE, COMPENSABLE WORK**

Class Counsel believe that a portion of the time spent by Ricciuti Counsel in the two-week period between December 12 and December 28, 2005, when draft settlement documents were being circulated among counsel, may be compensable.  During this time, some of the Ricciuti Plaintiffs' counsel, at Sony BMG's invitation, attended settlement negotiations and participated in settlement discussions.  The problem is that any compensable time is lumped in with hundreds of hours of time spent on non-compensable activities.

Even this read is generous:  the time entries submitted by Ricciuti Counsel are subsumed within large "block time entries" often totaling 10 hours or more in a single day, and contain virtually no information, other than pat phrases such as "attend to settlement terms," "read" or "review" settlement, or "review of email attaching Settlement Agreement," to allow the Court to determine what each lawyer within the group was actually doing on any given day.

Where, as here, "[t]here simply is no way to tell whether the time expended on matters . . . was justified," the Court should discount reported hours to yield a reasonable *quantum meruit* fee.  See In re Auction Houses Antitrust Litig., supra, 2001 U.S. Dist. LEXIS 1989, at *6; See also In Re Medco, supra, 2004 U.S. Dist LEXIS 28606, *36.  Few, if any, of the tasks for which Ricciuti Counsel seek compensation were "a substantial cause" of the settlement benefits obtained by Class members in this case.  See In Re Holocaust Victim Assets Litig., supra, 424 F.3d at 156-57.  See also In Re Medco, supra, 2004 U.S. Dist. LEXIS 28606, at *33-36 (fee award, if any, to non-lead counsel must be limited to "efforts actually directed towards achieving the benefits obtained").  Here, as in

Medco, Ricciuti Counsel "neither created the class action settlement nor . . . induce[d] acceptance of it by Defendants." In Re Medco, supra, 2004 U.S. Dist. LEXIS 28606, *13. To the extent that Ricciuti Counsel were simply part of "the finalization and fine tuning of provisions and documents after the Settlement had been agreed to in principle," their fee entitlement must be limited to actual, non-excessive work devoted to solely that task. Id., at *39.

## IV.   CONCLUSION

For all of the foregoing reasons, Class Counsel respectfully request that the Court award Ricciuti Counsel a reasonable *quantum meruit* fee in the range of $100,000.

DATED: May 3, 2006                      Respectfully submitted,

**GIRARD GIBBS & De BARTOLOMEO LLP**

By: _____   FOR DANIEL
                                  C. GIRARD
Daniel C. Girard (Pro Hac Vice)
Jonathan K. Levine (JK-8390)
Elizabeth C. Pritzker (Pro Hac Vice)
Aaron M. Sheanin (Pro Hac Vice)
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800

**KAMBER & ASSOCIATES LLC**
Scott A. Kamber (SK-5794)
Dana B. Rubin (DR-8451)
19 Fulton Street, Suite 400
New York, NY 10038
Telephone: (877) 773-5469

*Class Counsel*

Peter Safirstein
Jennifer Czeisler
**MILBERG WEISS BERSHAD & SCHULMAN LLP**
One Pennsylvania Avenue
New York, New York  10119
Telephone:  (212) 594-5300

Ira M. Press
**KIRBY MCINERNEY & SQUIRE LLP**
830 Third Avenue
New York, New York  10022
Telephone:  (212) 317-2000

Jason L. Solotaroff
**GISKAN & SOLOTAROFF LLP**
207 West 25th Street
New York, New York  10001
Telephone:  (212) 847-8315

*Plaintiffs' Executive Committee Counsel*