UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- x   **ELECTRONICALLY FILED**
:
:
:
In re SONY BMG CD Technologies Litigation    :   No. 05 CV 9575 (NRB)
:
:
:
----------------------------------------------------------------- x

**DEFENDANT SONY BMG MUSIC ENTERTAINMENT'S MEMORANDUM
IN SUPPORT OF FINAL APPROVAL OF THE SETTLEMENT**

Bruce P. Keller (BK-9300)
Jeffrey S. Jacobson (JJ-8872)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Counsel for Defendant Sony BMG
Music Entertainment*

SONY BMG Music Entertainment ("SONY BMG") submits this memorandum in support of Class Counsel's motion seeking final approval of the December 28, 2005 Settlement Agreement, to (1) provide facts concerning the plaintiffs' allegations, (2) affirm that it has complied with the Settlement Agreement's robust notice provisions and begun to provide benefits to Settlement Class Members, and (3) respond to the small handful of objections to the settlement.

*Privacy of Personally Identifiable Information.* The lawsuits in this matter were filed on the heels of Internet-fueled speculation that SONY BMG had used digital rights management ("DRM") software to "spy" on consumers' listening habits and to obtain personally identifiable information from consumers' computers. Those charges were totally false, as SONY BMG said at the outset and as has now been conclusively established by the independent "privacy audit" that SONY BMG voluntarily underwent as part of the settlement. SONY BMG's only motivation for including DRM software on certain audio CDs was its desire to protect valuable intellectual property. *See generally* Declaration of J. Scott Dinsdale dated May 10, 2006 ("Dinsdale Decl.") ¶¶ 10, 27-32 & Ex. D. It had no intent to collect, and did not collect, any personally identifiable information.

Cybertrust, the independent firm that SONY BMG retained to conduct the privacy audit, concluded "that the XCP and MediaMax software . . . only collect non-personal information tied to a particular album and its usage. . . . Cybertrust did not find any evidence that SONY BMG used the XCP Software or that SunnComm used the MediaMax Software, or that any of the enhanced content on XCP CDs or MediaMax CDs was used, to collect, aggregate, or retain information that could be identified with or tracked to an individual without such person's express consent." Dinsdale Decl. Ex. D. SONY BMG "does not know who or where its individual users are, it does not follow any individual user's listening habits

or computer usage, and it is not attempting to do so." *Id.* ¶ 32.  SONY BMG will repeat the privacy audit later in 2006 and in 2007.

As the Settlement Agreement requires, SONY BMG has posted Cybertrust's full report to its website.  A copy is attached as Exhibit D to the Dinsdale Declaration.  The report may be viewed at http://www.sonybmg.com/xcp-mediamax/Summary_Report_042106.html.  A link to the report appears on SONY BMG's home page and on the settlement website's main page.

***The Issues with "XCP" Have Proved To Be More Theoretical Than Real.***  Contrary to the initial reports circulating on the Internet, the XCP software cannot itself cause harm to a user's computer.  XCP has, however, been determined to contain a flaw that might allow hackers or other malicious third parties to place additional harmful code on a computer onto which XCP has been installed.  Dinsdale Decl. ¶ 13.  SONY BMG voluntarily recalled XCP CDs as soon as controversy about XCP erupted.  Extensive further investigation, however, has revealed that the alleged problems identified with XCP are more theoretical than real.

XCP's creator, First4Internet Ltd., designed certain XCP files to be "cloaked" — *i.e.,* not viewable through an ordinary Windows directory search.  (This cloaking feature has been described as a "rootkit," but the term "rootkit" ordinarily refers to a much broader, more invasive and intentionally harmful set of programming features not present in XCP.  *See* Dinsdale Decl. ¶ 14.)  The cloaking feature of XCP had the effect of protecting the software's intended function by making it difficult for an ordinary user to locate or delete it.  As is now known, however, hackers theoretically could use XCP's cloak to conceal a virus or other malicious code on the machine.  *See id.*

To the best of SONY BMG's knowledge, the alleged vulnerability with XCP has not led to any actual damage to any computers.  *See* Dinsdale Decl. ¶ 20.  Although SONY

BMG's experts are aware of two viruses designed by hackers to try to exploit this vulnerability, at least one of these viruses is too weak to have caused any damage. Neither of the two has resulted in any known damage. *Id.* ¶¶ 20-21.

For approximately the last six months, SONY BMG has provided access on its website (and more recently on the settlement website) to an update, or "patch," that users can download in order to remedy the vulnerability. Users also have the option to completely uninstall XCP. The update and uninstaller utilities have been tested by independent outside experts who have deemed them safe and effective. Dinsdale Decl. ¶¶ 18-19.

***Issues With MediaMax Appear To Be Even Less Serious.*** A single security vulnerability also was identified with respect to the DRM software known as "MediaMax version 5." This issue, known as a "privilege escalation vulnerability," is different from the one affecting XCP. Dinsdale Decl. ¶ 15. Most Windows-based computers are configured so that the individual designated as the machine's "administrator" has full rights to add or remove programs and can grant other users who have access to the computer a lesser set of rights. A privilege escalation vulnerability is one that may allow a non-administrator to obtain rights to add code to the machine, potentially including malicious code. Such vulnerabilities are fairly common and can be found in many well-known programs. *See id.*

The research conducted by SONY BMG's experts suggests that hackers have not even attempted to exploit the privilege escalation vulnerability associated with MediaMax version 5, much less done so successfully. *See* Dinsdale Decl. ¶ 21. Nonetheless, SONY BMG has provided a patch that removes the privilege escalation vulnerability and also facilitates removal of MediaMax if consumers choose that option. The MediaMax patch and uninstaller, like the ones provided for XCP, have been thoroughly tested and approved by independent security experts. *See id.* ¶¶ 18-19.

- 3 -

MediaMax version 5 also has been criticized because a portion of the software installs onto a user's computer before the user has a chance to accept or reject the End User License Agreement ("EULA") that displays shortly after a MediaMax version 5 CD is inserted into a Windows computer. SONY BMG was not aware of this aspect of MediaMax version 5 until a security researcher reported the issue to SONY BMG in late 2005. *See* Dinsdale Decl. ¶ 16. Since that time, SONY BMG's experts have tested these "pre-EULA download" files and concluded that they (1) can be readily deleted, and (2) because no viruses appear to have been created to try to exploit the privilege escalation vulnerability, have not caused any security-related damage to computers. *See id.* ¶ 17.

***The Settlement Has Been a Success.*** As explained in detail in the Declaration of Jennifer L. Pariser, Esq., dated May 8, 2006 ("Pariser Decl."), SONY BMG complied with all of the robust notice procedures called for in the Settlement Agreement. It sent nearly 2.5 million direct emails to persons who had joined the fan mailing lists of artists whose CDs were protected by XCP or MediaMax, or who contacted SONY BMG or co-defendant SunnComm about the XCP or MediaMax software. *Id.* ¶¶ 3-11. It also took out ads in all the newspapers and magazines specified in the Settlement Agreement, issued a joint press release with Class Counsel, programmed the "banner" feature available on all XCP CDs and six MediaMax version 5 CDs to display information about the settlement and purchased sponsored advertising links on the Google and Yahoo search engines. *Id.* ¶¶ 12-20.

In a pro-consumer departure from usual class action practice, SONY BMG agreed to begin providing settlement benefits even before the settlement received final approval. It has been fulfilling claims since February 2006. As of April 30, the settlement website had received more than 200,000 "hits." Thousands of people have submitted claims for settlement benefits — primarily the cash and free download benefits available to class members who

- 4 -

participate in the exchange program for XCP CDs. More than 36,000 people have downloaded the updates for XCP and MediaMax v.5. *See* Declaration of Jeffrey S. Jacobson dated May 10, 2006 ("Jacobson Decl.") ¶¶ 2-5.

***The Few Objections to the Settlement Are Not Well Founded.*** SONY BMG is aware of two objections having been filed to the settlement. The two objectors are David Nall and James Leitner. SONY BMG does not believe these objections are well founded.

Mr. Nall's main complaint — that even though he elected not to install MediaMax 5.0 on his computer, the "pre-EULA download" files compromised his computer and made it susceptible to a virus — is without merit. As explained above, (1) the "privilege escalation vulnerability" only affects computers used by multiple people to whom the computer's administrator has granted different levels of access; and (2) SONY BMG's experts are not aware of any viruses having even been *written* to exploit this alleged MediaMax vulnerability. Dinsdale Decl. ¶¶ 15, 21. It thus is highly improbable that any virus affecting Mr. Nall's computer targeted MediaMax-related files he may have installed.

Mr. Nall's separate complaint, that the uninstaller program is "useless" to him, is wrong. The MediaMax uninstaller that SONY BMG has made available deletes *all* MediaMax files, including the pre-EULA download files. If Mr. Nall wishes to play his MediaMax CDs on his computer, he may do so without exposure to security vulnerabilities — even if his computer is used by multiple people with different levels of access — if he simply downloads the patch that SONY BMG has made available. *See* Dinsdale Decl. ¶ 18. If Mr. Nall wants to transfer the Mediamax-protected music he has purchased to his computer without actually inserting the CD and installing MediaMax, he can do so readily by claiming the free MP3 download benefit that SONY BMG has provided as part of the settlement. *See* Jacobson Decl. ¶ 6.

Mr. Nall also complains that, of the 177 albums SONY BMG has made available for him to download for free as an added benefit, none is to his liking.  Mr. Nall describes these CD choices as generally not popular, but that is not so.  SONY BMG has sold nearly 82 million copies of these albums in the United States.  Twenty-four of the albums have sold more than a million copies each.  The albums, from more than 130 different artists, were specifically chosen to reflect a variety of tastes and genres, and Mr. Nall is the only class member to have submitted an objection on this ground.  Additionally, because the free download benefit is fully transferable, Mr. Nall can sell or give away his download right if he does not wish to take advantage of it himself.  *See* Jacobson Decl. ¶¶ 7-9.

Mr. Leitner's objection is that SONY BMG has not allowed him to exchange his MediaMax CD for a copy of the same CD without DRM software, so that he does not have to "keep remembering not to play this particular CD on [his] computer."  Mr. Leitner's objection, however, like Mr. Nall's, is unfounded.  Even if Mr. Leitner's computer has multiple users with multiple levels of access, he can resolve the security vulnerability by downloading the patch SONY BMG has made available.  The patch, once installed, prevents reinstallation of the security vulnerability even when additional MediaMax discs are played.  He can also play the music he has purchased even without installing MediaMax by taking advantage of the free MP3 benefit.

- 7 -

## CONCLUSION

For the reasons specified above, the settlement should receive final approval.

Dated: New York, New York
       May 10, 2006

>                           Respectfully submitted,
>
>
>                           _____s/ Jeffrey S. Jacobson_____
>                           Bruce P. Keller (BK-9300)
>                           Jeffrey S. Jacobson (JJ-8872)
>                           DEBEVOISE & PLIMPTON LLP
>                           919 Third Avenue
>                           New York, New York 10022
>                           (212) 909-6000
>
>                           *Counsel for Defendant Sony BMG*
>                           *Music Entertainment*