UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | x | |
| In re SONY BMG CD TECHNOLOGIES LITIGATION | : | Civil Action No. 1:05-cv-09575-NRB |
| | : | |
| | : | CLASS ACTION |
| | : | |
| This Document Relates To: | : | CONSOLIDATED REPLY IN SUPPORT OF |
| | : | THE RICCUITI CLASS |
| ALL ACTIONS. | : | REPRESENTATIVES' MOTION FOR AN |
| | x | AWARD OF ATTORNEYS' FEES AND |
| | | REIMBURSEMENT OF EXPENSES |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................1

II.   ARGUMENT ...........................................................................................................4

      A.    The Court Should Order Sony BMG to Pay the EFF Group's Requested
Attorneys' Fees and Expenses Based on Either:  (1) the Common Benefit
Doctrine; or (2) the Lodestar/Multiplier Approach ..................................................4

            1.    Sony BMG Is Contractually Bound to Pay the EFF Group's Fees
and Expenses Based on the Common Benefits Provided to the
Class ................................................................................................................4

                  a.    The EFF Group's Fee Request Is Justified by the
Substantial Benefits It Provided to the Class ...................................7

                  b.    The EFF Group Negotiated Settlement Terms with Sony
BMG on Behalf of the Class Before, and at the Same Time
as, Girard/Kamber ............................................................................9

                  c.    The EFF Group Identified and Negotiated Relief for the
Class on the MediaMax 5.0 Problem..............................................10

                  d.    The EFF Group Was Responsible for Significant Relief for
the Class in the Agreement .............................................................12

                  e.    Ricciuti Class Representatives Played a Continuing Role in
the Settlement Notice and Claims Process......................................13

            2.    Under the Alternative Lodestar/Multiplier Approach,
the EFF Group's Time Warrants a Multiplier.............................................14

                  a.    Girard/Kamber Were Only *Interim* Lead Counsel for Cases
Filed in the Southern District of New York....................................14

                  b.    Girard/Kamber and Sony BMG's Cases Are Inapposite ...............15

      B.    Girard/Kamber's Side FEE Agreement with Sony BMG Is Improper .................18

      C.    Girard/Kamber and Sony BMG Attack the EFF Group's Fee Request
While Girard/Kamber Submit Undocumented and Improper Fee Requests .........19

III.  CONCLUSION.......................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bowling v. Pfizer, Inc.*,
    922 F. Supp. 1261 (S.D. Ohio 1996) ...................................................................6

*Crowley v. Chait*,
    322 F. Supp. 2d 530 (D.N.J. 2004) ....................................................................9

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
    989 F. Supp. 375 (D. Mass. 1997) ...................................................................19

*Elliott v. Sperry Rand Corp.*,
    680 F.2d 1225 (8th Cir. 1982) ...........................................................................6

*Frankenstein v. McCrory Corp.*,
    425 F. Supp. 762 (S.D.N.Y. 1977)......................................................................6

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000).........................................................................4, 14

*Heller v. Starwood Hotels & Resorts Worldwide, Inc.*,
    332 F. Supp. 2d 587 (S.D.N.Y. 2004).............................................................11

*Howes v. Atkins*,
    668 F. Supp. 1021 (E.D. Ky. 1987) ...................................................................6

*In re "Agent Orange" Product Liability Litig.*,
    818 F.2d 216 (2d Cir. 1987).............................................................................19

*In re Auction Houses Antitrust Ltig.*,
    Master File 00 Civ. 0648 (LAK), 2001 U.S. Dist. LEXIS 1989,
    (S.D.N.Y. Feb. 23, 2001) ..................................................................................18

*In re Cendant Corp. Sec. Litig.*,
    404 F.3d 173 (3d Cir. 2005).............................................................................16

*In re Domestic Air Transp. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993).........................................................................6

*In re Excess Value Ins. Coverage Litig.*,
    No. M-21-84(RMB), 2004 U.S. Dist. LEXIS 24368
    (S.D.N.Y. Nov. 29, 2004) ................................................................................20

**Page**

*In re Heritage Bond Litig.*,
    Case No. 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627
    (C.D. Cal. June 10, 2005) ..................................................................................18

*In re Holocaust Victim Assets Litig.*,
    424 F.3d 150 (2d Cir. 2005),..........................................................................6, 18

*In re Independent Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003)............................................................6, 17

*In re Magazine Antitrust Litig.*,
    No. 00 Civ. 4889 (RCC), 2004 U.S. Dist. LEXIS 1845
    (S.D.N.Y. Feb. 5, 2005) .......................................................................................6

*In re Medco Health Solutions, Inc., Pharm. Benefits Mgmt. Litig.*,
    No. 03 MDL 1508 (CLB), 2004 U.S. Dist. LEXIS 28606
    (S.D.N.Y. May 25, 2004).................................................................................6, 17

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)..............................................................................................8

*Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp.*,
    540 F.2d 102 (3d Cir. 1976).................................................................................6

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970)..............................................................................................5

*N. River Ins. Co. v. Emplrs. Reinsurance Corp.*,
    197 F. Supp. 2d 972 (S.D. Ohio 2002) ...............................................................9

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
    711 F.2d 1136 (2nd Cir. 1983)...........................................................................19

*TIG Premier Ins. Co. v. Hartford Acc. & Indem. Co.*,
    35 F. Supp. 2d 348 (S.D.N.Y. 1999)....................................................................9

*Uselton v. Commercial Lovelace Motor Freight, Inc.*,
    9 F.3d 849 (10th Cir. 1993) .................................................................................6

*Voilas v. GMC*,
    73 F. Supp. 2d 452 (D.N.J. 1999) ........................................................................9

**Page**

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78aa ..................................................................................................................16

28 U.S.C.
    §1711 ...................................................................................................................5
    §1712(b)(1) ..........................................................................................................5

Federal Rules of Evidence
    Rule 702 ...............................................................................................................8
    Rule 802 .............................................................................................................10

## I.      INTRODUCTION

The EFF Group[1] was at the forefront of this case, negotiated the settlement terms, were signatories to the Settlement Agreement ("Agreement"), and are the attorneys of record for almost half of the Class representatives this Court appointed on January 6, 2006 to represent a nationwide class.  In their oppositions to the "EFF Group's" Motion for the Award of Attorney's Fees ("EFF Group's Motion"), Girard/Kamber[2] and Sony BMG Music Entertainment ("Sony BMG") fail to cite a single case that applies to the facts before the Court and provide no documentary evidence supporting their financially motivated efforts to devalue the EFF Group's contributions to the results achieved in this case.[3]

To be clear, the EFF Group's fee request *in no way reduces* the settlement benefits afforded to the Class.  Instead, as made patently clear by Girard/Kamber's and Sony BMG's recent disclosure of a "side agreement," the Court's award of fees and expenses to the EFF Group only impacts Sony BMG's and Girard/Kamber's bottom line.  *See* Girard/Kamber Joint Aff., Ex. A, at 2-4.[4]

---

[1]      The "EFF Group" refers to class representative plaintiffs Tom and Yvonne Ricciuti, Mary Schumacher, Robert Hull, Joseph Halpin, and Edwin Bonner.

[2]      Girard/Kamber refers to the law firms of Girard Gibbs & De Bartolomeo LLP ("Girard") and Kamber & Associates, LLC.

[3]      The Affidavit of Elizabeth C. Pritzker in Support of Class Counsel's Memorandum in Opposition to Ricciuti Representatives' Application for Award of Attorneys' Fees and Reimbursement of Expenses ("Pritzker Decl.") attaches five exhibits, which are letters and emails between Girard and EFF.  These emails relate to Girard/Kamber's breach of a delegation agreement – not the benefits conferred on the Class.  The Declaration of Jeffrey S. Jacobson, Esq., in Opposition to the "EFF Group's" Motion for the Award of Attorneys' Fees ("Jacobson Decl.") attaches two exhibits, an email providing further evidence that the EFF Group and Sony BMG were in continuing "settlement discussions" in December 2005, and a website screen capture Mr. Jacobson uses to attack expert testimony offered by the EFF Group.

[4]      Joint Affidavit of Daniel C. Girard and Scott A. Kamber in Support of: (1) Motion of Class Counsel for Final Approval of Class Action Settlement, and (2) Motion of Class Counsel for Award

The EFF Group submits evidence firmly establishing that, with respect to relief for purchasers of CDs with XCP software, in response to a formal demand letter, Sony BMG committed to the EFF Group on November 18, 2005, much of the substantive relief that is in the Agreement. *See, e.g.*, Kathrein Decl., Ex. 8 at 10-13.[5]  Notably, as confessed to by Girard/Kamber's security expert, Sony BMG's commitment occurred prior to Mr. Kamber, acting on behalf of a single client, ever met with Sony BMG for the first time on November 21, 2005.  Russinovich Aff., ¶¶25-27.[6] The evidence is equally, if not more, compelling concerning the EFF Group's role in identifying the "privilege escalation vulnerability" associated with the MediaMax 5.0 software and forcing Sony BMG to act.  Russinovich Aff., ¶22 (admitting EFF Group's expert discovered MediaMax 5.0 "privilege escalation" vulnerability).

Sony BMG submits a declaration by one of their attorneys, Mr. Jacobson, to try and undermine the seriousness of the security issues associated with the MediaMax 5.0 CDs and the EFF Group's leadership role in obtaining relief relating thereto.  Mr. Jacobson's only "evidence" is a citation to a website entitled "Freedom to Tinker."  Jacobson Decl., ¶19.  However, one of the authors responsible for the "Freedom to Tinker" website, Alex Halderman, submits a declaration herewith to correct factual inaccuracies in Mr. Jacobson's sworn declaration.  Similar to Mr. Russinovich, Mr. Halderman declares it was EFF and its experts that identified the serious security problem associated with MediaMax 5.0 in November 2005.  Sony BMG has also recently admitted

---

of Attorneys' Fees, Reimbursement of Expenses and Incentive Awards to Named Plaintiffs ("Girard/Kamber Joint Aff.").

[5]      Declaration of Reed R. Kathrein, Esq. in Support of Riccuiti Class Representatives' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Kathrein Decl.").

[6]      Affidavit of Mark Russinovich in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Russinovich Aff.").

the MediaMax security problem was on the same level as XCP.  Halderman Decl., ¶¶6-8;[7] Dinsdale
Decl., ¶¶24-26.[8]

Faced with a paper trail establishing the EFF Group's central role in representing the Class,
Girard/Kamber try to protect their fees by clinging to the title of "interim lead-counsel" for a handful
of cases pending in the Southern District of New York.  They acquired this title pursuant to a
stipulation between themselves and Sony BMG, signed by the Court on December 1, 2005.
However, as set forth below, Girard/Kamber cite cases not applicable here, because in truth, the
distinction Girard/Kamber try to draw is without a difference, in light of the EFF Group's
contribution and the speed with which this case settled.

Girard/Kamber and Sony BMG employ two desperate final measures.  First, each to a limited
extent, try to attack the detailed time records submitted by the EFF Group by flyspecking certain
entries.  Incredibly, Girard/Kamber challenge certain time entries even though, of the approximately
$1.6 million in billable hours for which Girard/Kamber seeks an award of fees, only $200,000 is
supported by detailed records.

Second, Mr. Jacobson tries to devalue the settlement by asserting that this Court should
"ignore" certain valuations by Aram Sinnreich of the settlement benefits.[9]  Mr. Sinnreich submits a

---

[7]     Reply Declaration of J. Alex Halderman in Support of Ricciuti Class Representatives'
Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Halderman Decl.").

[8]     J. Scott Dinsdale, Sony BMG's Vice President of Digital Operations and New Technology,
confirms that both XCP and MediaMax 5.0 contained "mid-range" security vulnerabilities (XCP,
rated 5.6 and Media Max rated 4.9).  Declaration of J. Scott Dinsdale in Support of Final Approval
of the Settlement ("Dinsdale Decl.").

[9]     Girard/Kamber made no attempt to estimate the value of this settlement to assist the Court in
assessing the reasonableness of their fee request.

supplemental declaration in support of this reply brief, responding to Mr. Jacobson's numerous factual mischaracterizations.[10]

At bottom, the EFF Group has submitted extensive evidence to assist the Court in deciding the reasonable amount of fees and expenses Sony BMG is obligated to pay to the EFF Group.

## II.   ARGUMENT

### A.   The Court Should Order Sony BMG to Pay the EFF Group's Requested Attorneys' Fees and Expenses Based on Either:  (1) the Common Benefit Doctrine; or (2) the Lodestar/Multiplier Approach

Where a common benefit has been conferred on class members by the work of counsel, it is appropriate to award attorneys' fees based on the value of the benefits to the class rather than the more "'cumbersome'" lodestar computation. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49-50 (2d Cir. 2000) (under the lodestar method, "there was an inevitable waste of judicial resources").  Regardless of the method, the Court's fundamental role is to determine what is a ***fair and reasonable fee*** under the circumstances of the case.  *Id.* at 53.

#### 1.   Sony BMG Is Contractually Bound to Pay the EFF Group's Fees and Expenses Based on the Common Benefits Provided to the Class

With respect to Sony BMG's obligation to pay attorneys' fees and expenses, the Agreement directs that "Plaintiffs' counsel" will apply for the award of attorneys' fees and reimbursable expenses "in accordance with legal principles." Pritzker Aff., Ex. C at 36.[11] The Agreement directs

---

[10]    *See generally* Reply Declaration of Aram Sinnreich in Support of the Ricciuti Class Representatives' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Sinnreich Reply Decl."); Declaration of Aram Sinnreich in Support of the Ricciuti Class Representatives' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Sinnreich Decl.").

[11]    Affidavit of Elizabeth C. Pritzker in Support of Plaintiffs' Application for Preliminary Approval of Class Action Settlement ("Pritzker Aff."), dated December 28, 2005.

"that Plaintiffs' counsel will apply for an award of attorneys' fees and reimbursable expenses . . . [which] will be paid by Defendants" and requires Sony BMG to pay fees to the EFF Group so as to "not affect the Settlement Benefits provided to the Settlement Class Members in any way." *Id.* Read together, Sony BMG is contractually required to assume any ***equitable obligations*** to pay attorneys' fees and reimbursable expenses, without affecting the Class' benefits. *See In re Magazine Antitrust Litig.*, No. 00 Civ. 4889 (RCC), 2004 U.S. Dist. LEXIS 1845, at *10 (S.D.N.Y. Feb. 5, 2005) (equitable principles allow for recovery of attorneys' fees where class members bore no costs in receiving benefits conferred by the successful litigation).

Courts have long-recognized the equitable "common benefit" doctrine, which entitles counsel to payment of attorneys' fees and expenses "'in cases where the litigation has conferred a substantial benefit on the members of an ascertainable class.'" *Id.* at *11 (citation omitted).  Although the Agreement here provides, in part, for monetary relief, this doctrine "is also applicable where the benefit received is not pecuniary in nature." *Id.* at **10-11.  The Supreme Court has recognized that "[a]lthough the earliest cases recognizing a right to reimbursement involved litigation that had produced or preserved a 'common fund' for the benefit of a group, nothing in these cases indicates that the suit must actually bring money into the court as a prerequisite to the court's power to order reimbursement of expenses." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392-93 (1970).[12]  To

---

[12]     Moreover, although here the EFF Group disputes Sony BMG's application of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C.  §§1711, *et seq.*, as this is not a "coupon" settlement, even CAFA's terms recognize payment of attorneys' fees based on the value of equitable relief provided to the class.  28 U.S.C. §1712(b)(1).

recover under the "common benefit" doctrine, the Court must determine "whether the benefit to the class is substantial." *Magazine*, 2004 U.S. Dist. LEXIS 8145, at *12.[13]

As detailed herein, and in the EFF Group's Motion, the EFF Group's efforts resulted in "material benefits" to the class. *See, e.g.*, *Elliott v. Sperry Rand Corp.*, 680 F.2d 1225, 1228 (8th Cir. 1982) (awarding attorneys' fees for participation at settlement hearings); *Frankenstein v. McCrory Corp.*, 425 F. Supp. 762, 767 (S.D.N.Y. 1977) (awarding fees to counsel who "transformed the settlement hearing into a truly adversary proceeding"); *Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir. 1976) (awarding fees to interveners who added pressure on defendants to settle through their presence and financial strength); *In re Independent Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 (S.D.N.Y. 2003) (awarding fees to non-lead counsel for more expansive complaint that clearly influenced strategies of lead counsel).[14]

---

[13]     In opposing the EFF Group's fee application, Girard/Kamber reject the application of the "common fund" doctrine to this case. *See* Girard/Kamber Opp. at 6.  Notwithstanding, they seek to rely heavily on common fund cases to argue against the Ricciuti class representatives' request for attorneys' fees and expenses. *See, e.g.*, *In re Holocaust Victim Assets Litig.*, 424 F.3d 150 (2d Cir. 2005), and *In re Medco Health Solutions, Inc., Pharm. Benefits Mgmt. Litig.*, No. 03 MDL 1508 (CLB), 2004 U.S. Dist. LEXIS 28606, at *38 (S.D.N.Y. May 25, 2004).

[14]     *See also Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 855 (10th Cir. 1993) (awarding fees to objecting counsel whose participation conferred a net benefit on the class); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 359 (N.D. Ga. 1993) ("These objectors significantly refined the issues germane to a consideration of the fairness of this complex settlement and their participation transformed the settlement hearing into a truly adversarial proceeding."); *Howes v. Atkins*, 668 F. Supp. 1021, 1027 (E.D. Ky. 1987) (awarding fees to objector's counsel because their efforts assisted the court; "[o]bjector's counsel ably performed the role of devil's advocate"); *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1285 (S.D. Ohio 1996) (awarding attorneys' fees based on extensive objections to the fee applications and settlement, participation in the negotiation process in the implementation of the settlement agreement).

### a.   The EFF Group's Fee Request Is Justified by the Substantial Benefits It Provided to the Class

Dr. Larry Ponemon, the founder of a "think tank" dedicated to advancing responsible information and privacy management practices, explains there is a quantifiable cost to web-user's for the time spent dealing with spyware, such as MediaMax 5.0 and XCP.  "Ponemon Decl.," ¶¶1-4.[15] Dr. Ponemon valued the total potential cost to consumers who purchased these CDs at $8.98 million ($3.74 million for XCP and $5.24 million for MediaMax 5.0, respectively).  Ponemon Decl., ¶20. Assuming the average U.S. wage rate, instead of minimum wage, these potential costs increase to a total of $32.76 million.  Ponemon Decl., ¶21.  Neither Sony BMG nor Girard/Kamber dispute Dr. Ponemon's analysis.  Providing Class members notice, and the ability to patch or remove this spyware, certainly will save Class members' time.  Thus far, at least 36,000 people have benefited from this relief.  Jacobson Final App. Decl., ¶5.

Mr. Sinnreich, an expert in music and technology, whose expertise in this area Sony BMG has previously paid for (*see* Sinnreich Reply Decl. ¶4), valued other particular terms of the settlement.  To summarize, Mr. Sinnreich estimated the present and future benefits to the Class as follows:

- XCP Exchange Program:  Ranging from $58.62 million to $76.5 million, depending on which settlement option class members choose.

- MediaMax 3.0 Compensation:  $16.65 million.

- MediaMax 5.0 Compensation:  $35.83 million.

- EULA Waivers:  $19.68 million (probable real-world value).

---

[15]   Declaration of Larry Ponemon in Support of the Ricciuti Class Representatives' Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Reimbursement of Expenses.

- • Injunctive Relief:  $684 million (assuming cessation of all copy protection during relief period); $136.8 million (assuming Sony BMG replaces enjoined copy protection technologies with alternative technologies).

Sinnreich Decl., ¶2.

Sony BMG asserts Mr. Sinnreich's expert opinion is unreliable, and the Court should therefore ignore it under Fed. R. Evid. 702.  Sony BMG Opp. at 13.[16]  Sony BMG questions Mr. Sinnreich's expertise and his underlying methodology.  Mr. Sinnreich's Reply Decl. responds to each of Sony BMG's claims.  However, two responses to Sony BMG's arguments merit attention here.

First, the only evidence Sony BMG submits to attack Mr. Sinnreich's opinions is a web posting.  Sony BMG fails to offer expert testimony challenging Mr. Sinnreich's methodology.  Instead, Mr. Jacobson mixes assertions of fact with argument in his declaration.  Jacobson Decl. ¶¶44-48.

Second, while Mr. Jacobson's declaration claims ignorance regarding Mr. Sinnreich's "particular experience in the areas in which he has offered opinions" (Jacobson Decl., ¶44), both Sony Music and BMG have repeatedly paid for Mr. Sinnreich's expertise in the area for which he opines.  Sinnreich Reply Decl., ¶10.  Mr. Sinnreich sets forth his extensive expertise in this area in more full detail.  Sinnreich Reply Decl., ¶¶4-14; *see Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (in the context of nonscientific evidence, the inquiry into an expert's reliability properly focuses upon personal knowledge or experience).[17]

---

[16]     Defendant Sony BMG Music Entertainment's Memorandum in Opposition to the "EFF Group's" Motion for the Award of Attorneys' Fees ("Sony BMG Opp.").

[17]     *See also Voilas v. GMC*, 73 F. Supp. 2d 452, 461 (D.N.J. 1999) (observing that, in this nonscientific context, expert's qualification are of particular importance in assessing reliability); *N. River Ins. Co. v. Emplrs. Reinsurance Corp.*, 197 F. Supp. 2d 972, 982, 984 (S.D. Ohio 2002);

The Court is capable of weighing the opinions offered by Mr. Sinnreich, as well as all of the experts. While several of the valuations are imprecise by their very nature, real value is associated with the aspects of the settlement on which Dr. Ponnemon and Mr. Sinnreich opine. Counsel for Sony BMG cannot reasonably argue contrary to Dr. Ponnemon that a person's time is not "worth" money (unless they are willing to return their own attorneys' fees to Sony BMG). It is also a fact that people pay money, in part, to use their music as they wish, such as loading it onto their iPods. Even if the Court were to reduce the experts' estimations of these benefits, the EFF Group's requested fees for their efforts still are justified when compared to the value of the benefits provided to the Class.

> **b.    The EFF Group Negotiated Settlement Terms with Sony BMG on Behalf of the Class Before, and at the Same Time as, Girard/Kamber**

Throughout November and December 2005, the EFF Group actively engaged in litigation and settlement negotiations with Sony BMG. Counsel for the Ricciuti class representatives records reflect that during the 30-day period from November 14, 2005 through December 14, 2005, a senior partner at Debevoise Plimpton LLP, Jeffrey Cunard, initiated over 34 communications with EFF. Cohn Reply Decl., ¶6. This number doubles by taking into account the interactions initiated by the EFF Group, often at Mr. Cunard's request. *Id.* These conversations focused on threatened litigation or ongoing litigation. Cohn Reply Decl., ¶¶4-5. After December 5, 2005, the discussions were devoted to the steps Sony BMG needed to take to settle the litigation with the Ricciuti class representatives. Cohn Reply Decl., ¶5. In short, during this period, the EFF Group received

---

(same) *TIG Premier Ins. Co. v. Hartford Acc. & Indem. Co.*, 35 F. Supp. 2d 348 (S.D.N.Y. 1999); *Crowley v. Chait*, 322 F. Supp. 2d 530, 539 (D.N.J. 2004) (same).

communications from Mr. Cunard nearly every business day, focusing solely on the issues relating to XCP or MediaMax.  Cohn Reply Decl., ¶7.

Sony BMG opposes the EFF Group's contributions to the settlement by making the remarkable assertion that the negotiations between the EFF Group and Sony BMG in November and December 2005 were neither "extensive" nor related to litigation.  Sony BMG Opp. at 7.  This claim is patently ridiculous.  The inaccuracies put forth by Mr. Jacobson, counsel for Sony BMG, may be blamed on the fact that he was not one of the attorneys from Sony BMG who negotiated with EFF prior to mid-December 2005.  Cohn Reply Decl., ¶3.  Instead, Mr. Jacobson's more senior partners, Messrs. Cunard and Keller, along with Sony BMG Vice President Thomas Hesse, negotiated with the EFF Group.  *Id*.  Accordingly, Mr. Jacobson's declaration is not only inaccurate, it is inadmissible hearsay.  Fed. R. Evid. 802.

### c. The EFF Group Identified and Negotiated Relief for the Class on the MediaMax 5.0 Problem

After the EFF Group filed the only case specifically alleging MediaMax and EULA issues, EFF's consultants at iSEC Partners detailed to Sony BMG the MediaMax 5.0 security vulnerability.  Cohn Reply Decl., ¶9.  This problem, also called a "privilege escalation vulnerability," allowed unauthorized users of a computer, either directly or through the Internet, to gain complete control over a person's computer.  *Id.*  Mr. Jacobson characterizes the security vulnerability as "not uncommon."  Jacobson Decl., ¶19.  Mr. Jacobson neglects to admit that, the problem is serious and recognized as such by Microsoft Corporation.  Cohn Reply Decl., ¶9.  Moreover, although Mr. Jacobson states that another party, Mr. Halderman, was responsible for identifying the MediaMax 5.0 problem on November 30, 2005, this is demonstrably untrue.  Jacobson Decl., ¶27.  As explained

by Mr. Halderman in the accompanying declaration, EFF's consultants at iSEC Security discovered the MediaMax 5.0 problem.[18]  *See also* Russinovich Aff. ¶22.

The EFF Group and Sony BMG immediately focused on what steps Sony BMG had to undertake to prevent the Ricciuti class representatives from moving for a temporary restraining order.  The discussions focused on seeking both the halting of further distribution and the recall of the MediaMax 5.0 CDs.  Cohn Reply Decl., ¶12.  Contrary to Mr. Jacobson's assertions, Sony BMG admitted as such to the EFF Group on December 1, 2005.  Cohn Reply Decl., ¶14.

Accordingly, the EFF Group insisted on, and Sony BMG agreed to, a broad notice campaign for the security patch, including targeting purchasers through the CD bannering functionality and through artists' websites.  Cohn Reply Decl., ¶13.  Ultimately, on December 6, 2005, Sony BMG and EFF issued a joint press release about ACL problem and the patch.  Sony BMG also agreed to a temporary moratorium on the production of MediaMax 5.0 CDs pending a complete security review, although they did not agree to a recall.  *Id.*  Because Sony BMG agreed to most of the EFF Group's demands, the Ricciuti class representatives did not move for a Temporary Restraining Order ("TRO").  *Id.*; *see Heller v. Starwood Hotels & Resorts Worldwide, Inc.*, 332 F. Supp. 2d 587, 590 (S.D.N.Y. 2004) (holding that in determining attorneys' fees, "district courts [should] 'focus on whether the lawsuit played a ***substantial role*** in the defendant's decision to take corrective action'") (emphasis in original) (citation omitted); *see also* Jacobson Decl., ¶27 (admitting Sony BMG took action "to avoid the costly and time-consuming battle always associated with such applications").

---

[18]    Reply Declaration of J. Alex Halderman in Support of Ricciuti Class Representatives' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Halderman Reply Decl.").

### d.   The EFF Group Was Responsible for Significant Relief for the Class in the Agreement

Even after Sony BMG finally disclosed its two-tracked negotiation strategy, the EFF Group continued to pursue relief for the Class.  Daily communications between Mr. Cunard and the EFF Group continued throughout December 2005, resulting in several letters regarding comprehensive settlement demands.  Cohn Reply Decl., ¶15.  On December 12, 2005, Mr. Kamber represented to the EFF Group that the case was "hours" away from settling.  Mr. Keller later informed the EFF Group that Mr. Kamber's claims were "untrue."  Cohn Reply Decl., ¶16.  These discussions culminated in Sony BMG requesting that counsel for the Ricciuti class representatives fly to New York for a global settlement meeting on December 18, 2005.  Cohn Reply Decl., ¶17.

The EFF Group informed Sony BMG that Sony BMG needed to improve the settlement terms before the Ricciuti class representatives would agree to settle their pending cases.  In response, Sony BMG represented it was willing to take significant additional steps in response to issues raised by the EFF Group.  Cohn Reply Decl., ¶¶18-19.

During the negotiations in New York on December 18, 2005, the EFF Group succeeded in getting Sony BMG to provide addition benefits to the Class.  Cohn Reply Decl., ¶20.  Most important of these were:

(a)    Sony BMG agreed to permanently cease production of MediaMax 5.0 CDs;

(b)    All class members who purchased music with dangerous DRM (XCP, MediaMax 5.0), or with DRM that installed without notice (MediaMax 5.0 and MediaMax 3.0), received their music in a non-DRM format;

(c)    All class members who purchased MediaMax 5.0 received an additional album downloaded for free;

(d)    [The Ricciuti class representatives] developed a workable process for future security vulnerabilities;

(e)    [The Ricciuti class representatives] negotiated significant additional disclaimers of terms in their End User License Agreements, again an issue first raised

by EFF on November 9, 2005, and not included in the complaints filed by [Girard/Kamber];

(f)      Sony BMG agreed to put the results of the privacy audit on their website;

(g)      [The Ricciuti class representatives] negotiated prominent links to anti-spyware and anti-virus software vendors in Sony BMG's notices to the class; and

(h)      [The Ricciuti class representatives] insisted on the removal of language concerning the "uncertifiability" of claims and negotiated the scope of the claims to be released to ensure more relief possible for individuals whose computers had been damaged.

Kathrein Reply Decl., Ex. A, Ex. B at 18, 24, 26, 28, 30, 48, 50 (redlined version of final settlement terms compared to proposed settlement terms on December 18, 2005).

### e.      Ricciuti Class Representatives Played a Continuing Role in the Settlement Notice and Claims Process

The EFF Group helped to develop the various forms of notice to the class, including the format of the settlement website itself.  Cohn Reply Decl., ¶¶21-42.  Between December 22, 2005 and February 28, 2006, Messrs. Jacobson and Cunard sent EFF over 70 email messages, many of which were copied to Ms. Pritzker, over half of which concerned the various forms of notice to be provided.  *Id.*  In addition, on January 6, 2006, at Sony BMG's request, and with the knowledge of Girard/Kamber, members of the EFF Group flew to New York to meet with Sony BMG's counsel to discuss the various forms of notice.  Cohn Reply Decl., ¶33.  While not all of the suggestions were incorporated, many were, including most importantly:

(a)      Equal prominence of security issues and settlement benefits in the website, banner ads and notice sent to class members, rather than having the notice feature only the settlement benefits;

(b)      Easy-to-use structured interview format on the website; and

(c)      Links to anti-virus and anti-spyware vendors.

Cohn Reply Decl., ¶26.  The EFF Group also convinced Sony BMG to purchase additional Google awards for the artists whose CDs were affected by the XCP and MediaMax problems.  Cohn Reply Decl., ¶34.

The above unquestionably establishes the EFF Group's central role in the benefits provided to the Class.

### 2.      Under the Alternative Lodestar/Multiplier Approach, the EFF Group's Time Warrants a Multiplier

To maximize Girard/Kamber's own attorneys' fees, while limiting Sony BMG's total payment of fees to the EFF Group, they each try to drag this Court into flyspecking time entries submitted by the EFF Group.  They do so despite the Second Circuit's admonition in *Goldberger* that "we see no need to compel district courts to undertake the 'cumbersome, enervating, and often surrealistic process' of lodestar computation."  209 F.3d at 49-50 (quoting The Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 258 (1985)).[19]

Girard/Kamber entreat the Court to conduct a "gimlet-eyed" review of the EFF Group's detailed time records, while **_failing to submit_** their own detailed time records.   Regardless, the EFF Group's lodestar and multiplier thereon is reasonable under these circumstances.

### a.      Girard/Kamber Were Only *Interim* Lead Counsel for Cases Filed in the Southern District of New York

Many of Girard/Kamber's objections to the EFF Group's fee application are based on their assertion that the title of interim co-lead counsel in New York entitled them to absolute control over this litigation.   To artificially elevate their entitlement to fees, contrary to the terms of the

---

[19]      *Goldberger* further recognized that the straight lodestar approach had the negative effect of "compelling district courts to engage in a gimlet-eyed review of line-item fee audits."  209 F.3d at 49.

Agreement, Girard/Kamber repeatedly grasp at the Case Management Order stipulated to by Girard/Kamber and Sony BMG, which was signed by this Court on December 1, 2005 (the "CMO"). The CMO has no such effect.  First, the CMO had the limited effect of appointing Girard/Kamber "co-lead counsel" on an *interim* basis only for cases filed in the Southern District of New York. Second, the CMO (1) does not supersede the Agreement that was jointly negotiated, (2) designates the EFF Group's clients as class representatives, and (3) provides for the EFF Group to separately move for attorneys' fees.  Girard/Kamber did not, and could not, agree with Sony BMG that they were "lead" counsel for all cases filed anywhere in the United States.  The other litigants were free (and obligated) to aggressively pursue their actions against Sony BMG.  *See, e.g.*, *Manual for Complex Litigation* (4th) §20.311 (2004) ("[t]he Judicial Panel on Multidistrict Litigation has no power over cases pending in state courts").  Until it agreed to settle with Sony BMG, the EFF Group's actions in continuing to litigate in California were appropriate and compensable.

### b.      Girard/Kamber and Sony BMG's Cases Are Inapposite

Sony BMG and Girard/Kamber fail to cite a single case where the counsel for named class representatives with a contractual right to seek fees and expenses had their request reduced because they were not give the title of "lead counsel."  Instead, they rely primarily on cases:  (1) under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), or (2) where counsel seeking fees played *no role* in identifying claims and negotiating the settlement or counsel represented an objector to the settlement.  Those fact patterns do not remotely approach the facts here.

### (1)      The PSLRA's Deference to Lead Plaintiff's Selection of Counsel Is Inapplicable Here

To cut the EFF Group's lodestar, Girard/Kamber repeatedly cite to securities class actions brought under the PSLRA.  As is obvious, this case does not involve the PSLRA.  Addressing the specific area of securities fraud class action suits, the PSLRA mandates a specific method by which

the court appoints the lead plaintiff – the shareholder with the largest losses.  It is the lead plaintiff *who then selects lead counsel for the class*.  *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 193 (3d Cir. 2005) (noting that the PSLRA has shifted the paradigm in securities cases so that, post-appointment of lead plaintiff, counsel performing work who are not authorized by either the lead plaintiff or the court should not be surprised if they do not receive a fee for post-appointment work). Securities cases are not analogous because every case must be brought in the single district where the company has its headquarters.  15 U.S.C. §78aa.  As such, all cases are before the same court and no multi-district litigation occurs.  Because of these two critical differences Girard/Kamber's citations to securities cases fail to merit much attention.

Even under the PSLRA, however, prior to appointment of lead plaintiff, counsel is entitled to fees for work that is shown to have benefited the class, even if counsel is not thereafter appointed "lead counsel."  *Cendant*, 404 F.3d at 195.  As set forth extensively herein and in the EFF Group's Motion, the EFF Group's representation of the Court-appointed Ricciuti class representatives unquestionably benefited the Class – both pre-and post-appointment of Girard/Kamber as interim Class counsel.

Another PSLRA case supporting the EFF Group's request is *In re Independent Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 (S.D.N.Y. 2003).  There, the court awarded attorneys' fees to non-lead counsel, where their complaint was more expansive than that of lead counsels and clearly influenced the strategies of lead counsel.  Here, the Ricciuti class representatives were the ***only*** class representatives who specifically alleged facts relating to the MediaMax software and Sony BMG's illegal EULA terms in their original complaints – theories of liability and relief that were later incorporated in the consolidated complaint.

**(2)     Other Cases Cited By Sony BMG and**
**Girard/Kamber Support the Award of the EFF**
**Group's Attorneys' Fees and Expenses Request**

Other cases cited by Sony BMG and Girard/Kamber further support the EFF Group's fee requested.  For example, they both heavily rely on *Medco Health Solutions.*  However, there, the court in fact ***granted*** attorneys' fees to counsel for a single class member who ***opted out*** of the settlement.  2004 U.S. Dist. LEXIS 28606, at *38.  In granting a fee amount less than counsel initially requested, the court noted that (unlike here) "[t]he Settlement was already cooked up and served when Ms. Cahn got into the act." *Id.* at *40.  Notwithstanding, the court found that "[e]quity requires fair treatment of one who confers a benefit, even where the actor has ***no standing and participates as an interloper or volunteer*.**" *Id.* at *36 (emphasis added).  As established by the extensive record submitted to this Court, the EFF Group was the first and only party to allege and pursue claims relating MediaMax and illegal EULA terms, and the EFF Group negotiated and executed the Agreement on behalf of six of the thirteen named class representatives.  These facts are far removed from those cases cited by Girard/Kamber where counsel represented a single class member, who participated in the action after the events were almost concluded, or whose client opted out of the settlement.[20]

---

[20]     *See, e.g.*, *Holocaust Victim*, 424 F.3d 150 (denying attorneys' fees where evidence demonstrated other objectors were responsible for re-negotiation of the settlement); *In re WorldCom, Inc. ERISA Litig.*, Master File 02 Civ. 4816 (DLC), 2004 U.S. Dist. LEXIS 22952, (S.D.N.Y. Nov. 16, 2004) (awarding fees to non-lead counsel for pre-appointment work performed even though role in pre-consolidated litigation was *de minimus*); *In re Auction Houses Antitrust Ltig.*, Master File 00 Civ. 0648 (LAK), 2001 U.S. Dist. LEXIS 1989 (S.D.N.Y. Feb. 23, 2001) (granting pre-appointment lodestar to counsel not appointed lead class counsel but denying multiplier because they were not responsible for the size of the ultimate settlement and denying post-appointment fees because court's prior order instructed that lead counsel was responsible for post-appointment fees); *In re Heritage Bond Litig.*, Case No. 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) (awarding fees even though counsel repeatedly opposed interests of the class and did not develop core theories of the case).

**B.      Girard/Kamber's Side FEE Agreement with Sony BMG Is Improper**

On at least two occasions, Girard/Kamber and Sony BMG have entered into side agreements, illegally modifying the Agreement.[21]  Most recently, Sony BMG and Girard/Kamber agreed to the payment of attorneys' fees to Girard/Kamber in the amount of $2.3 million, and expenses of up to $75,000.  This includes a lodestar of $1,674,229.09 (submitted on behalf of 25 firms) and a multiplier of 1.37.  Girard/Kamber Joint Aff., Ex. C.  Rather than simply agreeing to their attorneys' fees, Girard/Kamber and Sony BMG collude to object to the EFF Group's request.  Girard/Kamber Joint Aff., ¶¶60-61.  This is because their side agreement requires Girard/Kamber to pay Sony BMG every dollar over $400,000 that Sony BMG is ordered to pay the EFF Group.  *Id.*  The side agreement also seeks to make ***Girard/Kamber*** "a real party in interest with respect to applications for fees made by other counsel."  Girard/Kamber Joint Decl., Ex. A at 4.

Thus, to maximize their fees, Girard/Kamber – not the Class members whom they represent – have impermissibly tried to modify the Agreement to become "a real party in interest" in the fees this Court determines should be awarded to the EFF Group.  In addition to violating the settlement agreement's terms regarding modifications, the side agreement raises policy concerns.

Where "the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling," *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997), the court must examine "potential conflicts of interest in class contexts . . . [not] solely for the actual abuse they may cause, but also for ***potential***

---

[21]      The Agreement specifically provides that the "Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all affected Parties or their successors-in-interest."  Pritzker Decl., Ex. C at 44.  On January 31, 2006, Girard/Kamber and Sony BMG violated the terms of the Agreement by stipulating to change the potential remedies afforded to class members and the form of notice relating thereto without the approval of the Riccuiti class representatives.

*public misunderstandings* they may cultivate in regard to the interests of class counsel." *In re "Agent Orange" Product Liability Litig.*, 818 F.2d 216, 225 (2d Cir. 1987) (emphasis added).  Here, the EFF Group:  (1) represent the same class of consumers as Girard/Kamber; (2) are signatories on the settlement agreement; and (3) represent six of the named class representatives.  Rather than avoiding the appearance of impropriety, Girard/Kamber have chosen to align themselves with the defendants.  This Court has a responsibility to consider any "potential public misunderstandings" that might result from "class" counsel's side agreement.  *See* "*Agent Orange*," 818 F.2d at 225.

> ### C.    Girard/Kamber and Sony BMG Attack the EFF Group's Fee Request While Girard/Kamber Submit Undocumented and Improper Fee Requests

Both Girard/Kamber and Sony BMG attack the EFF Group's fee application mainly by challenging specific time entries that the EFF Group submitted to the Court.  In their own application, Girard/Kamber submit a lodestar of over $1.6 million.  Girard/Kamber Joint Aff., Ex. C.  However, at least $1.46 million is unaccounted for with contemporaneous time records required by the Second Circuit.  *See N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2nd Cir. 1983); *WorldCom, Inc. ERISA Litig.*, Master File 02 Civ. 4816 (DLC), 2004 U.S. Dist. LEXIS 20671 (S.D.N.Y. Oct. 18, 2004) (denying attorneys' fees unless and until Girard submits contemporaneous billing records); Kathrein Reply Decl. ¶3.

Scott Kamber, a solo practitioner, includes a fee request so extreme as to raise red flags for this Court.  He requests compensation for *$463,969* of time, *almost six months* of work at 40 hours a week.  Girard/Kamber Joint Aff., Ex. C (totaling 953.30 hours of time).  Mr. Kamber also submits for time on behalf of a number of attorneys who "either practice by themselves or are affiliated with law firms who are not otherwise involved in this litigation."  Girard/Kamber Joint Aff., ¶75.  Mr. Kamber does not explain who these attorneys are or how they are responsible for any benefits to the Class.  Such incomplete submissions do not meet this Circuit's requirements for fee applications.

*See In re Excess Value Ins. Coverage Litig.*, No. M-21-84(RMB) (KNF) (MDL 1339), 2004 U.S. Dist. LEXIS 24368, at *17 (S.D.N.Y. Nov. 29, 2004).

Regardless, many of Girard/Kamber's criticisms of the Ricciuti class representatives' fees are either misrepresentations of fact or are unsupported by cites to the record. Other of their criticisms are simply untenable, given that Girard/Kamber seeks attorneys' fees for other counsel performing the same litigation activities. For example, although Girard/Kamber argue that the time spent investigating and filing a complaint is non-compensable, over 50% of the time submitted by Girard/Kamber supported by detailed time records is due to filing of complaints by non-lead counsel. Kathrein Reply Decl., ¶3.

## III.    CONCLUSION

For the foregoing reasons, and for the reasons set forth in the accompanying declarations, the Ricciuti class representatives respectfully request that the Court grant this request for an award of attorneys' fees in the amount of $1,846,480.16, along with reimbursement of $90,148.66 in reasonable costs and expenses incurred by counsel for the Ricciuti class representatives.

DATED:  May 12, 2006                    Respectfully submitted,

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
REED R. KATHREIN (admitted *pro hac vice*)
JEFF D. FRIEDMAN (admitted *pro hac vice*)
SHANA E. SCARLETT (admitted *pro hac vice*)


                    s/ Reed R. Kathrein
              REED R. KATHREIN

100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN (SR-7957)
ROBERT M. ROTHMAN (RR-6090)
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

GREEN WELLING LLP
ROBERT S. GREEN
JENELLE WELLING
AVIN P. SHARMA
595 Market Street, Suite 2750
San Francisco, CA  94105
Telephone:  415/477-6700
415/477-6710 (fax)

ELECTRONIC FRONTIER FOUNDATION
CINDY COHN
FRED von LOHMANN
KURT OPSAHL
CORYNNE McSHERRY
454 Shotwell Street
San Francisco, CA  94110
Telephone:  415/436-9333
415/436-9993 (fax)

LAWRENCE E. FELDMAN & ASSOCIATES
LAWRENCE E. FELDMAN
432 Tulpehocken Avenue
Elkins Park, PA  19027
Telephone:  215/885-3302
215/885-3303 (fax)

Attorneys for Plaintiffs

T:\CasesSF\Sony NY\brf00030807.docg

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 12, 2006, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system which will send notification of such filing to the e-mail

addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have

mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF

participants indicated on the attached Manual Notice List.


                                        s/ Reed R. Kathrein
                                        REED R. KATHREIN

                                        LERACH COUGHLIN STOIA GELLER
                                               RUDMAN & ROBBINS LLP
                                        655 West Broadway, Suite 1900
                                        San Diego, CA  92101
                                        Telephone:  619/231-1058
                                        619/231-7423 (fax)
                                        E-mail: ReedK@lerachlaw.com



**Civil** • **Criminal** • **Query** • **Reports** • **Utilities** • **Logout**



# Mailing Information for a Case 1:05-cv-09575-NRB

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Sanford P. Dumain**
  sdumain@milbergweiss.com

- **Jeffrey S. Jacobson**
  jsjacobs@debevoise.com mmgrimes@debevoise.com

- **Scott Adam Kamber**
  skamber@kolaw.com

- **Jonathan K. Levine**
  jkl@girardgibbs.com dcg@girardgibbs.com;ams@girardgibbs.com;ale@girardgibbs.com;
  cme@girardgibbs.com;zml@girardgibbs.com;ajd@girardgibbs.com

- **Ira M. Press**
  ipress@kmslaw.com

- **Shana Eve Scarlett**
  shanas@lerachlaw.com

- **Jason Louis Solotaroff**
  jsolotaroff@gslawny.com

- **Mark A. Strauss**
  mstrauss@kmslaw.com lmorris@kmslaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

`Cindy A. Cohn`

Legal Director of the Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110

**Lawrence E. Feldman**
Lawrence E. Feldman & Associates
432 Tulpehocken Avenue
Elkins Park, PA 19027

**Jeff D. Friedman**
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine Street
Suite 2600
San Francisco, CA 94111

**Daniel C. Girard**
Girard, Gibbs & De Bartolomeo, L.L.P.
601 California Street
Suite 1400
San Francisco, CA 94108

**Robert S. Green**
Green Welling LLP
595 Market Street
Suite 2750
San Francisco, CA 94105

**Reed R. Kathrein**
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine Street
Suite 2600
San Francisco, CA 94111

**Elizabeth Pritzker**
Girard, Gibbs & De Bartolomeo, L.L.P.
601 California Street
Suite 1400
San Francisco, CA 94108

**Peter G.A. Safirstein**
Milberg Weiss Bershad & Schulman LLP (NYC)
One Pennsylvania Plaza
New York, NY 10119

**Jenelle Welling**

Green Welling LLP
595 Market Street
Suite 2750
San Francisco, CA 94105