# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------------- x
                                                   :
                                                   :
                                                   :
                                                   :
                                                   :
In re Sony BMG CD Technologies Litigation          :   No. 1:05-cv-09575-NRB
                                                   :
                                                   :
                                                   :
                                                   :
                                                   :
                                                   :
-------------------------------------------------------------------- x
```

## FINAL ORDER AND JUDGMENT

**WHEREAS**, SONY BMG Music Entertainment ("SONY BMG") markets and, directly and indirectly, including through retailers, sells, among other things, compact discs ("CDs") containing music from a wide variety of genres; and

**WHEREAS**, during the period beginning on August 1, 2003 though the present, some, but not all, of the CD titles marketed and sold by SONY BMG, contained, in addition to tracks of music, copy protection software that, when the CDs were inserted into computers with CD player/recorder drives, contained certain copy protection features that enable consumers to transfer the music to their computers, from which consumers could make other authorized uses (including transferring the music to portable devices and copying the music onto no more than three blank CDs) ("Copy Protection Software"); and

**WHEREAS**, SONY BMG used two types of Copy Protection Software on CDs during the Class Period, "MediaMax" and "XCP"; and

**WHEREAS**, various versions of MediaMax were designed and licensed to SONY BMG by SunnComm International Inc. ("SunnComm"), a corporation incorporated in Nevada and headquartered in Arizona; and

**WHEREAS**, the MediaMax versions included on SONY BMG CDs pressed during the Class Period will be referred to herein as the "MediaMax Software," and a SONY BMG CD or copy thereof containing MediaMax Software will be referred to herein as a "MediaMax CD"; and

**WHEREAS**, various versions of "XCP" were designed and licensed to SONY BMG by First 4 Internet Ltd. ("F4I," and, collectively with SONY BMG, the "Defendants"), a corporation located in and organized under the laws of the United Kingdom; and

**WHEREAS**, the XCP versions included on SONY BMG CDs will be referred to herein as the "XCP Software," and a SONY BMG CD or copy thereof containing XCP Software will be referred to herein as an "XCP CD"; and

**WHEREAS**, the following CD titles distributed by SONY BMG are XCP CDs:

**[INSERT LIST OF XCP CDs]**; and

**WHEREAS**, the following CD titles distributed by SONY BMG are MediaMax CDs:

**[INSERT LIST OF MEDIAMAX CDs]**; and

**WHEREAS**, five complaints—*Ricciuti v. Sony BMG Music Entm't*, No. 05 CV 10190, consolidated as No. 05 CV 9609(NRB) (S.D.N.Y. Dec. 5, 2005); *Klewan v. Arista Holdings Inc. d/b/a Sony BMG Music Entm't*, No. 05 CV 9575, consolidated as No. 05 CV 9609 (NRB) (S.D.N.Y. Nov. 14, 2005); *Michaelson v. Sony BMG Music, Inc.*, No. 05 CV 9575 (NRB) (S.D.N.Y. Nov. 14, 2005); *Potter v. Sony BMG Music Entm't*, No. 05 CV 9607, consolidated as No. 05 CV 9575 (NRB) (S.D.N.Y. Nov. 14, 2005); *Rivas v. Sony BMG Music Entm't*, No. 05 CV 9598, consolidated as No. 05 CV 9575 (NRB) (S.D.N.Y. Nov. 14, 2005)—were filed in the

Southern District of New York and have been consolidated before the Honorable Naomi Reice Buchwald into the above-referenced *SONY BMG CD Technologies Litigation* (the "Action"); and

**WHEREAS**, a Consolidated Amended Complaint in the Action (hereafter, the "Complaint") was filed on [FILL IN DATE]; and

**WHEREAS**, as of the date of this Settlement Agreement, other Complaints raising substantially identical claims (collectively, the "Non-S.D.N.Y. Actions") have been filed in other jurisdictions as follows: *Klemm v. Sony BMG Music Entm't*, No. C 05 5111 BZ (N.D. Cal. Dec. 9, 2005); *Melcon v. Sony BMG Music Entm't*, No. C 05 5084 MHP (N.D. Cal. Dec. 8, 2005); *Black v. Sony BMG Music Entm't*, No. CV 2005 09329 (N.M. 2d Jud. Dist. Ct. Dec. 7, 2005); *Ponting v. SONYBMG Music Entm't, LLC*, No. CV-05-08472-JFW(AJWx) (C.D. Cal. Dec. 2, 2005); *Jacoby v. Sony BMG Music Entm't*, No. 05/116679 (N.Y. Sup. Ct. Nov. 30, 2005); *Bahnmaier v. Sony BMG Music Entm't*, No. CJ 2005 06968 (Okla. Dist. Ct. Nov. 28, 2005); *Xanthakos v. Sony BMG Music Entm't, LLC*, No. 05-0009203 (D.C. Super. Ct. Nov. 28, 2005); *Maletta v. Sony BMG Music Entm't Corp.*, No. BC343615 (Cal. Super. Ct. Nov. 28, 2005); *Burke v. Sony BMG Music Entm't*, No. 857213 (Cal. Super. Ct. Nov. 22, 2005); *Hull v. Sony BMG Music Entm't*, No. BC343385 (Cal. Super. Ct. Nov. 21, 2005); *Cooke v. Sony BMG Music Entm't*, No. 05-0009093 (D.C. Super. Ct. Nov. 18, 2005); *DeMarco v. Sony BMG Music*, No. 2:05-cv-05485-WHW-SDW (D.N.J. Nov. 17, 2005); *Stynchula v. Sony Corp. of Am.*, No. BC343100 (Cal. Super. Ct. Nov. 15, 2005); *Gruber v. Sony Corp. of Am.*, No. BC342805 (Cal. Super. Ct. Nov. 9, 2005); *Guevara v. Sony BMG Music Entm't*, No. BC342359 (Cal. Super. Ct. Nov. 1, 2005); although several of these actions misstate the name of SONY BMG, it is understood that SONY BMG is the defendant meant to have been named in the Action and the Non-S.D.N.Y. Actions; and

**WHEREAS**, the Complaint and the Non-S.D.N.Y. Actions allege that, when and if an XCP CD is inserted into a computer, an End User License Agreement (a "EULA", and, with respect to XCP CDs, the "XCP EULA") appears automatically on the screen and the XCP Software installs itself on the user's computer; and

**WHEREAS**, the Complaint and the Non-S.D.N.Y. Actions assert that the XCP Software contains a potentially harmful "rootkit" which renders the user's computer more vulnerable to "malware" promulgated by third parties, including "viruses," "Trojan Horses" and "spyware," than the computers would have been had the software not been installed; and

**WHEREAS**, the Complaint and the Non-S.D.N.Y. Actions allege that the XCP Software interferes with the user's ability to access the music via non-XCP software, consumes excess computer resources and causes system errors; and

**WHEREAS**, the Complaint and the Non-S.D.N.Y. Actions allege that SONY BMG also uses this software to collect information over the Internet from CD users, including Internet Protocol (IP) addresses; and

**WHEREAS**, the Complaint and the Non-S.D.N.Y. Actions allege that SONY BMG, including through the XCP EULA, misrepresented, or did not fully or adequately disclose, the true nature of the XCP Software; and

**WHEREAS**, the Complaint and the Non-S.D.N.Y. Actions allege that the XCP EULA contained terms that are unconscionable or otherwise unenforceable; and

**WHEREAS**, the Complaint and the Non-S.D.N.Y. Actions allege that once installed, the XCP Software is difficult to locate and remove, and that SONY BMG did not make available a ready means to uninstall the XCP Software; and

**WHEREAS**, the Complaint and the Non-S.D.N.Y. Actions allege that when SONY BMG made an uninstaller program available to remove the XCP Software, this program also created a security risk; and

**WHEREAS**, the Complaint and the Non-S.D.N.Y. Actions further claim that, when a MediaMax CD is inserted into a computer, a EULA (the "MediaMax EULA") appears automatically on the screen, and that certain software files are immediately loaded onto the computer even before the user of the MediaMax CD has an opportunity to accept or reject the MediaMax EULA; and

**WHEREAS**, the Complaint and the Non-S.D.N.Y. Actions allege that this software remains on the computer even if the MediaMax EULA is rejected; and

**WHEREAS**, the Complaint and the Non-S.D.N.Y. Actions further allege that SONY BMG uses the MediaMax Software to collect computer information, including IP addresses; and

**WHEREAS**, the Complaint and the Non-S.D.N.Y. Actions also allege that SONY BMG, including through the MediaMax EULA, misrepresented, or did not fully or adequately disclose, the true nature of the MediaMax Software; and

**WHEREAS**, the Complaint and the Non-S.D.N.Y. Actions allege that the MediaMax EULA contained terms that are unconscionable or otherwise unenforceable; and

**WHEREAS**, the Complaint and the Non-S.D.N.Y. Actions allege that at least one version of MediaMax Software causes a file folder to be installed on a user's computer that renders the user's computer more vulnerable to security breaches by third parties by allowing these third parties to gain enhanced permissions over the user's computer running the Windows operating system; and

**WHEREAS**, the Complaint and the Non-S.D.N.Y. Actions allege that SONY BMG did not make available a ready means to uninstall the MediaMax Software; and

WHEREAS, the Complaint and the Non-S.D.N.Y. Actions allege that when SONY BMG made a program available to uninstall the MediaMax Software, this program also created a security risk; and

WHEREAS, the Complaint and the Non-S.D.N.Y. Actions claim that the Defendants, by disseminating the XCP Software on XCP CDs, and that SONY BMG and SunnComm, by disseminating the Media Max software on Media Max CDs, violated, among other things, the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, et seq.; the consumer fraud, false advertising, and/or deceptive trade practices laws of the several states, and state and federal common law; and

WHEREAS, the Complaint seeks injunctive relief, equitable relief, restitution, and damages on behalf of a nationwide class of consumers who purchased any of the MediaMax CDs and/or the XCP CDs; and

WHEREAS, the plaintiffs in the Non-S.D.N.Y. Actions seek the same relief on behalf of a nationwide class or the residents of individual states; and

WHEREAS, Plaintiffs, through their counsel, have conducted an investigation of the facts and analyzed the relevant legal issues, and although Plaintiffs and their counsel believe that the claims asserted in the Complaints have substantial merit, they also have examined the benefits to be obtained under the proposed settlement, including the prompt removal of XCP CDs from the market, and improvements in the MediaMax software and in the disclosures regarding MediaMax software, and have considered the risks, costs and delays associated with the continued prosecution of this litigation and the likely appeals of any rulings in favor of either Plaintiffs or Defendants; and

WHEREAS, Defendants have conducted an investigation of the facts and analyzed the relevant legal issues; and

WHEREAS, Defendants deny all liability with respect to any and all facts or claims alleged in the Complaints, and believe that their defenses to the claims asserted in the Complaints have substantial merit; and

WHEREAS, Defendants also have weighed the potential risks, costs and delays associated with continued litigation of the Actions against the benefits of the proposed Settlement; and

WHEREAS, each of the Parties and counsel believes, in consideration of all the circumstances and after substantial arms' length settlement negotiations between counsel, that its interests are best served by entering into the settlement set forth in this Settlement Agreement, and that this proposed settlement is fair, reasonable, adequate and in the best interests of the Settlement Class; and

WHEREAS, the Parties intend that the proposed settlement embodied in this Settlement Agreement will resolve all Released Claims (as defined in the Settlement Agreement);

WHEREAS, the Parties have engaged in intensive, complex, difficult and hard-fought arm's-length negotiations;

WHEREAS, as a result of those lengthy negotiations, the Parties have been able to reach an agreement to settle these Actions;

WHEREAS, by the terms of the proposed settlement of this Action, in exchange for the dismissal of the Action and for entry of this Final Order and Judgment, within thirty (30) days after the Preliminary Approval Date, SONY BMG shall make available to all Settlement Class members the following benefits, in accordance with the procedures set forth below:

(a) XCP Exchange Program.

(1) After some actions had been filed, but before the parties began negotiating this Settlement Agreement, SONY BMG had offered all persons possessing XCP CDs the opportunity to exchange their XCP CDs for an identical CD title that does not contain any Copy Protection Software.  That offer was

incorporated into the Settlement Agreement as a term of settlement and is hereby incorporated into this Order.

(2) In addition to the exchange described immediately above and in Section III.B.1 of the Settlement Agreement, SONY BMG also shall offer the additional incentives specified below in Section (b) (the "Incentives") to induce Settlement Class Members to exchange their XCP CDs for CDs that do not contain copy protection software.

(3) SONY BMG will use commercially reasonable efforts to advise its authorized resellers that SONY BMG will accept returns from that reseller of XCP CDs in any condition, and SONY BMG will provide full refunds to the reseller for those XCP CDs. Although SONY BMG cannot compel its resellers to accept such returns from consumers, or dictate the consideration (*i.e.,* refunds, store credit or exchanges) that its resellers will offer upon the return of XCP CDs, SONY BMG will use commercially reasonable efforts to encourage resellers to provide at least an even exchange of that XCP CD, and to provide a receipt for the exchange so that Settlement Class Members may readily claim the Incentives by sending the receipt to SONY BMG.

(4) If a Settlement Class Member returns an XCP CD to a reseller, and wishes to claim the Incentives, he or she may do so by filling out the Claim Form attached as Exhibit C to the Settlement Agreement, and by sending that Claim Form and the exchange receipt by mail or electronic mail to the address specified on the Claim Form. If the Settlement Class Member elects to send the Claim Form by any means other than electronic mail, the Settlement Class Member shall be responsible for the costs of postage for that Claim Form.

(5) SONY BMG also will offer Settlement Class Members the option of returning their XCP CDs to SONY BMG by U.S. Mail, or another shipping method, at no charge to the class member. SONY BMG may administer this exchange program itself, or it may, at its option, engage a vendor of its choosing to administer the exchange program.

(6) If a Settlement Class Member returns an XCP CD to SONY BMG using the procedure specified immediately above in Section (a)(5), that Settlement Class Member may claim the Incentives by completing the Claim Form. (collectively, Paragraphs 1 through 6, the "XCP Exchange Program").

**(b) The XCP Exchange Program Incentives.** Settlement Class Members who exchange their XCP CDs shall be able to claim either of the following two incentive packages from SONY BMG:

(1) *Incentive #1.* For each XCP CD returned by a Settlement Class Member, the Settlement Class Member may elect to receive a cash payment of seven dollars and fifty cents ($7.50), payable (at SONY BMG's sole option) by check or debit card, and a promotional code allowing the holder of the code to download the contents of any one (1) of the albums specified on the list attached

to the Settlement Agreement as Exhibit D.  Because an album download regularly costs approximately $10.00, the total value available to Settlement Class Members for each return under Incentive #1 is approximately $17.50.

(2) *Incentive #2.*  For each XCP CD returned by a Settlement Class Member, the Settlement Class Member may elect to receive a promotional code allowing the holder of the code to download the contents of any three (3) of the albums specified on the list attached to the Settlement Agreement as Exhibit D. The total value available to Settlement Class Members for each return under Incentive #2 is approximately $30.00.

For both Incentive #1 and Incentive #2, Settlement Class Members will be able to select promotional codes usable to download the specified album contents from any one of three (3) major download services.  SONY BMG will use commercially reasonable efforts to ensure that one of the three download services offered as an option to the Settlement Class Members is the "iTunes" service. The promotional codes will be fully transferable, and will expire no less than 180 days after they are issued.

In addition to Incentive #1 or Incentive #2, SONY BMG shall make available to each Settlement Class Member downloadable versions of the songs on each XCP CD he or she had purchased.  Settlement Class Members will, upon returning XCP CDs or a completed Claim Form to SONY BMG, be sent an electronic mail message containing a link to an Internet website from which the music may be downloaded at no charge to the class member.

Plaintiffs' Class Counsel shall have the right to periodically monitor the XCP Exchange Program and ensure that SONY BMG is promptly providing the appropriate replacement CDs and the Incentives to Settlement Class Members.

(c) **XCP Update.**  SONY BMG commits to continue making available, through its Internet website, a software utility (the "XCP Update"), downloadable by Settlement Class Members, that will render the XCP "rootkit" visible to users through an ordinary directory search, and thereby eliminate the alleged security vulnerability created by the XCP Software's use of hidden or "cloaked" filenames.  Settlement Class Members will not need to provide Defendants with any personal information in order to obtain the XCP Update.  The XCP Update also will offer Settlement Class Members the opportunity to completely remove the XCP Software.  Plaintiffs Class Counsel has had and will have an opportunity to review and comment on all instructions provided to Settlement Class Members on how to use the XCP Update.   Defendants shall verify, subject to confirmatory discovery by Plaintiffs' Class Counsel, that they have obtained the opinion of an independent, qualified expert that the XCP Update is effective, and that installation of the XCP Update would create no known security vulnerabilities under ordinary conditions.

(d) **One-Click XCP Uninstaller.**  SONY BMG commits to continue making available, through its Internet website, a software utility (the "XCP Uninstaller"), downloadable by Settlement Class Members, that will remove the XCP Software from

the hard disk drive of a Settlement Class Member's computer. Settlement Class Members will not need to provide Defendants with any personal information in order to obtain the XCP Uninstaller. Plaintiffs' Class Counsel will have an opportunity to review and comment on all instructions provided to Settlement Class Members on how to use the XCP Uninstaller. Defendants shall verify, subject to confirmatory discovery by Plaintiffs' Class Counsel, that they have obtained the opinion of an independent, qualified expert that the XCP Uninstaller is effective, and that the use of the XCP Uninstaller would create no known security vulnerabilities under ordinary conditions.

**(e) MediaMax Update.** SONY BMG commits to continue making available, through its Internet website and SunnComm's website, a software utility (the "MediaMax Update"), downloadable by Settlement Class Members, that eliminates all currently-known security vulnerabilities associated with the MediaMax Software. Settlement Class Members will not need to provide any personal information in order to obtain the MediaMax Update. Plaintiffs' Class Counsel will have an opportunity to review and comment on all instructions provided to Settlement Class Members on how to use the MediaMax Update. SONY BMG shall verify, subject to confirmatory discovery by Plaintiffs' Class Counsel, that it has obtained the opinion of an independent, qualified expert that the MediaMax Update is effective, and that installation of the MediaMax Update would create no known security vulnerabilities under ordinary conditions.

**(f) One-Click MediaMax Uninstaller.** SONY BMG commits to continue making available, through its website, a software utility (the "MediaMax Uninstaller") available through SunnComm's website, downloadable by Settlement Class Members, that will remove the MediaMax Software from the hard disk drive of a Settlement Class Member's computer. Settlement Class Members will not need to provide any personal information in order to obtain the MediaMax Uninstaller. Plaintiffs Class Counsel has had and will have an opportunity to review and comment on all instructions provided to Settlement Class Members on how to use the MediaMax Uninstaller. SONY BMG shall verify, subject to confirmatory discovery by Plaintiffs' Class Counsel, that it has obtained the opinion of an independent, qualified expert that the MediaMax Uninstaller is effective, and that use of the MediaMax Uninstaller would create no known security vulnerabilities under ordinary conditions.

The XCP Update, the XCP Uninstaller, the MediaMax Update and the MediaMax Uninstaller shall be available on or through SONY BMG's website until December 31, 2007.

**(g)** Defendants agree not to object if any operating system manufacturer, provider of computer security or anti-virus software plans to disseminate the XCP Update, the XCP Uninstaller, the MediaMax Update or the MediaMax Uninstaller, so such provider's customers.

**(h) No Collection of Personal Data.** SONY BMG warrants that it has not used the MediaMax or XCP Software, or any of the enhanced content on audio CDs, to collect, aggregate or retain Personal Data about persons who listened to XCP CDs or MediaMax CDs on computers, without such persons' express consent. **[UNDER CONSIDERATION: SONY BMG further warrants that with the customer's conset,**

SONY BMG only collects that information necessary to provide enhanced CD functionality. Such functionality requires that the album title, artist, and IP address be collected. The IP address is required so that the appropriate language and country links are provided to the customer. SONY BMG collects artist, album title, and IP address solely for this purpose and does not retain the information except for _____.  SONY BMG warrants that it never collects information about non-SONY BMG titles.]

(i) Third Party Verification.   On [some date between the Preliminary Approval Date and a date specified in the Hearing Order – see Settlement Agreement III.N.], SONY BMG caused an independent third party to investigate whether SONY BMG has collected, aggregated or retained Personal Data in a manner inconsistent with the above representations, and SONY BMG provided the third party's conclusions to Plaintiffs' Class Counsel and to the Court prior to the Fairness Hearing. SONY BMG shall similarly engage an independent third party to repeat this review once during each of calendar years 2006 and 2007. If the auditor concludes that SONY BMG has collected, aggregated or retained Personal Data in a manner inconsistent with the above representations during calendar years 2006 or 2007, SONY BMG will promptly report the third party's findings to Plaintiffs' Class Counsel.

(j) Defendant's Waiver of Rights Under XCP EULA and MediaMax EULA. As of the Effective Date, SONY BMG (and F4I, as a potential third-party beneficiary) shall waive all of their rights to enforce the following provisions of the XCP EULA and the MediaMax EULA:

1. **Article 2,** to the extent such provision could be construed as precluding consumers from transferring music they purchased to portable devices that are not "APPROVED MEDIA PLAYERS" and "APPROVED PORTABLE DEVICES" (as those terms are defined in the EULA);

2. **Article 2.3;**

3. **Article 3.1(c),** to the extent such provision could be construed to prevent uninstallation of the XCP Software or MediaMax Software; and **Article 3.1(f),** to the extent anything in such provision is inconsistent with SONY BMG's other waivers of rights under this Paragraph (j);

4. **Articles 7 and 8**; and

5. **Article 9(1);**

6. **Article 9.2(ii)-(iii).**

WHEREAS, as specified below, SONY BMG has agreed to waive other rights under the

XCP EULA and the MediaMax EULA to the extent that Settlement Class Members pursue non-

Released Claims on an individual basis, as opposed to a class action or mass action under federal or state law, or as a "private attorney general" under a state statute authorizing such actions.

WHEREAS, if, after the date on which the Settlement Agreement was executed, SONY BMG enters into any settlement agreement, consent decree, assurance of discontinuance or other, similar pre-trial resolution with a State Attorney General, or any class action settlement, in which SONY BMG undertakes to provide additional benefits to all Settlement Class Members who reside in any single state or states respecting Released Claims, SONY BMG agrees to offer the same benefits to all Settlement Class Members.

WHEREAS, in addition to the Settlement Benefits specified above, SONY BMG shall adhere to the following affirmative and negative restrictions on its use of copy protection technology during the Injunctive Period, as defined in paragraph II.D. of the Settlement Agreement:

(a) SONY BMG will not manufacture or distribute audio CDs with XCP Software. (SONY BMG, in fact, has not been manufacturing or distributing audio CDs with XCP Software since November [], 2005.)

(b) If SONY BMG manufactures any CDs with any Copy Protection Software, including MediaMax Software, during the Injunctive Period, it will, before doing so:

(1) Ensure that the Copy Protection Software operates in a manner ensuring that no software will be installed on a user's computer unless and until the user has agreed to such installation by accepting a EULA.

(2) Ensure that the EULA associated with the Copy Protection Software accurately describes the nature and function of the software, and does so in easily understandable language.

(3) Show the EULA associated with the Copy Protection Software in advance of its use to an independent third party (the "EULA Reviewer") to be designated jointly by SONY BMG and Plaintiffs' Class Counsel, and receive comments to the proposed EULA from the EULA Reviewer. SONY BMG shall consider, but will not be required to adopt, the comments of the EULA Reviewer. However, to the extent that SONY BMG determines not to accept the EULA Reviewer's comments, the EULA Reviewer will not be required to keep such non-accepted comments confidential.

**(4)** Provide any Copy Protection Software to at least one qualified, independent third party, and obtain an opinion from that third party that the software is effective, and that installation and use of the software would create no known security vulnerabilities under ordinary conditions.

**(5)** Ensure that, with respect to CDs with Copy Protection Software, SONY BMG will, if such CDs are played on computers with active connections to the Internet and the CDs cause the computer to make a connection to the Internet, make a record only of the associated album title, artist and IP address from which the connection was made.

**(6)** Include, on the jewel case of any SONY BMG CD containing any Copy Protection Software, a written disclosure, in plain language and type size, and at a location to be negotiated with Plaintiffs' Class Counsel, that the CD contains such Copy Protection Software and a brief description of such Copy Protection Software.

**(c)** If, during the Injunctive Period, a reputable computer security firm or expert in the field of computer security brings to the attention of the SONY BMG personnel responsible for Copy Protection Software, including MediaMax Software, any Suspected Security Vulnerability in such Copy Protection Software, SONY BMG will: **[discuss "patch if patchable" terms]**

**(1)** . . .

**(d)** If SONY BMG manufactures any CDs with Copy Protection Software, including MediaMax Software, during the time from sixty (60) days after the Preliminary Hearing Date until the end of the Injunctive Period, SONY BMG also shall include a written disclosure on the exterior portion of the SONY BMG jewel case that the CD contains such software and a short description of such Copy Protection Software.   To the extent such CDs are manufactured prior to the Effective Date, SONY BMG and Plaintiffs' Class Counsel shall meet and confer on the specific language, type size, and location of such disclosure.

**WHEREAS,** on **[DATE OF SETTLEMENT AGREEMENT]**, the Parties, by their duly authorized counsel, entered into a Settlement Agreement, which provides that, subject to the approval of this Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the claims asserted in this Action against Defendants were to be settled, compromised and dismissed with prejudice, upon and subject to the terms and conditions set forth therein (the "Settlement"); and

**WHEREAS,** on **[December 22, 2005]**, this Court entered a Hearing Order (the "Hearing Order"), which, *inter alia*:

**(a)** certified, for settlement purposes only, pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, a class consisting of the named Plaintiffs in the Actions

and all natural persons or entities in the United States who (*i*) purchased or received one or more MediaMax CDs and/or XCP CDs from any source, including a retail store and a mail-order or Internet-based retailer, another owner or holder of a MediaMax CD or XCP CD, or directly from SONY BMG; and/or (*ii*) during the Class Period, came into possession of, or otherwise used, one or more MediaMax CDs and/or XCP CDs at any time (the "Settlement Class"); excluding Released Parties, as defined below; resellers or distributors of the XCP CDs and MediaMax CDs; current or former employees of Defendants and SunnComm International, Inc.; and any persons or entities that have previously executed releases discharging Defendants from liability concerning or encompassing any or all claims that are the subject of the Actions;

(**b**) appointed [**insert names**] as representatives of the Settlement Class;

(**c**) appointed [**Kamber & Associates, LLC and Girard Gibbs & De Bartolomeo LLP**] as Class Co-Counsel for the Settlement Class;

(**d**) preliminarily approved the Settlement, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure;

(**e**) set a hearing to take place on ____, 2006, at _____ __.m., before this Court, at the Daniel Patrick Moynihan United States Courthouse for the Southern District of New York, 500 Pearl Street, Room 2270, New York, New York (the "Fairness Hearing"), upon notice to members of the Settlement Class, to determine whether:

(**i**) the requirements for certification of the Settlement Class have been met;

(**ii**) the proposed settlement of the Action in accordance with the terms set forth in the Settlement Agreement, including as part of the settlement the payment of Plaintiffs' Class Counsel's attorneys' fees and reimbursement of Plaintiffs' Class Counsel's expenses, should be approved as fair, reasonable and adequate; and

(**iii**) the Judgment approving the settlement and dismissing the Action on the merits and with prejudice against Plaintiffs and Settlement Class Members should be entered.

(**f**) approved the form of the Notice of Pendency and Settlement Class Action (the "Full Settlement Notice"), substantially in the form of Exhibit F annexed to the Settlement Agreement, which contains instructions for Settlement Class Members to obtain the settlement benefits referenced in the Settlement Agreement, and approved the summary form of that Settlement Notice, substantially in the form of Exhibit G, annexed to the Settlement Agreement;

(**g**) prescribed the method and period of time for providing notice to members of the Settlement Class of the certification of the Settlement Class; the Settlement; Plaintiffs' counsel's application for an award of attorneys' fees and reimbursement of expenses; and the Fairness Hearing;

**(h)**    directed that Defendants and Class Counsel, as applicable, shall promptly respond to all requests for copies of the Full Settlement Notice and printed Claim Form by mailing the documents to any Settlement Class Members who shall make such requests;

**(i)**    found that such notice to the members of the Settlement Class as described in the Settlement Agreement: (*i*) is the best notice practicable to members of the Settlement Class; (*ii*) is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action, conditional certification of the Settlement Class, the proposed Settlement, and the rights of members of the Settlement Class to object to the Settlement; to request exclusion from the Settlement Class; and the application of Plaintiffs' counsel for an award of attorneys' fees and reimbursement of expenses; (*iii*) is reasonable and constitutes due, adequate and sufficient notice to all persons and entities entitled to receive notice; and (*iv*) meets all applicable requirements of law including, but not limited to, Rule 23(c) of the Federal Rules of Civil Procedure and the Due Process Clause of the Fourteenth Amendment of the United States Constitution;

**(j)**    directed Class Counsel and Defendants' counsel, on or before **[FILL IN DATE]**, to file with the Court evidence that the provisions of paragraphs 9 and 10 of the Hearing Order had been satisfied, which they did;

**(k)** prescribed the method and period of time during which members of the Settlement Class may file requests to be excluded from the Settlement Class;

**(l)**    provided that, whether or not the Effective Date (as defined below) occurs, any member of the Settlement Class who does not properly and timely request exclusion from the Settlement Class shall be bound by any and all judgments and settlements entered or approved by this Court, whether favorable or unfavorable to the Settlement Class;

**(m)** prescribed the method and periods of time during which members of the Settlement Class may serve written objections to the Settlement and/or the application for an award of attorneys' fees and/or reimbursement of expenses by Class Counsel;

**(n)**    prescribed the methods and periods of time during which members of the Settlement Class must apply for the applicable relief by, *inter alia*, completing a printed Claim Form such as that attached to the Settlement Agreement as Exhibit C, in order to obtain those facets of the Settlement for which the completion of a Claim Form is required;

**(o)**    directed that if, for any reason, the notice to the Settlement Class Members is not or cannot be provided before February 1, 2006, the Parties will confer in good faith and recomment to the Court that the date by which any Settlement Class Member must seek to receive one or more of the Settlement Benefits be extended correspondingly;

**(p)**    directed that SONY BMG shall pay all costs associated with providing notice to the members of the Settlement Class;

**(q)**    required SONY BMG, between the Preliminary Approval Date and **[FILL IN DATE]**, to cause an independent third party to investigate whether SONY BMG has collected, aggregated or retained Personal Data in a manner inconsistent with the Settlement

Agreement, and to provide the third party's conclusions to Plaintiffs' Class Counsel and to the Court prior to the Fairness Hearing, which it did;

(r) preliminarily barred and enjoined Plaintiffs and all members of the Settlement Class and any other person, representative, or entity acting on behalf of any members of the Settlement Class from: (*i*) filing, commencing, prosecuting, maintaining, intervening in, participating in (as members of a class action or otherwise), any claim, lawsuit, arbitration, administrative, regulatory or other proceeding arising out of the Released Claims (as defined in paragraph II.L. of the Settlement Agreement) against any of the Released Parties (as defined in paragraph II.H. of the Settlement Agreement); and (*ii*) organizing or soliciting the participation of any members of the Settlement Class into a separate class for purposes of pursuing as a purported class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending action) any claim, lawsuit or other proceeding arising out of the Released Claims against any of the Released Parties;

(s) provided that if for any reason, the Effective Date of the Settlement does not occur, the Hearing Order shall become null and void, and shall be without prejudice to the rights of the parties, all of whom shall be restored to their respective positions as of **[DATE BEFORE IT IS EXECUTED]**, except that any extensions of time granted since that date by one Party to the other shall continue to have force and effect, and neither Party shall seek an order of default against any other Party for actions not taken while approval of the Settlement was pending, and the Settlement and Settlement Agreement shall become null and void and be of no further force and effect, and neither the Settlement Agreement nor the Court's orders issued in connection with consideration of the Settlement, including this Order, shall be used or referred to in any litigation for any purpose whatsoever, except as required to enforce those provisions of the Settlement Agreement which survive a failure of the Settlement to be consummated or the Effective Date of the Settlement to occur including, without limitation, paragraphs IX.A., IX.B., XI.C., XI.D., XI.K., and XI.L. of the Settlement Agreement.

(t) provided that nothing in the Hearing Order shall be construed or used as an admission, concession, or declaration by or against SONY BMG for any fault, wrongdoing, breach or liability; or be construed or used as an admission, concession, or declaration by or against Plaintiffs or the members of the Settlement Class that their claims lack merit or that the relief requested in the operative Complaint in this Action is inappropriate, improper, or unavailable, or as a waiver by any party of any defenses or claims he, she, or it may have; or be construed as a finding or conclusion of the Court with respect to the merit or lack of merit of any claim asserted in the Action or the defense to any Claim asserted in this Action; and

**WHEREAS**, on **[FILL IN DATE FROM HEARING ORDER ¶ 12]**, Defendant submitted to this Court proof of the e-mailing of the Full Statement Notice, the posting of the Full Statement Notice on SONY BMG's website, the use of the "Banner" to provide a link to the Full Settlement Notice, the coordination with prominent search engines, to make the Full Settlement Notice readily accessible on the Internet, and publication of the Summary Notice, as

directed in the Hearing Order, pursuant to which members of the Settlement Class were notified

of their rights to: **(i)** request exclusion from the Settlement Class; or **(ii)** appear at the hearing in

favor of, or opposition to, the Settlement and/or the application of Plaintiffs' counsel for award

of fees and reimbursement of expenses; and

        **WHEREAS,** SONY BMG has submitted evidence demonstrating, and the Court finds,

that SONY BMG provided the notices to the United States Department of Justice and to the

Attorneys General of the 50 States, as required by the Class Action Fairness Act of 2005, Pub. L.

109-2 (2005), and specified in 28 U.S.C. § 1715; and

        **WHEREAS,** the Fairness Hearing was duly held as noticed on _____ __, 2006; and

        **WHEREAS,** this Court, having heard from Class Counsel on behalf of the Settlement

Class, and from Defendants' counsel, and having reviewed all other arguments and submissions

presented by all interested persons and entities with respect to the Settlement and the application

of Plaintiffs' counsel for an award of attorneys' fees and reimbursement of expenses, it is hereby

        **ORDERED, ADJUDGED AND DECREED THAT:**

        1.      Notice to the members of the Settlement Class required by Rule 23(c) and (e) of

the Federal Rules of Civil Procedure has been provided as directed by this Court in the Hearing

Order, and such notice having constituted the best notice practicable, including, but not limited

to, the forms of notice and methods of identifying and providing notice to the members of the

Settlement Class, and satisfied the requirements of the Federal Rules of Civil Procedure, the

Constitution of the United States, and all other applicable laws.

        2.      The Settlement Class as provided in the Hearing Order is unconditionally certified

pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

3.     The Settlement, as set forth in the Settlement Agreement, is in all respects fair, reasonable, and adequate, and in the best interests of the members of the Settlement Class, and is approved in all respects in accordance with Rule 23 of Federal Rules of Civil Procedure.

4.     Plaintiffs and Defendant are directed to promptly consummate the Settlement in accordance with the Settlement Agreement and all of its terms, which are hereby incorporated by reference herein.

5.     The Settlement shall not be deemed to constitute an admission or finding of liability or wrongdoing on the part of Defendant, or any of the Plaintiffs, Settlement Class members, Releasing Parties (as defined below), or Released Parties (as defined below).

6.     Those persons appearing on the list annexed hereto as Exhibit A have properly and timely requested exclusion from the Settlement Class, pursuant to the terms of this Court's Hearing Order, and are excluded from the Settlement Class, shall not be bound by this Final Order and Judgment, and shall not participate in the proceeds of the Settlement hereby approved nor receive any benefit thereunder.

7.     The Action is hereby dismissed, with prejudice, on the merits, as against all Plaintiffs and all members of the Settlement Class, on the terms and conditions set forth in the Settlement Agreement, and without costs to any party except as provided herein, in the Hearing Order and in the Settlement Agreement.

8.     For the purposes of this Final Order and Judgment, the following terms shall have the following meanings:

(a) "Released Parties" means each and all of the Defendants, SunnComm, and all of their and its direct and indirect parent companies, including, without limitation, Sony Corporation and Bertelsmann AG, and all of their respective divisions and direct and indirect subsidiaries, affiliates, partners, joint ventures, predecessor and successor corporations and

business entities, and all of their respective past and present officers, directors, servants, sureties, attorneys, employees, controlling or principal shareholders, general or limited partners or partnerships, divisions, insurers, designated management companies, and all of their successors or predecessors in interest, assigns or legal representatives, and any persons or entities that have manufactured, supplied, advertised, marketed, distributed, or sold MediaMax Software, XCP Software, MediaMax CDs and/or XCP CDs. "Releasing Party" or "Releasing Parties" means each Plaintiff, each member of the Settlement Class who has not timely submitted a properly completed request for exclusion, and its, his, her, or their respective past, present, or future parents, subsidiaries, predecessors, successors, heirs, personal representatives, affiliates, insurers, attorneys, and/or assigns.

 **(b)** "Settlement Class" means the named Plaintiffs in the Action and all natural persons or entities in the United States who (*i*) purchased or received one or more MediaMax CDs and/or XCP CDs from any source, including a retail store and a mail-order or Internet-based retailer, another owner or holder of a MediaMax CD or XCP CD, or directly from SONY BMG; and/or (*ii*) at any time, came into possession of, or otherwise used, one or more MediaMax CDs and/or XCP CDs. Excluded from the Settlement Class are Released Parties; SONY BMG-authorized resellers or distributors of the XCP CDs and MediaMax CDs; current or former employees of Defendants and SunnComm; and any persons or entities that have previously executed releases discharging Defendants from liability concerning or encompassing any or all claims that are the subject of the Action.

 **(c)** "Settlement Class Member" means any person who falls within the definition of the Settlement Class and who did not validly and timely elect exclusion from the Settlement Class under the conditions and procedures for exclusion as determined by this Court and described in any Notice of Pendency and Settlement of Class Action approved by this Court.

**(d)** "Released Claims" means any and all claims, rights, damages, losses, demands, obligations, actions, causes of action, suits, cross-claims, matters, issues, debts, liens, contracts, liabilities, agreements, costs, or expenses, of any nature whatsoever, ascertained or unascertained, suspected or unsuspected, existing or claimed to exist, including Unknown Claims, of any and all Plaintiffs and/or Settlement Class Members arising out of any purchase or use by them of an XCP CD or a MediaMax CD, the XCP Update or the MediaMax Update, or the installation or de-installation of XCP Software or MediaMax Software, to the extent that such claims: (a) arise out of the Action or the Non-S.D.N.Y. Actions; (b) relate to any allegations that either were or could have been asserted in the Action or the Non-S.D.N.Y. Actions; or (c) which might in the future be asserted by any Plaintiff or Settlement Class Member, against any of the Released Parties that would arise out of, or relate to in any manner, directly or indirectly, any acts, facts, transactions, occurrences, conduct, representations or omissions alleged in the Action and the Non-S.D.N.Y. Actions, including, without limitation, claims respecting to any disclosure, advertising or other descriptions of, or claims relating to (*i*) the nature, quality, value, and/or functionality of the MediaMax CDs, the XCP CDs, the MediaMax Software, MediaMax Update, MediaMax Uninstaller, XCP Software, XCP Update or XCP Uninstaller; and/or (*ii*) the EULAs. Released Claims also include claims for abuse of process, malicious prosecution or any other claim arising out of, relating to, or in connection with the defense or resolution of the Action, which raise highly individualized issues, including proof of causation. Released Claims do not include (*i*) claims for consequential damage to a computer or network that may or are alleged to have resulted from interactions between the XCP Software or the MediaMax Software and other software or hardware installed on such computer or network. However, Released Claims do include claims relating to the asserted costs of

removing XCP Software and/or MediaMax Software from a computer and damages caused by negligent or improper removal of XCP Software and/or MediaMax Software.

(e) "Unknown Claims" means all claims arising out of facts relating to any matter covered by the Released Claims which all persons or entities providing releases under this Settlement Agreement, including all Settlement Class Members, do not know or suspect to exist in their favor at the time of the release of the Released Parties and which, if known by them, might have affected their decision to settle with Defendant and release the Released Parties or to take any other action including, but not limited to, objecting or not objecting to the Settlement.  All persons or entities providing releases under this Settlement Agreement may hereafter discover facts other than or different from those which such persons now know or believe to be true with respect to the subject matter of the Released Claims.  Upon the Effective Date of the Settlement, each person or entity providing releases under the Settlement Agreement, including all Settlement Class Members, shall be deemed to have waived any and all rights that he, she, it or they may have under any statute, regulation, administrative adjudication or common law principle that would otherwise limit the effect of the foregoing releases to those claims actually known or suspected to exist at the time of execution of this Settlement Agreement, including, but not limited to, the provisions of Section 1542 of the California Civil Code, to the extent deemed applicable, which provides as follows:

> 1542. General Release-Claims Extinguished.  A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

(f) The "Effective Date" of the Settlement is the date on which the Judgment becomes Final.

(g) "Class Period" means the period from August 2003 through the Effective Date.

(h) "Final" means, when used in connection with any court order or judgment, that the relevant order or judgment will be final:

a)     if no appeal is taken therefrom, on the date on which the time to appeal therefrom (including any potential extension of time) has expired; or

b)     if any appeal is taken therefrom, on the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc, and petitions for certiorari or any other form of review, have been finally disposed of, such that the time to appeal therefrom (including any potential extension of time) has expired, in a manner resulting in an affirmance of the relevant order or judgment.

(i) The "Injunctive Period" is the period between one day after the Preliminary Approval Date and December 31, 2007.

(j) "Confirmed Security Vulnerability" means [placeholder].

(k) "Suspected Security Vulnerability" means [placeholder].

(l) "Personal Data" means information stored on a computer that discloses the identity of the individual using that computer or websites, other than the SONY BMG and SunnComm websites, that the user has visited using the browser on such computer, but does not include the Internet Protocol address of the computer's Internet connection or any information with respect to an album title, artists and tracks that is routinely logged by SONY BMG in connection with enhanced or connected CDs.   [Plaintiffs may suggest alternate definition.]

(m)"Plaintiffs' Class Counsel" means the firms of Girard Gibbs & De Bartolomeo LLP and Kamber & Associates, LLC.

(n) The "Preliminary Approval Date" is the date one business day after the Court grants preliminary approval to this Settlement Agreement and directs the Defendants to send notice to Settlement Class Members on the terms specified herein.

(o) "Settlement Agreement" and the "Settlement" refers to the Settlement Agreement executed by the parties on [FILL IN DATE] and the terms thereof.

9.     Upon the Effective Date, each Plaintiff and each Settlement Class Member shall be deemed to have, and by operation of this Final Order and Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims (including Unknown Claims) against the Released Parties.

10.     Upon the Effective Date, the Defendant shall be deemed to have, and by operation of this Final Order and Judgment shall have, fully, finally and forever released, relinquished and discharged all of the Plaintiffs and all Class Counsel from any claims (including Unknown Claims) for abuse of process, malicious prosecution or any other claim arising out of, relating to, or in connection with the institution, prosecution, assertion or resolution of the Action.

11.     The Court finds that non-Released Claims — for consequential damage to a computer that allegedly result from interactions between the XCP Software or the MediaMax Software and other software or hardware installed on such computer — do not meet the standards for class certification under Federal Rule of Civil Procedure 23(b)(3), and could not manageably be litigated on a class basis, because such claims unavoidably involve individual issues, including proof of causation.  Defendants have agreed that, to the extent an individual pursues such non-Released Claims on an individual basis, as opposed to a class action, mass action or as a "private attorney general" under statutes authorizing such actions, Defendants will waive the five dollar limitation of liability (Article 6), and the New York forum selection clause (Article 10) of the XCP EULA and the MediaMax EULA with respect to such person and such

action.  To the extent that any person attempts to pursue non-Released Claims on a class action or mass action basis or as a "private attorney general," Defendants shall not be required to waive any rights under the XCP EULA and MediaMax EULA with respect to such person and such action.

12.    Each Settlement Class Member is permanently enjoined and barred from prosecuting non-Released Claims for consequential physical damage to a computer that allegedly result from interactions between the XCP Software or the MediaMax Software and other software or hardware installed on such computer on a class action or mass action basis pursuant to federal law or the law of any State.

13.    Plaintiffs' counsel are hereby awarded (*i*) attorneys' fees in an amount not to exceed **[sum to be negotiated]**, and (*ii*) reimbursement of their reasonable documented expenses incurred up to and through the date of the Fairness Hearing in an amount not to exceed **[sum to be negotiated]**.  Such amounts are to be paid to Class Counsel by Defendants within ten (10) business days after the Effective Date.  Such expenses shall not include any expenses incurred in connection with notice or fulfillment of the Settlement or providing the Settlement Benefit(s) to Settlement Class Members, which costs and expenses shall be borne entirely by Defendants. Defendants shall not oppose any of the foregoing requests, and will pay these amounts, or such smaller amounts, awarded by the Court to Plaintiffs' Class Counsel.

14.    Following the Effective Date, Plaintiffs' Class Counsel may separately request the Court to award to Plaintiffs' Class Counsel a further reimbursement of their reasonable documented expenses incurred between the Fairness Hearing and the Effective Date, provided that this amount, when added to the amount awarded pursuant to paragraph 12(*ii*), above, does not exceed **[the number appearing above in paragraph 13]**.  Defendants shall not oppose this

request and will pay this amount, or such smaller amount, awarded by the Court to Plaintiffs' Class Counsel.

15.     Such attorneys' fees, expenses and/or interest thereon as are awarded by the Court may be paid to Plaintiffs' Class Counsel, at Defendants' sole option, at any time following the date of such award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the settlement or any part thereof.  Such payment, if made prior to the Effective Date, shall be subject to the following conditions:

(a) If the Settlement Agreement becomes null and void for any reason, or is terminated, or for any reason the Effective Date does not occur, Plaintiffs' Class Counsel shall be obligated to repay to Defendants all attorneys' fees, expenses and/or interest awarded by the Court and paid by Defendants, or portion thereof if the award of attorneys' fees, expenses and/or interest is reduced;

(b) Plaintiffs' Class Counsel shall, without need for motion by Defendant or further notice, within five (5) business days after issuance of (*i*) a mandate reversing the Judgment on appeal; or (*ii*) an order terminating the Settlement Agreement or otherwise causing the Settlement Agreement to become null and void for any other reason, return to Defendants the full amount of all attorneys' fees, expenses and/or interest awarded to Plaintiffs' Class Counsel or the amount such award of attorneys' fees, expenses and/or interest is reduced. Plaintiffs' Class Counsel must, without need for motion by Defendants or further notice, within five (5) business days after issuance of a mandate or order reducing the amount of attorneys' fees, expenses and/or interest awarded to Plaintiffs' Class Counsel, return to Defendants the amount by which the attorneys' fees, expenses and/or interest were reduced. The foregoing repayment obligations shall be enforceable by any means, including the

contempt power of the Court, and the Court shall retain jurisdiction to enter all orders necessary to enforce such obligations.

(c) Immediately upon the entry of the Judgment, Plaintiffs' Class Counsel shall be deemed to have submitted themselves to the jurisdiction of this Court. For purposes of further effectuating this provision, Plaintiffs' Class Counsel irrevocably waives and agrees not to assert, by way of motion, as a defense or otherwise, any claim or objection that the Court is, in any way, an improper venue or inconvenient forum.

16. Defendants and the Released Parties (as defined above) shall not be liable for any additional fees or expenses for counsel of any Plaintiff or Settlement Class Member in connection with the Action, other than as provided in the Settlement Agreement.

17. By reason of the Settlement, and approval hereof, there is no just reason for delay and this Final Order and Judgment shall be deemed a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

18. Jurisdiction is reserved, without affecting the finality of this Final Order and Judgment, over:

(a) Effectuating this Settlement and the terms of the Settlement Agreement, including the payment of Plaintiffs' counsel's attorneys' fees and reimbursement of expenses, including any interest accrued thereon;

(b) Supervising all aspects of the administration of the Settlement, and providing the benefits of the Settlement to Settlement Class Members, including, but not limited to, the resolution of any complaints submitted by Settlement Class Members, and for future allowances of expenses incurred by Plaintiffs' counsel solely in the administration of the Settlement, subject to the limits specified above in Paragraph 14;

(c) Enforcing and administering the Settlement Agreement and the Settlement including any releases executed in connection therewith, and the provisions of this Final Order and Judgment;

(d) Adjudicating any disputes that arise under the Settlement Agreement; and

(e) Any other matters related or ancillary to the foregoing.


Dated: New York, New York,
_____ _____, 2006


                          SO ORDERED, ADJUDGED AND DECREED


                          _____
                          THE HONORABLE NAOMI R. BUCHWALD
                          UNITED STATES DISTRICT JUDGE